UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MASHPEE WAMPANOAG TRIBE, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) |
| RYAN ZINKE, in his official capacity as Secretary of the Interior, | ) |
| | ) |
| and | ) |
| | ) |
| U.S. DEPARTMENT OF THE INTERIOR | ) |
| | ) |
| Defendants | ) |
| and | ) |
| | ) |
| DAVID LITTLEFIELD; MICHELLE LITTLEFIELD; TRACY ACORD; DEBORAH CANARY; VERONICA CASEY; PATRICIA COLBERT, VIVIAN COURCY; DONNA DEFARIA; KIM DORSEY; FRANCIS LAGACE; WILL COURCY; ANTONIO DEFARIA; KELLY DORSEY; JILL LAGACE; DAVID LEWRY; KATHLEEN LEWRY; ROBERT LINCOLN; CHRISTINA MCMAHON; CAROL MURPHY; DOROTHY PEIRCE; DAVID PURDY; LOUISE SILVIA; FRANCIS CANARY, JR.; MICHELLE LEWRY; RICHARD LEWRY, | ) Civil Action No. 1:18-cv-02242-RMC |
| | ) |
| Intervenor-Defendants. | ) |
| | ) |
| | ) |

**INTERVENOR-DEFENDANTS'**
**MOTION TO TRANSFER VENUE AND MEMORANDUM IN SUPPORT**

## TABLE OF CONTENTS

MOTION TO TRANSFER VENUE ........................................................................................1

MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE.....................................1

INTRODUCTION .................................................................................................................1

FACTUAL BACKGROUND.....................................................................................................3

STATUTORY BACKGROUND.................................................................................................4

ARGUMENT.........................................................................................................................7

I.      VENUE SHOULD BE TRANSFERRED TO THE DISTRICT OF
        MASSACHUSETTS UNDER SECTION 1404(A)'S TWO-PART TEST. ...............7
        A.      This Action Could Have Been Brought in the District of Massachusetts ....................7
        B.      Public and Private Considerations Heavily Favor Transferring This Action
                to the District of Massachusetts ...........................................................................8

CONCLUSION.....................................................................................................................17

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Alabama v. U.S. Army Corps of Eng'rs,*
    304 F. Supp. 3d 56 (D.D.C. 2018) ................................................................*passim*

*Alaska Wilderness League v. Jewell,*
    99 F. Supp. 3d 112 (D.D.C. 2015) .............................................................. 5

*Carcieri v. Salazar,*
    555 U.S. 379 (2009) ............................................................................ 4, 16

*Continental Grain Co. v. Barge FBL-585,*
    364 U.S. 19 (1960) ................................................................................ 12

*Gulf Oil Corp. v. Gilbert,*
    330 U.S. 501 (1947) ........................................................................... 2, 12

*Holland v. A.T. Massey Coal,*
    360 F. Supp. 2d 72 (D.D.C. 2004) ............................................................ 10

*Littlefield v. U.S. Dep't of the Interior,*
    199 F. Supp. 3d 391 (D. Mass. 2016) ......................................................*passim*

*Mandan v. U.S. Dep't of the Interior,*
    No. 18-cv-1462, 2019 WL 451351 (D.D.C. Feb. 5, 2019) .................... 11, 12, 15

*Me-Wuk Indian Cmty. of the Wilton Rancheria v. Kempthorne,*
    246 F.R.D. 315 (D.D.C. 2007) ........................................................... 10, 12

*New Hope Power Co. v. U.S. Army Corps of Eng'rs,*
    724 F. Supp. 2d 90 (D.D.C. 2010) ........................................................... 8, 9

*Patchak v. Salazar,*
    632 F.3d 702 (D.C. Cir. 2011) ................................................................ 14

*Piper Aircraft Co. v. Reyno,*
    454 U.S. 235 (1981) ............................................................................. 4, 6

*Relf v. Gasch,*
    511 F.2d 804 (D.C. Cir. 1975) ................................................................ 5

*Santee Sioux Tribe of Neb. v. Nat'l Indian Gaming Comm'n,*
    No. 99-528 (D.D.C. April 19, 1999) ................................................... 13, 15

*Shawnee Tribe v. United States,*
   298 F. Supp.2d 21 (D.D.C. 2002) ....................................................................*passim*

*Sierra Club v. Flowers,*
   276 F. Supp. 2d 62 (D.D.C. 2003) ...............................................................16

*Sierra Club v. Van Antwerp,*
   523 F. Supp. 2d 5 (D.D.C. 2007) .................................................................10

*S. Utah Wilderness Alliance v. Norton,*
   315 F. Supp. 2d 82 (D.D.C. 2004) .......................................................... 15, 16

*Stand Up for Cal. v. U.S. Dep't of the Interior,*
   919 F. Supp. 2d 51 (D.D.C. 2013) ...........................................................7, 13

*Stewart Organization, Inc. v. Ricoh Corp.,*
   487 U.S. 22 (1988) .........................................................................................5

*Thayer/Patricof Educ. Funding, LLC v. Pryor Res., Inc.,*
   196 F. Supp. 2d 21 (D.D.C. 2002) ................................................................8

*Towns of Ledyard, N. Stonington and Preston, Conn. v. United States,*
   No. 95-0880, 1995 WL 908244 (D.D.C. May 31, 1995) ...............................13

*Trout Unlimited v. U.S. Dept. of Agric.,*
   944 F. Supp. 13 (D.D.C. 1996) .................................................................8, 16

*United Auburn Indian Cmty. of the Auburn Rancheria v. Salazar,*
   No. 12-1988, 2013 WL 12313021 (D.D.C. Jan. 4, 2013) ...............................15

*United States v. H & R Block, Inc.,*
   789 F. Supp. 2d 74 (D.D.C. 2011) ................................................................8

*Van Dusen v. Barrack,*
   376 U.S. 612 (1964).......................................................................................4

*Villa v. Salazar,*
   933 F. Supp. 2d 50 (D.D.C. 2013) ...................................................5, 6, 7, 11

*Weinberger v. Tucker,*
   391 F. Supp. 2d 241 (D.D.C. 2005).................................................................6

*Wyandotte Nation v. National Indian Gaming Comm'n,*
   No. 04–cv–1727, 2005 WL 8160917 (D.D.C. May 2, 2005) .............................9

*Wyandotte Nation v. Salazar,*
   825 F. Supp. 2d 261 (D.D.C. 2011) ..........................................................*passim*

**Statutes**

25 U.S.C. § 479 ................................................................................................................ 11

28 U.S.C. § 1391(e) ..................................................................................................... 2, 4, 7

28 U.S.C. § 1404(a) ....................................................................................................*passim*

## MOTION TO TRANSFER VENUE

Pursuant to 28 U.S.C. § 1404(a), Intervenor-Defendants David Littlefield *et al.*[1] (hereafter "*Littlefield* Plaintiffs") hereby move this Court to transfer venue to the United States District Court for the District of Massachusetts.[2]

This motion is based on the accompanying Memorandum in Support, the attached Declaration of David Tennant and exhibits attached thereto,[3] the pleadings and other documents on file in this action, and any further evidence and oral argument that the Court may request with respect to this motion.

## MEMORANDUM IN SUPPORT OF MOTION TO TRANSFER VENUE

### INTRODUCTION

The *Littlefield* Plaintiffs respectfully request a change of venue to the United States District Court for the District of Massachusetts.  The proposed transferee district is where:

- This case originated in *Littlefield v. U.S. Dep't of the Interior*, 199 F. Supp. 3d 391 (D. Mass. 2016) ("*Littlefield*"), which is still pending in the federal courts in Massachusetts;

---

[1] David Littlefield, Michelle Littlefield, Tracy Acord, Francis Canary, Jr., Deborah Canary, Veronica Casey, Patricia Colbert, Will Courcy, Vivian Courcy, Antonio Defaria, Donna Defaria, Kim Dorsey, Francis Lagace, Jill Lagace, Kelly Dorsey, David Lewry, Kathleen Lewry, Michele Lewry, Richard Lewry, Robert Lincoln, Christina McMahon, Carol Murphy, Dorothy Peirce, David Purdy, Louise Silvia.

[2] The *Littlefield* Plaintiffs are simultaneously moving to intervene as defendants in this lawsuit to protect their interests as set forth in their separate moving papers.  Regardless of whether this motion to transfer is granted, the *Littlefield* Plaintiffs have made the requisite showing for intervention as of right.  Pursuant to Local Rule 7(m), on February 1, 2019, David Tennant, counsel for the Intervenors, communicated by e-mail with counsel of record for the Tribe and the Federal Defendants.  The Tribe opposes the *Littlefield* Plaintiffs' motion to transfer but does not oppose their separate motion to intervene (filed concurrently herewith).  The Federal Defendants have not taken a position on either motion by the *Littlefield* Plaintiffs.

[3] The Declaration of David Tennant is the same declaration filed in support of Intervenors' Motion to Intervene.  For the Court's convenience, that declaration and one of the exhibits thereto cited in this Motion (Exhibit 3) have been re-attached to this Motion.

- The agency decision being challenged in this action was issued on remand from *Littlefield*;

- The Honorable William D. Young of the District of Massachusetts, who presided over the *Littlefield* case and remanded the action, is familiar with the dispute, the parties, and the specific legal question raised here, namely, whether the Department of the Interior ("Interior") has authority to take land into trust for the Mashpee Wampanoag Tribe ("the Tribe") under the Indian Reorganization Act of 1934 ("IRA");

- The Tribe occupies ancestral homelands in the Town of Mashpee, Massachusetts, which located on Cape Cod;

- The Tribe claims to be entitled to a reservation in East Taunton, Massachusetts, 50 miles away from the Town of Mashpee, on which the Tribe plans to build and operate a billion-dollar casino;

- Interior held public hearings in the southeast region of Massachusetts before issuing the Record of Decision that purports to take into trust 151 acres of land in East Taunton and declare it an Indian reservation eligible for Indian gaming;

- The effects of the planned tribal casino will be felt in East Taunton for generations to come; and

- The *Littlefield* Plaintiffs successfully sued Interior and obtained a ruling from the district court overturning the Record of Decision—deeming the Secretary's interpretation of the IRA "not close"—and declaring that the Secretary lacked authority to take land into trust for the Tribe.

As set forth below, controversies generally should be decided in the forum where the controversy exists. *See Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 509 (1947); *Shawnee Tribe v. United*

*States,* 298 F. Supp.2d 21, 26-27 (D.D.C. 2002).  This is especially so where, as here, the

transferee/forum court is already familiar with the dispute, the parties, and the specific legal issue

at hand—and is the home of the plaintiffs.

## FACTUAL BACKGROUND

The Tribe submitted a request to the Bureau of Indian Affairs to acquire approximately 151

acres of land in trust on its behalf in East Taunton, Massachusetts, for purposes of establishing a

Class III gaming facility, as well as another 170 acres in the Town of Mashpee, where the Tribe has

been based since the early 1600s.  By a final Record of Decision issued on September 18, 2015

("ROD"), pursuant to 25 C.F.R. Part 151, the Assistant Secretary-Indian Affairs approved the

transfer into trust of the land requested by the Tribe, including the 151 acres in East Taunton.  ROD

(Exhibit A) at 5.  The ROD declared the 151 acres the Tribe's "reservation" and further declared the

land eligible for gaming.  ROD (Exhibit A) at 52-60.

The *Littlefield* Plaintiffs are individual residents who live in East Taunton and are directly

impacted by any development on the purported trust lands.  Their economic, environmental, and

aesthetic interests would be gravely harmed by the construction and operation of a billion-dollar, Las

Vegas-style casino resort in their quiet semirural community.  *See* Amended Complaint, *Littlefield v.*

*Dep't of Interior*, No. 16-10184 (D. Mass. filed May 2, 2016) (attached as Exhibit B).  The Tribe's

planned activity and development on the purported trust land would occur beyond the reach of state

and local land use and zoning laws because the ROD declared (without legal authority) that the 151

acres were the Tribe's reservation and thus the sovereign territory of an Indian nation.

The *Littlefield* Plaintiffs brought suit in February 2016 in the District of Massachusetts to rein

in unlawful agency action that threatened their community and way of life.  Long before Interior's

issuance of the ROD, residents from East Taunton (including many who would later join the

*Littlefield* suit) attended public hearings in southeastern Massachusetts sponsored by Interior, and

submitted public comments to try to persuade Interior that the Tribe was not eligible to have land

taken into trust under the IRA under the controlling authority of *Carcieri v. Salazar*, 555 U.S. 379

(2009).  The citizens' opposition persisted over three years (2012-2015) but did nothing to dissuade

Interior from misreading the statute.  Having prevailed in federal court in July 2016, when Judge

Young overturned the ROD, the *Littlefield* Plaintiffs are still waiting to obtain the relief they earned,

namely, removal of the land from trust.[4]  For its part, Interior contends that the lands in East

Taunton remain in trust notwithstanding the district court's invalidation of the ROD.  Judge Young's

judgment remains to be executed.

While venue is proper in the District of Columbia under 28 U.S.C. § 1391(e) because the

Federal Defendants are located here and the challenged agency decision was made by or on behalf of

the Secretary of the Interior (*see generally Alabama v. U.S. Army Corps of Eng'rs*, 304 F. Supp. 3d 56, 62

(D.D.C. 2018)), this Court should exercise its discretion to transfer venue to the District of

Massachusetts under 28 U.S.C. § 1404(a).  The reasons to do so include the fact that the District of

Massachusetts has already waded significantly into the specific legal issue of the Secretary's authority

to take land into trust for the Tribe; the transferee district is home to the Tribe; and the impact of

any decision on the status of the Tribe's trust lands in East Taunton will be felt there.

## STATUTORY BACKGROUND

Transfer of venue is governed by 28 U.S.C. § 1404(a).  Section 1404(a) facilitates the transfer

of actions to a more appropriate federal forum.  *See Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 254

(1981); *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  The purpose of § 1404(a) is "to prevent the

waste 'of time, energy and money' and 'to protect litigants, witnesses and the public against

unnecessary inconvenience and expense.'"  *Van Dusen*, 376 U.S. at 616 (quoting *Continental Grain*

---

[4] The Tribe has stymied its own appeal from the decision in *Littlefield,* hoping to never be bound by a final judgment in that case.  Tennant Decl. ¶ 9; Tennant Decl., Exh. 3, at 1-8.

*Co. v. Barge FBL-585*, 364 U.S. 19, 26-27 (1960)).  The statute affords the Court wide discretion to

determine the appropriate venue of a case based upon a plaintiff's claims and the issues to be

litigated.  *Villa v. Salazar*, 933 F. Supp. 2d 50, 54 (D.D.C. 2013) ("The decision whether to transfer

under § 1404(a) is left largely to the district court's discretion, and of necessity depends on the facts

of each case." (quoting *Smiths Indus. Med. Sys., Inc. v. Ballard Med. Prods., Inc.*, 728 F. Supp. 6, 7

(D.D.C.1989)))).  Section 1404(a) states:

> (a) For the convenience of the parties and witnesses, in the interest of justice, a
> district court may transfer any civil action to any other district or division where it
> might have been brought . . .

28 U.S.C. § 1404(a).

Courts apply a two-step process when reviewing motions to transfer venue under Section

1404(a).  "First, a court must decide whether plaintiffs could have brought their case in the proposed

transferee district."  *Alabama*, 304 F. Supp. 3d at 62 (citing *Van Dusen*, 376 U.S. at 624); *accord Relf v.*

*Gasch*, 511 F.2d 804, 806-07 (D.C. Cir. 1975).  Second, if this threshold issue is answered in the

affirmative, the court then considers a number of other factors—convenience of the parties,

convenience of witnesses, and the interest of justice—through a balancing of public and private

interests.  *Alabama*, 304 F. Supp. 3d at 62-63 ("Courts consider a number of 'public' and 'private'

interests in making their transfer decisions."); *see also Stewart Organization, Inc. v. Ricoh Corp.*, 487 U.S.

22, 29 (1988) (stating a court must exercise its "discretion ... to adjudicate [the] motion[ ] for transfer

according to an 'individualized, case-by-case consideration of convenience and fairness'" (citation

omitted)); *Alaska Wilderness League v. Jewell*, 99 F. Supp. 3d 112, 115 (D.D.C. 2015).

The private-interest factors the court must consider "include: (1) the plaintiff's choice of

forum; (2) the defendant's choice of forum; (3) where the claim arose; (4) the convenience of the

parties; (5) the convenience of witnesses, . . . and (6) the ease of access to sources of proof."

*Alabama*, 304 F. Supp. 3d at 63 (quoting *Niagara Pres., Coal., Inc. v. FERC*, 956 F. Supp. 2d 99, 104

(D.D.C. 2013)).

The public-interest considerations to be weighed "include: (1) the transferee's familiarity with the governing laws; (2) whether one circuit is more familiar with the same parties and issues than other courts; (3) the relative congestion of each court; and (4) the local interest in deciding local controversies at home." *Alabama*, 304 F. Supp. 3d at 63 (citing *Sheffer v. Novartis Pharms. Corp.*, 873 F. Supp. 2d 371, 379 (D.D.C. 2012)). The public interest favors transfer when the proposed transferee court possesses "specialized knowledge of both the parties, their history of litigation, and the statute at issue." *Wyandotte Nation v. Salazar*, 825 F. Supp. 2d 261, 267-68 (D.D.C. 2011); *accord Villa*, 933 F. Supp. 2d at 54 ("transfer may be 'appropriate when there is an ongoing related case in another jurisdiction'" (quoting *Aftab v. Gonzalez*, 597 F. Supp. 2d 76, 80 (D.D.C. 2009)); *Weinberger v. Tucker*, 391 F. Supp. 2d 241, 245 (D.D.C. 2005) ("the interests of justice strongly support a transfer to the court that reviewed and decided the prior litigation between the parties . . .").

While the movant bears the burden of demonstrating that transfer is warranted, when a plaintiff chooses a forum that is not its home—as in the case here—the plaintiff's choice of forum is entitled to far less deference. *See Piper Aircraft Co.*, 454 U.S. at 255-56 ("When the plaintiff has chosen the home forum, it is reasonable to assume that the choice is convenient; but when the plaintiff or real parties in interest are foreign, this assumption is much less reasonable and the plaintiff's choice deserves less deference."); *Shawnee Tribe*, 298 F. Supp. 2d at 24-25 (the deference that may ordinarily be due a plaintiff's choice of forum is substantially lessened where suit was brought in the plaintiff's non-home forum and transfer is sought to the forum where the plaintiff resides).

## ARGUMENT

I.  **VENUE SHOULD BE TRANSFERRED TO THE DISTRICT OF MASSACHUSETTS UNDER SECTION 1404(A)'S TWO-PART TEST.**

### A.   This Action Could Have Been Brought in the District of Massachusetts

The present lawsuit could have been brought by the Tribe in the District of Massachusetts because the Town of Mashpee, on Cape Cod, Massachusetts, is the home of the Tribe, and "a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated" is in Massachusetts.  28 U.S.C. § 1391(e)(1)(B); *see Villa,* 933 F. Supp. 2d at 55 (concluding venue under 28 U.S.C. § 1391(e)(1)(B) exists in the proposed transferee district where lands were acquired in trust for tribe because that district is where "a substantial part of the events or omissions giving rise to the claim occurred"*); Wyandotte Nation*, 825 F. Supp. 2d at 265 (finding venue would be proper in the proposed transferee district (Kansas) because the land that is "the subject of the Tribe's land-into-trust application and complaint is located entirely within the State of Kansas"); *Stand Up for Cal.! v. U.S. Dep't of the Interior*, 919 F. Supp. 2d 51, 63-64 (D.D.C. 2013) (finding lawsuit challenging land into trust decision "might have been brought" in the district where tribe and land is located (Eastern District of California) "both because the land in question, i.e., the 'property that is the subject of the action,' is located in that district, and also because 'a substantial part of the events or omissions giving rise to the claim occurred' in that district, such as the public hearings underlying the fee-to-trust decision...").

The present lawsuit arises from the Federal Defendants' decisions affecting real property located in East Taunton, Massachusetts (and the Town of Mashpee), first by way of the 2015 ROD transferring that land into trust, and then on remand from *Littlefield* by way of a supplemental decision on September 7, 2018, in which the Secretary concluded that he has no authority under the IRA to take land into trust for the Tribe.  Accordingly, venue in Massachusetts would have been (and is) proper under § 1391(e)(1)(B).  Given that the entire controversy revolves around lands

located in Massachusetts, and a pending lawsuit in federal court in Massachusetts still has jurisdiction over the legal status of the lands before final judgment is entered—and that pending action in Massachusetts spawned this closely related remand action—the Tribe not only could have brought this lawsuit in the District of Massachusetts, it should have been brought there where it would have been properly assigned to Judge Young as a related case.

     **B.**     **Public and Private Considerations Heavily Favor Transferring This Action  to the District of Massachusetts**

          **1.**     **Private Considerations Favor Transfer**

As explained above, "plaintiff's choice is entitled to 'substantially less deference' when 'plaintiff chooses a forum that is not its home forum.'" *Alabama*, 304 F. Supp. 3d at 63 (quoting *Niagara Pres., Coal., Inc.*, 956 F. Supp. 2d at 104); see *Shawnee Tribe*, 298 F. Supp. 2d at 24-25; *accord New Hope Power Co. v. U.S. Army Corps of Eng'rs*, 724 F. Supp. 2d 90, 95 (D.D.C. 2010); *Thayer/Patricof Educ. Funding, LLC v. Pryor Res., Inc.*, 196 F. Supp. 2d 21, 31 (D.D.C. 2002) ("The choice of forum is ordinarily afforded great deference, except when the plaintiff is a foreigner in that forum."). Deference to the plaintiff's choice of forum is further minimized if the "choice of forum has no meaningful ties to the controversy and no particular interest in the parties or subject matter." *Trout Unlimited v. U.S. Dept. of Agriculture*, 944 F. Supp. 13, 16 (D.D.C. 1996) (internal quotations omitted); *see also United States v. H & R Block, Inc.*, 789 F. Supp. 2d 74, 79 (D.D.C. 2011).

The choice of forum here deserves little weight because Massachusetts is not just the home to the plaintiff in a generic sense, Massachusetts is where the Tribe claims to have ancestral lands dating back 6,000 years; where the Tribe has continuously resided in the Town of Mashpee on Cape Cod since the early 1600s; and where, by virtue of this lawsuit, the Tribe seeks to establish sovereign Indian territory (an Indian reservation) that the Tribe can govern and on which it can build and operate a billion-dollar tribal casino. These historical, political, governmental, and economic ties to Massachusetts dominate the controversy. In contrast, the District of Columbia

has no "meaningful ties to the controversy and no particular interest in the parties or subject

matter." *See Wyandotte Nation*, 825 F. Supp. 2d at 269; *New Hope Power Co.,* 724 F. Supp. 2d at 95.

The fact that a federal agency based in the District of Columbia played a role in the

decision-making process under review does not change this result. Federal agencies, like Interior,

make decisions in the District of Columbia every workday. "It is settled law that 'mere

involvement on the part of federal agencies, or some federal officials who are located in

Washington D.C. is not determinative.'" *Alabama*, 304 F. Supp. 3d at 64 (quoting *Shawnee Tribe*,

298 F. Supp. 2d at 25–26); *Wyandotte Nation*, 825 F. Supp. 2d at 269 ("[M]ere involvement on the

part of federal agencies, or some federal officials who are located in Washington, D.C. is not

determinative"); *see also Wyandotte Nation v. National Indian Gaming Comm'n*, No. 04–cv–1727, 2005

WL 8160917, at *4 (D.D.C. May 2, 2005) ("Under § 1404(a), the court generally accords little

weight to the location of federal agencies and counsel."). "Instead, there must be a 'real

connection between the District of Columbia and this litigation' that goes beyond the presence of

federal agency officials who are 'generally regulating and overseeing the [administrative] process.'"

*Id.* (quoting *Shawnee Tribe,* 298 F. Supp. 2d at 26). No such "real connection" exists between the

District of Columbia and the litigation.

Given that the present controversy is thoroughly rooted in Massachusetts' land with the

future of the Tribe's trust lands, reservation status, and casino gaming hanging in the balance—and

the impact of any decision in this lawsuit will be felt keenly by the citizens of Massachusetts—no

deference should be given to Tribe's choice of forum.

Plaintiff will not be inconvenienced by a transfer to the District of Massachusetts. The

Tribe's leadership resides in Massachusetts and the Tribe had no trouble intervening in the *Littlefield*

action in the District of Massachusetts, demonstrating the convenience of that forum to it.[5]

### 2. **Public Considerations Strongly Favor Transfer**

That a related action is pending in the proposed transferee district strongly supports transferring venue to that forum to promote the interest of justice and efficiency. *See Me-Wuk Indian Cmty. of the Wilton Rancheria v. Kempthorne,* 246 F.R.D. 315, 321-22 (D.D.C. 2007) ("This Court finds that the 'interests of justice are better served when a case is transferred to the district where related actions are pending.'"(quoting *Reiffin v. Microsoft Corp.,* 104 F. Supp. 2d 48, 56 (D.D.C. 2000))); *see Holland v. A.T. Massey Coal,* 360 F. Supp. 2d 72, 77 (D.D.C. 2004) (stating that "the fact that there is an ongoing case dealing with similar issues in another jurisdiction weighs very heavily in favor of a transfer under § 1404(a)" (citing *In re Scott,* 709 F.2d 717, 721 n. 10 (D.C. Cir. 1983))).

This Court, in *Wyandotte Nation,* 825 F. Supp. 2d at 267-268, transferred venue to the District of Kansas, due to the transferee court's "specialized knowledge of both the parties, their history of litigation, and the statute at issue," based on prior litigation between the parties in that district. The Court specifically observed that the District of Kansas has "familiarity with the both the legal issues involved and [Interior's] administrative decision-making process," along with "experience in resolving tribal land allocation issues in these cases, involving both the plaintiff and the defendant as litigants." *Id.* at 268. The Court concluded that the transferee district's experience "strongly demonstrates that, in the interests of judicial economy and efficiency, this case should be transferred to the District of Kansas." *Id.*

Similarly, this Court granted the government's motion to transfer venue in a case involving

---

[5] The Court does not need to consider the fifth and sixth private interest factors (i.e., the convenience of witnesses and ease of access to sources of proof) since an APA action does not involve discovery, witnesses, or a trial. *See Alabama,* 304 F. Supp. 3d at 66-67 (citing *Niagara Pres., Coal., Inc.,* 956 F. Supp. 2d at 104); *see also Sierra Club v. Van Antwerp,* 523 F. Supp. 2d 5, 9 (D.D.C. 2007) (when review is based solely upon the administrative record, "the convenience of witnesses and access to proof [are] irrelevant to the issue of transfer of venue.")

two fee-to-trust acquisitions for a tribe in California.  *Villa*, 933 F. Supp. 2d at 56-57 (Collyer, J.).

The Court concluded that transfer was appropriate because the lands at issue were located there,

the plaintiff Indian tribal leader (Chief Villa) was located there, and, most importantly, the Eastern

District of California was home to related cases involving the same disputed Interior decision.  *Id.* at

56 ("Paramount in the § 1404(a) inquiry in this case is the pendency of the California cases, which,

as indicated, involve APA challenges to the exact same decision at issue in this case.  Judicial

economy and convenience strongly favor transfer of this case to the district in which the California

cases are pending."); *see also Mandan v. U.S. Dep't of the Interior*, No. 18-cv-1462, 2019 WL 451351, at

*6 (D.D.C. Feb. 5, 2019) (granting motion to transfer venue in the interest of judicial economy

"[b]ecause the District of North Dakota is familiar with the facts and issues in this case and has

already considered the likely merits of some of the Tribe's arguments").

      Here, the proposed transferee district (Massachusetts) is not just home to related litigation.

The *Littlefield* APA action and the Tribe's APA action are two sides of the same coin.  The two

actions involve the same land-into-trust application by the Tribe,  pertain to the same lands in East

Taunton (and Town of Mashpee), and raise the same question of whether the Tribe can meet the

definition of "Indian" under 25 U.S.C. § 479 (definition "one" or "two").  Given the identity of

subject matter, parties, and legal inquiry—and the overarching relationship between the *Littlefield*

lawsuit and this action on remand from *Littlefield*—transferring this case to the District of

Massachusetts promotes judicial efficiency and the interests of justice.  *See Villa*, 933 F. Supp. 2d at

56-57.  Judge Young has already interpreted the definition of "Indian" in the IRA, which is critical

to determining the Tribe's eligibility to have lands taken into trust, and that court is familiar with

the specific legal dispute and the parties.  Judge Young is at a substantial advantage in resolving the

present lawsuit based upon his disposal of *Littlefield*.  It would be wasteful to have the remand

decision from *Littlefield*—intimately tied to the *Littlefield* decision—resolved by another judge who

would have to invest substantial time to become acquainted with the complex factual and legal background in this case.  Section 1404(a) was designed to prevent unnecessary duplication of effort. Transfer here will conserve judicial resources and be far more efficient.  *See Continental Grain Co.,* 364 U.S. at 26).[6]

The last factor—having local controversies decided at home—is commonly relied upon by courts to transfer cases to the forum where the action arose and the resolution of the dispute will be felt.  *See Mandan*, 2019 WL 451351, at *3 ("'[P]erhaps the most important factor' in the motion-to-transfer balancing test is the interest in having local controversies decided locally" (quoting *Alaska Wilderness League v. Jewell*, 99 F. Supp. 3d 112, 116 (D.D.C. 2015)); *see generally Gulf Oil v. Gilbert*, 330 U.S. 501, 509 (1947).

This Court has repeatedly recognized that the interests of justice are promoted by transferring cases involving Indian lands and gaming controversies back to the state in which the controversy, the subject land, and the proposed land use is located. *Wyandotte Nation*, 825 F. Supp. 2d at 267 ("noting that courts have consistently 'transfer[red] cases involving Indian gaming controversies back to the state in which the controversy and the gaming were located'" (quoting *Santee Sioux Tribe of Neb. v. Nat'l Indian Gaming Comm'n*, No. 99–cv–528, slip op. at 8 (D.D.C. Apr. 19, 1999)); *e.g., Me-Wuk Indian Community of the Wilton Rancheria*, 246 F.R.D. at 321; *Shawnee Tribe,*

---

[6] The *Littlefield* action remains pending in Massachusetts because the Tribe refuses to prosecute its appeal from Judge Young's July 28, 2016 ruling.  The Tribe fears an affirmance by the First Circuit will generate a final judgment that will cause the East Taunton land to revert to fee simple status. The Tribe prefers to have the East Taunton land stay in its unlawful trust status as the Tribe lobbies Congress to pass a bill to reverse Judge Young's ruling in *Littlefield* and Interior's denial on remand from *Littlefield*.

The Tribe's opposition to this Motion and their aversion to a return to Massachusetts—to a district court familiar with the dispute and the parties—likely reflects a deliberate choice on the Tribe's part to engage in forum shopping.  As explained in the *Littlefield* Plaintiffs' proposed answer to the Tribe's Complaint, the First Circuit and the District of Massachusetts have issued a series of decisions going back decades that reject the land claims made by the Tribe.  The Tribe may have hoped that, by filing in this District, it could avoid this long history of adverse precedent.

298 F. Supp. 2d at 26 -27; *Towns of Ledyard, N. Stonington and Preston, Conn. v. United States*, No. 95-0880, 1995 WL 908244, at *2 (D.D.C. May 31, 1995).

This Court's long-standing practice of transferring cases involving Indian lands to the district in which the lands and tribe are located was documented in a 2013 filing by the government in *Stand 'Up! for California v. U.S. Dept. of Interior*, 1:12-cv-2039-BAH (ECF No. 20),[7] in which the government submitted a half-dozen unpublished decisions in support of an ultimately unsuccessful motion to transfer venue in that case.[8]

Such controversies entail intense local interest (including often strong opposition to) the federal government's creation of an Indian reservation within a state, which removes the land from the taxing and regulatory authority of state and local governments. *See Wyandotte Nation*, 825 F. Supp. 2d at 266-67 (crediting defendants' assertions that "acquisition of the property into trust would establish tribal sovereignty over the land, thereby implicating considerable economic, political, and legal interests" and that such effects would include "changes to criminal or civil jurisdiction, tax revenue losses, changes to zoning and land use, and other related concerns"). When the federal government also issues a declaration that the tribe is authorized to engage in

---

[7] The *Stand Up for California!* court denied the government's motion to transfer, finding on the particular facts presented that the congestion in the Eastern District of California would prejudice plaintiffs' ability to get a hearing on their motion for a preliminary injunction before the government transferred the land into trust. *Stand Up for Cal. v. U.S. Dep't of the Interior*, 919 F. Supp. 2d 51, 65 (D.D.C. 2013). The Court also observed that "the Eastern District of California is among the more overworked federal courts in the nation" and that the "weight given to the local interest in having localized controversies decided at home is diminished in this case because the local interests most vocally opposed to the trust transfer (the plaintiffs)" are "opposed to transfer." *Id.* at 64 n. 14, 65.

[8] *United Auburn Indian Cmty. of the Auburn Rancheria v. Salazar,* No. 12-1988 (D.D.C. Jan. 4, 2013); *Apache Tribe of the Mescalero Reservation v. Reno and Babbitt,* No. 96-115 (D.D.C. Feb. 5, 1996); *Cheyenne-Arapaho Tribe of Oklahoma v. Reno,* No. 98-065RMU (D.D.C. Sept. 9, 1998); *Santee Sioux Tribe of Nebraska v. National Indian Gaming Commission,* No. 99-528 (D.D.C. April 19, 1999); *Lac Courtes Oreilles Band of Lake Superior Chippewa Indians of Wisconsin v. United States,* No. 01-1042 (D.D.C. Aug. 16, 2002); *Wyandotte,* No. 04–cv–1727, slip op. (D.D.C. May 2, 2005).

Indian gaming on its newly-created reservation, local interest and opposition predictably intensify. *Id.*, at 267. A tribe's construction and operation of a casino generates significant off-site impacts that harm nearby property owners, giving rise to Article III standing to challenge Interior's land-into-trust decision in court. *See Patchak v. Salazar,* 632 F.3d 702, 704 (D.C. Cir. 2011) *aff'd, Match-E-Be-Nash-She-Wish Band Indians v. Patchak,* 567 U.S. 209, 132 S. Ct. 2199 (2012).

This Court in *Shawnee Tribe*, 298 F. Supp. 2d at 26-27, explained why transfer is appropriate to address the "local interest in deciding a sizeable local controversy at home." At issue in *Shawnee Tribe* was whether portions of a defunct military base, designated as surplus property by the General Services Administration, should be treated as reservation lands and subject to transfer to Interior to be held in trust for the Shawnee Tribe. *Id.* at 22. The Court decided that the lawsuit's transfer from the District of Columbia to Kansas was appropriate, stating that "the most persuasive factor favoring transfer . . . is the local interest in deciding a sizable local controversy at home." *Id.* at 26. The Court recognized any ruling on the reservation status of the surplus federal property would have far-reaching consequences for the counties and neighborhoods in Kansas impacted by that decision, implicating considerable local economic, political, and environmental interests. *Id.* The *Shawnee Tribe* Court concluded the lawsuit should not proceed in the District of Columbia, because "Kansas citizens have little to no connection" to this District. *Id.*

In a similar vein, the Court in *Wyandotte Nation*, in granting the government's motion to transfer venue to the District of Kansas, observed that "the decision to accept the Park City Land into trust pursuant to the Land Claim Settlement Act is a matter of a great interest to the local Kansas community, and the case has no significant connection to the District of Columbia." 825 F. Supp. 2d at 267.

This Court articulated the considerations in favor of transfer in a case involving the Santee

14

Sioux Tribe of Nebraska:

> [t]he federal courts do not allow cameras or tape recorders in courtrooms, there is intense local interest in this controversy, and there is a significant benefit to allowing those whose lives will be most immediately affected by the outcome of litigation, as well as the local media, to physically attend the proceedings which will determine that outcome.  There is no substitute for personally observing, watching and evaluating the judge who presides, hearing the quality of the arguments, and getting a first-hand impression of whether the proceeding is being handled with the appropriate fairness and seriousness.  Furthermore, the members of this District Court have repeatedly honored this principle by transferring cases involving Indian gaming controversies back to the state in which the controversy and the gaming were located.

*Santee Sioux Tribe of Nebraska*, No. 99-528, slip op. at 8-9 (Exhibit C).

In a similar challenge to a fee-to-trust decision, Judge Walton granted a motion to transfer venue to the Eastern District of California because "there is a strong local interest in having the controversy decided . . . where the land is located."  *United Auburn Indian Cmty. of the Auburn Rancheria v. Salazar*, No. 12-1988, 2013 WL 12313021, at *2 (D.D.C. Jan. 4, 2013).  The fact that federal officials in Washington, D.C. made the decision at issue did not change the venue determination, nor did the presence of issues of "national concern."  *Id.*  Those considerations did not "negate the local community's stake in the outcome of [the] case."  *Id.; see Mandan,* 2019 WL 451351, at *3-*6 (granting Intervenor-Defendant's motion to transfer venue to North Dakota where Tribe and Indian lands are located, over claims that federal agency decision had national significance).

The wisdom of deciding local controversies in the home forum extends beyond cases involving Indian lands.  In another case originally filed in the District of Columbia, *Southern Utah Wilderness Alliance v. Norton*, 315 F. Supp. 2d 82 (D.D.C. 2004), the plaintiff challenged Bureau of Land Management policies affecting 21 parcels of land in Utah.  This Court concluded that National Environmental Policy Act considerations were localized interests which "directly touch[ed] local citizens."  *Id.* at 88.  Even though the federal policy at issue attracted national

attention, the Court granted the Government's transfer motion stating that "[i]t makes sense that these alleged consequences would be most particularly felt in Utah, and thus that the courts of Utah would have a clear interest in resolving the dispute." *Id.* at 89; *see also Trout Unlimited*, 944 F. Supp. at 17 (granting motion to transfer to Colorado a suit involving the United States Forest Service's decision to issue an easement for the operation of a dam and reservoir on public lands because of the "impact that the resolution of this action will have upon the affected lands, waters, wildlife and people of that state"); *Sierra Club v. Flowers*, 276 F. Supp. 2d 62, 71 (D.D.C. 2003) (granting motion to transfer suit involving the Florida Everglades in part because of the extent of Florida's local interest).

Nor will the transfer of this matter delay its resolution. Indeed, Judge Young decided the *Carcieri* issue in *Littlefield* in under two months from assignment of the case, recognizing the urgency of the situation and need for a timely ruling to benefit all stakeholders. Judge Young converted the *Littlefield* Plaintiffs' motion for injunctive relief into an immediate "trial" on the merits, focused exclusively on the *Carcieri* issue. The *Littlefield* Court heard argument on July 11, 2016 and issued its decision on July 28, 2016.

In light of Judge Young's expedited treatment of the *Littlefield* case, and that court's considerable "head start" on both the facts and the law raised by the Tribe's lawsuit against Interior, transferring venue to the District of Massachusetts will speed its resolution.

## **CONCLUSION**

It speaks volumes that the Tribe would sue Interior in the District of Columbia, preferring a random assignment of a district court judge here, rather than litigate at home before a judge who is familiar with the dispute and has already ruled against Interior.  For all the reasons set forth above, venue should be transferred to the District of Massachusetts where the matter may be disposed of expeditiously, and in that speedy resolution, bring long-over-due finality to the *Littlefield* action.

Dated:  February 21, 2019                                   Respectfully submitted,


/s/ Andrew Kim
Andrew Kim (D.C. Bar. No. 1029348)
GOODWIN PROCTER LLP
901 New York Avenue NW
Washington, DC  20001
Tel.:  202.346.4000
Fax.:  202.346.4444
*AndrewKim@goodwinlaw.com*

DAVID H. TENNANT (admitted *pro hac vice*)
Law Office of David Tennant PLLC
3349 Monroe Avenue, Suite 345
Rochester, NY 14618
Tel.:  585.708.9338
*david.tennant@appellatezealot.com*

*Attorneys for Intervenor-Defendants*

17

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 21, 2019, I electronically filed the foregoing Motion to Transfer Venue and Memorandum in Support and accompanying documents with the Clerk of the Court of the U.S. District Court for the District of Columbia by using the Court's CM/ECF system. All participants in this case are registered CM/ECF users and will be served by the CM/ECF system.

/s/ Andrew Kim
Andrew Kim