UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MASHPEE WAMPANOAG TRIBE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| RYAN ZINKE, in his official capacity as Secretary of the Interior, | ) | |
| | ) | |
| and | ) | |
| | ) | Civil Action No. 1:18-cv-02242-RMC |
| U.S. DEPARTMENT OF THE INTERIOR | ) | |
| | ) | |
| Defendants | ) | |
| and | ) | |
| | ) | |
| DAVID LITTLEFIELD *et al.*, | ) | |
| | ) | |
| Intervenor-Defendants. | ) | |
| | ) | |

REPLY MEMORANDUM IN SUPPORT OF THE *LITTLEFIELD* PLAINTIFFS'
MOTION TO TRANSFER VENUE

## TABLE OF CONTENTS

INTRODUCTION.................................................................................................................................1

ARGUMENT.......................................................................................................................................1

I.     THE LEGAL ISSUE TO BE DECIDED HERE IS NOT DISCRETE FROM
       THE LEGAL ISSUE DECIDED BY THE DISTRICT OF MASSACHUSETTS
       IN *LITTLEFIELD*—TO THE CONTRARY, JUDGE YOUNG REACHED
       THE TRIBE'S "UNDER FEDERAL JURISDICTION" STATUS..........................................1

II.    RESOLUTION OF THE TRIBE'S APA ACTION DOES NOT HAVE
       NATIONAL SIGNIFICANCE.................................................................................................8

III.   THE FACT THAT A SENIOR FEDERAL OFFICIAL ISSUED THE
       DECISION DOES NOT WARRANT KEEPING THE CASE HERE. ...............................9

IV.    THE CONVENIENCE OF THE PARTIES AND WITNESSES, AND ACCESS
       TO EVIDENCE, CARRY LITTLE OR NO WEIGHT IN AN APA CASE, AND
       DO NOT WEIGH IN FAVOR OF THIS COURT'S RETENTION OF
       JURISDICTION.....................................................................................................................10

V.     INTERVENOR-DEFENDANTS SEEK EXPEDITED RESOLUTION OF THIS
       ACTION AS THEY DID IN *LITTLEFIELD* AS PLAINTIFFS........................................12

VI.    INTERVENOR-DEFENDANTS ARE NOT ENGAGING IN FORUM
       SHOPPING.............................................................................................................................12

CONCLUSION..................................................................................................................................13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Carcieri v. Salazar,*
   555 U.S. 379 (2009) ...................................................................................................2, 8, 9, 11

*Forest Cty. Potawatomi Cmty. v. United States,*
   169 F. Supp. 3d 114 (D.D.C. 2016) ..................................................................................6

*Fund for Animals v. Norton,*
   352 F. Supp. 2d 1 (D.D.C. 2005) ...................................................................................6, 7

*Greater Yellowstone Coalition v. Bosworth,*
   180 F. Supp. 2d 124 (D.D.C. 2001) ....................................................................................7

*KG Urban Enters., LLC v. Patrick,*
   693 F.3d 1 (1st Cir. 2012) ................................................................................................11

*KG Urban Enters., LLC v. Patrick,*
   839 F. Supp. 2d 388 (D. Mass. 2012) .............................................................................11

*KG Urban Enters., LLC v. Patrick,*
   969 F. Supp. 2d 52 (D. Mass. 2013) ...............................................................................11

*Littlefield v. Dept. of Interior,*
   199 F. Supp. 3d 391 (D. Mass. 2016) .......................................................................*passim*

*Mandan v. United States Dep't of the Interior,*
   No. 18-cv-1462, 2019 WL 451351 (D.D.C. Feb. 5, 2019) ......................................... 4, 9, 10

*Mashpee Tribe v. New Seabury Corp.,*
   427 F. Supp. 899 (D. Mass. 1977) ..................................................................................11

*Mashpee Tribe v. New Seabury Corp.,*
   592 F.2d 575 (1st Cir. 1979) ...........................................................................................11

*Mashpee Tribe v. Sec'y of Interior,*
   820 F.2d 480 (1st Cir. 1987) ...........................................................................................11

*Mashpee Tribe v. Town of Mashpee,*
   447 F. Supp. 940 (D. Mass. 1978) ..................................................................................11

*Mashpee Tribe v. Watt,*
   542 F. Supp. 797 (D. Mass. 1982) ..................................................................................11

*Mashpee Tribe v. Watt,*
    707 F.2d 23 (1st Cir. 1983) .................................................................................................11

*Me-Wuk Indian Cmty. of the Wilton Rancheria v. Kempthorne,*
    246 F.R.D. 315 (D.D.C. 2007) ..............................................................................................4

*Nat'l Law Ctr. on Homelessness v. U.S. Dep't of Veterans Affairs,*
    842 F. Supp. 2d 127 (D.D.C. 2012) .....................................................................................10

*Tonoho O'Odham Nation v. Salazar,*
    No. 10-CV-0472, 2010 U.S. Dist. LEXIS 145729 (D.D.C. Apr. 21, 2010) ...................5, 6

*Towns of Ledyard, N. Stonington and Preston, Conn. v. United States,*
    No. 95-0880, 1995 WL 908244 (D.D.C. May 31, 1995) .......................................................9

*Tuttle v. Jewell,*
    952 F. Supp. 2d 203 (D.D.C. 2013) ......................................................................................10

*United Auburn Indian Cmty. of the Auburn Rancheria v. Salazar,*
    No. 12-988, 2013 WL 12313021 (D.D.C. Jan. 4, 2013) ........................................................9

*Villa v. Salazar,*
    933 F. Supp. 2d 50 (D.D.C. 2013) ..........................................................................................4

*Wyandotte Nation v. Salazar,*
    825 F. Supp. 2d 261 (D.D.C. 2011) .........................................................................4, 5, 11, 12

**INTRODUCTION**

The Tribe presents three main arguments for why the case decided on remand from *Littlefield* should not go back to the District Court of Massachusetts—and Judge William D. Young—despite that court's familiarity with the parties, the dispute, and the specific statute (IRA), and notwithstanding that the controversy concerns the creation of Indian reservations in Massachusetts and gaming on those lands, which are undeniably of great local concern.  The Tribe's opposition boils down to:

1.  The Tribe's case presents a "discrete legal issue" that is entirely distinct from Interior's acquisition of trust land for the Mashpees in Massachusetts and declaration of an Indian reservation in East Taunton eligible for tribal gaming—such that Judge Young has no greater familiarity with the issue to be resolved on remand;

2.  The Tribe's case has national significance that trumps any local concerns; and

3.  Senior officials within the Department of Interior, located in D.C., made the decision that is the subject of the Tribe's APA action.

The Tribe's arguments for avoiding Judge Young lack merit and should be rejected.

**ARGUMENT**

**I.  THE LEGAL ISSUE TO BE DECIDED HERE IS NOT DISCRETE FROM THE LEGAL ISSUE DECIDED BY THE DISTRICT OF MASSACHUSETTS IN *LITTLEFIELD*—TO THE CONTRARY, JUDGE YOUNG REACHED THE TRIBE'S "UNDER FEDERAL JURISDICTION" STATUS.**

The Tribe suggests that the question of whether the Tribe was under federal jurisdiction in 1934 is one foreign to Judge Young.  That is not true.  The *Littlefield* Amended Complaint challenged the Secretary's determination that the IRA granted him authority to take land into trust for the Mashpee Tribe.  *Littlefield v. Dept. of Interior*, 199 F. Supp. 3d 391, 394 (D. Mass. 2016); *Littlefield* Am. Compl. ¶¶ 4, 5, 121-131 (Exhibit B of Intervenor-Defendants' Motion to Transfer). The First Cause of Action alleged that the Mashpee Tribe was not under federal jurisdiction in 1934 (*Littlefield* Am. Compl. ¶¶ 121-131) and the *Littlefield* Plaintiffs specifically challenged the Secretary's reading of the IRA to try to avoid subjecting the Tribe to the "under federal jurisdiction" requirement.  *Littlefield*

Am. Compl. ¶¶ 10-21. The Secretary had read the second definition of "Indian" in Section 479 of

the IRA to be free of the "under federal jurisdiction" requirement when a grammatical reading of

the plain language of the statute made the "under federal jurisdiction" requirement apply equally to

the first and second definitions of "Indian." *Littlefield*, 199 F. Supp. 3d at 396-97.

Based on the parties' cross-motions for summary judgment, in particular the contents of the

*Littlefield* Plaintiffs' Local Rule 56.1 Separate Statement of Facts[1] and supporting exhibits

documenting the shared histories of the Narragansett and Mashpee tribes (*id.* at 392 n.1), Judge

Young initially held not only that the Secretary's reading of the second definition of Indian was

untenable—i.e., that the second definition necessarily incorporated the "under federal jurisdiction"

requirement in the first definition—but concluded as a matter of fact and law that the Tribe was not

under federal jurisdiction in 1934, just as the Supreme Court had determined with respect to the

Narragansett Tribe in *Carcieri v. Salazar*, 555 U.S. 379 (2009).  Judge Young concluded that "[a]s is

the case here, *Carcieri* involved a tribe that was <u>not</u> under federal jurisdiction at the time the IRA was

enacted in 1934, but was under federal jurisdiction by the date on which land was purportedly taken

into trust." *Littlefield*, 199 F. Supp. 3d at 396 (emphasis in original).  The court further stated "[t]hat

means that, despite their subsequent acknowledgement by the federal government, for purposes of

Sections 465 and 479 of the IRA the Mashpees are not considered 'Indians' because they were not

under federal jurisdiction in June 1934." *Id.* at 397.

The Government filed a motion for reconsideration asking Judge Young to not reach the

"under federal jurisdiction" question because that question had not been decided initially by the

agency. *Littlefield* ECF Nos. 99, 100.  Judge Young agreed that the 2015 Record of Decision did not

address the "under federal jurisdiction question" requirement, and clarified that the July 28, 2016

---

[1]  *See Littlefield* Plaintiffs' Rule 56.1 Separate Statement of Facts in Support of Summary Judgment on
First Cause of Action  (ECF No. 61, No. 16-cv-10184-WGY). The Government did not submit a
response as required by local rule. This left the facts in that statement undisputed.

decision was not intended to foreclose Interior from addressing on remand the Tribe's jurisdictional

status in 1934. *Littlefield* ECF No. 100 at 3. But Judge Young observed that the language in the July

28, 2016 opinion "stating the premise that the Mashpee were not under federal jurisdiction is thus

consonant with the parties' briefing of the first cause of action." *Littlefield* ECF No. 100 at 2-3. In

other words, Judge Young had initially decided the Tribe was not "under federal jurisdiction" in

1934 based on the papers before him, but later clarified that determination was not binding on

Interior on remand. This is the very issue decided by Interior on remand and now challenged by the

Tribe in this action. It is therefore disingenuous to suggest, as the Tribe does here, that the issue is

foreign to Judge Young, when he had, in fact, decided it—and decided it in the same way that

Interior did 18 months later.

Moreover, even if Judge Young had never made any findings about the Tribe's "under

federal jurisdiction" status in 1934, Interior's ruling on remand from *Littlefield* would necessarily

constitute the "flip side of the same coin" because it addresses the very same issue of whether the

Secretary had statutory authority under the IRA (and implementing Interior regulations) to take the

land into trust—interpreting the very same sections (465 and 479) of the IRA, looking initially to the

second definition of Indian in section 479 and then on remand to the first definition. In fact, Judge

Young, by evaluating the Tribe's status in 1934, looked at both sides of the coin, as the "under

federal jurisdiction" requirement applies equally to the first and second definitions.[2] Given that

Judge Young has already telegraphed how he is likely to decide the APA claim in this latest iteration

of the Tribe's dispute with Interior, the Tribe understandably does not want to return to the District

---

[2] The Tribe resists the "flip side of the same coin" characterization by unnaturally splitting hairs, drawing distinctions without a difference, and even referring the Court to a prior pleading in which the *Littlefield* Plaintiffs stated that the first and second definitions of "Indian" in Section 479 "serve different purposes." Opp. 20; Exh. 4 at 1. The quote actually demonstrates just how closely connected the two definitions of "Indian" are: "these eligibility definitions serve different purposes and *somewhat* different populations, *even though the two groups necessarily overlap to a substantial degree*" (emphasis added).

of Massachusetts.  But transferring the case back to Judge Young, who is familiar with the dispute,

the parties, and the law—and who runs a timely and efficient docket—will promote the interests of

justice.  It will allow for the efficient resolution of this intimately related lawsuit, avoid piecemeal and

duplicative litigation in this Court, and not reward the Tribe for its forum shopping.

As this Court explained in *Villa v. Salazar*, 933 F. Supp. 2d 50, 54 (D.D.C. 2013), "[w]hen

lawsuits involving the same controversy are filed in more than one jurisdiction, the general rule is

that the court that first acquired jurisdiction has priority." *Id.* at 54 (citations omitted).  This is

particularly true when the proceedings in the transferee court are further along than in the

originating jurisdiction.  *Id.* at 56 ("In a potentially complex APA case like this one, which involves a

lengthy factual history and a complicated statutory and regulatory scheme that the transferee district

has begun dissecting, the interest of justice favors transfer." (citation omitted)).  A transfer makes

sense from the perspective of judicial economy and takes advantage of the knowledge the transferee

court already has regarding the parties, their factual history, and the specific legal issues involved.  *See*

*Mandan v. United States Dep't of the Interior*, No. 18-cv-1462, 2019 WL 451351 at \*11 (D.D.C. Feb. 5,

2019) (transfer appropriate where transferee court "is already familiar with the parties and the facts

in this case and, contrary to the Tribe's assertion, has already considered many of the Tribe's

substantive arguments"); *Wyandotte Nation v. Salazar*, 825 F. Supp. 2d 261, 267 (D.D.C. 2011)

(proposed transferee court has "specialized knowledge of both the parties, their history of litigation,

and the statute at issue"); *Me-Wuk Indian Cmty. of the Wilton Rancheria v. Kempthorne*, 246 F.R.D. 315,

322 (D.D.C. 2007) (noting "overlap" of facts and legal claims between case filed in D.C. and case

already pending in transferee district).

In the instant case, as explained above, the District Court of Massachusetts is already familiar

with the parties, their factual history, the specific legal issue concerning the Tribe's IRA eligibility

(even the "under federal jurisdiction" statutory requirement), and "DOI's administrative decision-

making process." *See Wyandotte*, 825 F. Supp. 2d at 268.  There is no reason to squander that court's

knowledge and reinvent the wheel here.

The Tribe is unable to cite a single case involving a district court that remanded a matter to

an agency for further decision-making where the subsequent agency decision did not return to the

originating (remanding) court for further judicial review.  As a matter of federal practice and

procedure, a district court that remands a case to a federal agency will naturally review any legal

challenge to that agency's decision on remand.  *See, e.g., Wyandotte*, 825 F. Supp. 2d at 262-264

(describing district court's prior remand allowing Interior to reconsider its decision to take land into

trust).  Efficiency is always promoted by having the decision on remand reviewed by the same court

that ordered remand in the first place.

The Tribe cites decisions that have nothing to do with cases remanded to a federal agency

and subsequent judicial review—the very underpinnings of Intervenor-Defendants' motion to

transfer.  The whole point here is to return the remanded case back to the judicial proceedings from

which it sprang.  The Tribe instead relies heavily on *Tonoho O'Odham Nation v. Salazar*, No. 10-CV-

0472, 2010 U.S. Dist. LEXIS 145729 (D.D.C. Apr. 21, 2010), since the court there denied a motion

to transfer an Indian land matter even though a related lawsuit was pending in the proposed

transferee district.  Opp. at 15-16, 18-19.  But the *Tohono* decision involved entirely different factual

circumstances.  The litigation was advanced in the D.C. action when the motion to transfer venue

was filed, *Tohono*, 2010 U.S. Dist. LEXIS 145729, at *13, and the pending lawsuit in the proposed

transferee court involved different defendants, a different parcel of land, and was governed by a

distinct body of law that provided different remedies.  *Id.* at *3-*5.  The record in *Tonoho* shows that

the tribe requested Interior to acquire in trust land bordering the City of Glendale, Arizona, for

purposes of building and operating a casino.  *Id.* at *3.  The City of Glendale passed an ordinance

5

annexing the land to block the casino.[3]  The tribe filed suit in state court challenging the annexation.

When Interior did not act on the tribe's fee-to-trust application, the tribe sued in this District

seeking to force Interior to put into trust another parcel of land near Glendale that had not been

annexed and was not a subject of the state court suit.  *Id.* at *4, *13.  The decision by the district

court to keep the tribe's case against Interior in D.C. was influenced by the fact that the tribe's

lawsuit against the federal defendants was distinct from its lawsuit against the City of Glendale in

state court in Arizona, and had progressed on an expedited schedule.  *Id.* at *13.  The decision in

*Tonoho* thus provides no support for denying transfer of the Mashpees' lawsuit to the District of

Massachusetts.  The APA action here has not progressed at all, and, unlike the state court action in

*Tohono*, the pending lawsuit in the District of Massachusetts not only spawned this lawsuit but in fact

involves the very same parties, controversy, and governing law.

The other cases cited by the Tribe are similarly inapposite and readily distinguishable. Most

do not even address pending litigation in the transferee court. For example, in *Forest Cty. Potawatomi*

*Cmty. v. United States,* 169 F. Supp. 3d 114 (D.D.C. 2016), the movant sought to transfer venue based

on the proposed transferee court's familiarity with cases terminated four years earlier.  *Id.* at 119

("Defendants concede that second prong of this public interest factor—the pendency of related

actions in the transferee's forum—is entirely absent here.  Defendants concede that there are no

pending suits related to this controversy in the Eastern District of Wisconsin.").  Moreover, the

controversy in that case did not involve a tract of land in the transferee forum (or development of a

casino on that land) and thus did not raise the intense local concerns present here.  *Id.* at 115.

The denial of the motion to transfer in *Fund for Animals v. Norton*, 352 F. Supp. 2d 1 (D.D.C.

2005), which involved pending litigation in Wyoming, is similarly distinguishable in that this Court

---

[3]  By statute, the Tonoho Tribe was not allowed to acquire trust land for gaming within the borders of any city in Arizona.  *Id.* at *3.

had "a long history with the facts and law surrounding this case" (including lengthy prior litigation) and would in effect be "applying its own Orders." *Id.* at 2-3. The Court even suggested that the District of Wyoming might want to transfer the related case to this District to promote judicial economy. *Id.* at 3.

The Court in *Greater Yellowstone Coalition v. Bosworth,* 180 F. Supp. 2d 124 (D.D.C. 2001), another case on which the Tribe relies*,* addressed what it called two "very different" lawsuits, one in D.C. and the other in Montana. *Id.* at 129. The Montana action "focuses on the impact of the Horse Butte Capture Facility on eagles and other birds, whereas this case [in D.C.] focuses on the reissuance of the Horse Butte grazing permit and addresses its effect on the bison." *Id.* The lawsuits alleged different harms to different animals flowing from separate decisions by the National Park Service and U.S. Forest Service made at different times to achieve different results. The Court noted that "[w]hile a pending related action in a transferee forum could support a decision to transfer a case to that forum, the pendency of the [Montana case] did not support a transfer." *Id.* at 129-130.

Every other case cited by the Tribe in which a judge of this Court denied a motion to transfer venue similarly was decided on very different facts. None involved closely related cases such as the Tribe's APA action on remand from *Littlefield,* and the pending *Littlefield* action, where both actions address the same core issue of the Secretary's authority under the IRA (section 479) to take lands into trust for the Mashpee, regarding the very same lands in Massachusetts. If these two intimately related lawsuits are found insufficiently related to warrant transfer, it is hard to imagine any two proceedings qualifying as sufficiently related under 1404(a) to justify transfer of venue.

## II.     RESOLUTION OF THE TRIBE'S APA ACTION DOES NOT HAVE NATIONAL SIGNIFICANCE.

The Tribe decries what it perceives to be Interior's abandonment of the "under federal jurisdiction" standards set forth in its M-Opinion—and provides news clippings and other documents purporting to show alarm about the Mashpee decision among other tribes and tribal organizations like United South and East Tribes (USET).  But almost none of the tribes could be affected by the Mashpee ruling.  To begin with, the Mashpees' history in Massachusetts is unlike the history of almost every other tribe in the United States.  It is completely different from the experience of Western tribes and nearly every one of the other 573 recognized tribes in America.  At the same time, the Mashpees' history is indistinguishable from that of the Narragansett Tribe, which the Supreme Court in *Carcieri* concluded was not under federal jurisdiction in 1934.  These two East Coast tribes share nearly identical histories under colonial and state jurisdiction while sharing the same geography across from one another on Narragansett Bay (the Narragansett Tribe on the Rhode Island side and the Mashpee Tribe on the Massachusetts side).  The only way Interior could have found the Mashpees were under federal jurisdiction in 1934 would have been to contravene the reasoning and holding in *Carcieri*.  Only a few other East Coast tribes in New England share the history of the Mashpee and Narragansett tribes and could be impacted by the decision at issue.  Indeed, only the Aquinnah Tribe of Gay Head in Massachusetts sought to participate in the briefing before Interior on remand from *Littlefield*.

Thus, the Tribe's rhetoric that this case presents an issue of national significance is overstated.  Interior's decision is compelled by *Carcieri* and in line with the M-Opinion and other precedent.  Like the Narragansett Tribe (and other East Coast tribes), the Mashpee Tribe cannot demonstrate that it ever made a treaty with the federal government (much less one that was still in effect in 1934); ever enrolled its members in the Office of Indian Affairs (including in 1934); or received a congressional appropriation in 1934, as the "under federal jurisdiction" standard requires.

*See Carcieri*, 555 U.S. at 399 (Breyer, J., concurring).[4]

Even if this case raised some concerns beyond the limited impact on a few New England

tribes, the District of Massachusetts would be equally capable of addressing those broader concerns.

*See Mandan,* 2019 WL 451351 at *11.

## III.   THE FACT THAT A SENIOR FEDERAL OFFICIAL ISSUED THE DECISION DOES NOT WARRANT KEEPING THE CASE HERE.

The Tribe places great weight on the fact that the Assistant Secretary of Indian Affairs (AS-

IA) is tasked with making decisions regarding acquisitions of land in trust under the IRA and

implementing regulations.  Any significant land acquisition for a tribe is handled by the AS-IA in

Washington, D.C., rather than in a regional office.  That centralization of decision-making authority

within Interior does not change the fact that a controversy about Indian lands and gaming raises

intense local concerns, and of course cannot speak to whether a pending lawsuit in the proposed

transferee court makes transfer appropriate given the interests of justice.  At most, the Tribe has

shown "a nexus" to the District of Columbia that permits it to argue that its choice of forum should

be respected.  But having some connection with D.C. is not dispositive, especially when every other

factor supports transferring the case to the District of Massachusetts.  *See United Auburn Indian Cmty.*

*of the Auburn Rancheria v. Salazar,* No. 12-988, 2013 WL 12313021, at *2 (D.D.C. Jan. 4, 2013)

(granting Intervenor-Defendant's motion to transfer venue to the Eastern District of California

despite the fact that federal officials in Washington, D.C. made the decision in question and the

plaintiff contended case presented issues of "national concern"); *Towns of Ledyard, N. Stonington and*

---

[4] Interior purportedly relied on Justice Breyer's concurring opinion in formulating the M-Opinion, but the M-Opinion goes far beyond the Breyer trifecta of meaningful tribal-federal relationships (federal treaty, federal enrollment, federal appropriations), one of which must be in effect in 1934. Interior designed the M-Opinion to be an end-run on *Carcieri* and allow lands to be acquired in trust for almost every tribal applicant. After seven years, Interior correctly concluded that, even under the M-Opinion standard, it could not find the Mashpees were under federal jurisdiction in 1934 without openly rejecting *Carcieri*.

*Preston, Conn. v. United States*, No. 95-0880, 1995 WL 908244 at *2 (D.D.C. May 31, 1995) (granting

transfer of venue to Connecticut over assertion that case involved Indian policy of national

importance); *Mandan*, 2019 WL 451351 at *7-*11 (granting motion to transfer venue to District of

North Dakota and rejecting tribe's claims that case presented questions of national importance).

This Court should exercise its discretion and return the case to the originating federal court

in Massachusetts, where Judge Young can manage this closely related case on an expedited basis,

having already reached the Tribe's "under federal jurisdiction" requirement in the first go-round.[5]

## IV.   THE CONVENIENCE OF THE PARTIES AND WITNESSES, AND ACCESS TO EVIDENCE, CARRY LITTLE OR NO WEIGHT IN AN APA CASE, AND DO NOT WEIGH IN FAVOR OF THIS COURT'S RETENTION OF JURISDICTION.

As Intervenor-Defendants' moving papers explained, because APA cases are decided on the

papers without discovery and without a trial (effectively on a finite record "like an appellate court"),

*Nat'l Law Ctr. on Homelessness v. U.S. Dep't of Veterans Affairs*, 842 F. Supp. 2d 127, 130 (D.D.C. 2012),

the normal trial court considerations of the convenience of witnesses, or ease of access to proof,

carry much less weight and may be irrelevant altogether. *See* Mot. to Transfer Venue at 9-10;  *see*

*Tuttle v. Jewell*, 952 F. Supp. 2d 203, 208 (D.D.C. 2013) (Collyer, J.). The Tribe has not made any

showing of a need for discovery, or why it needs access to proof beyond the administrative record.

The fact that Deputy Secretary James Cason is familiar with the history of the Tribe, Opp. 10 n.3,

actually undermines the Tribe's position in the litigation because he not only agreed with the AS-

IA's 2018 Decision rejecting the Mashpees' claim to be under federal jurisdiction, but was personally

involved in signing a nearly identical decision in June 2017.  Because the Tribe has not articulated

---

[5] As set forth in Intervenor-Defendants' moving papers, Judge Young operates an efficient docket and timely resolves cross-motions for summary judgment like the ones to be filed in this case.  The *Littlefield* case was assigned to Judge Young on June 16, 2016.  He held a hearing on cross-motions for summary judgment on July 11, 2016.  He issued his decision on July 28, 2016.  For this reason, the Tribe's reliance on district-wide statistics concerning the purportedly more congested docket in Massachusetts is without merit.

any need for discovery, the convenience factors pointing to the location of witnesses and evidence, have no bearing on this motion and fail to weigh in favor of the Tribe.

The Tribe further contends that D.C. should remain the forum because "its trustee" (the federal government) is located here. But this Court frequently transfers Indian land and gaming cases to the jurisdiction where the Tribe and lands at issue are located—over the objection of the plaintiff tribe. *See* Mot. to Transfer Venue at 12-15. Each of those tribes has the same trust relationship with federal government.

Finally, the Tribe throws into the discussion of convenience the fact that counsel for plaintiff has an office in this District and previously litigated here. But "the location of counsel carries little if any weight in an analysis under § 1404(a)." *Wyandotte*, 825 F. Supp. 2d at 270.[6]

The various private and public factors therefore strongly support transferring venue to the District

---

[6] The Tribe also throws into the mix of "convenience" the extraneous contention that the D.C. federal courts "have more relevant experience with the Tribe's history" (Opp. 18). The District of Massachusetts and First Circuit have considerably longer and deeper experience with the Tribe based on the serial land claims brought by the Tribe against local, state and federal defendants in the 1970s and 1980s. *See, e.g., Mashpee Tribe v. New Seabury Corp.*, 427 F. Supp. 899 (D. Mass. 1977); *Mashpee Tribe v. Town of Mashpee*, 447 F. Supp. 940 (D. Mass. 1978); *Mashpee Tribe v. Watt*, 542 F. Supp. 797 (D. Mass. 1982); *Mashpee Tribe v. New Seabury Corp.,* 592 F.2d 575 (1st Cir. 1979); *Mashpee Tribe v. Watt*, 707 F.2d 23 (1st Cir. 1983); *Mashpee Tribe v. Sec'y of Interior*, 820 F.2d 480, 482 (1st Cir. 1987). More recently, the commercial casino plans of developer KG Urban Enterprises have turned judicial focus back on the status of the Mashpees. Under Massachusetts gaming law, KG Urban could not proceed with its plans for a casino in the southeast region of the state until the fate of the Mashpees' planned tribal casino had been determined. KG Urban sued to overturn that statutory preference. *See KG Urban Enters., LLC v. Patrick*, 839 F. Supp. 2d 388 (D. Mass. 2012); *KG Urban Enters., LLC v. Patrick*, 693 F.3d 1 (1st Cir. 2012); *KG Urban Enters., LLC v. Patrick*, 969 F. Supp. 2d 52 (D. Mass. 2013); *KG Urban Enters., LLC v. Patrick*, No. 11-12070-NMG (D. Mass. Jan. 9, 2014). The First Circuit's 2012 decision specifically observed that the Mashpee Tribe would have a hard time securing trust lands in light of *Carcieri. KG Urban*, 693 F.3d at 11 ("Neither the Mashpee nor the Aquinnah, the two federally recognized tribes in Massachusetts, were federally recognized in 1934, raising the serious issue of whether the Secretary has any authority, absent Congressional action, to take lands into trust for either tribe."). Given the many points of contact between the Tribe and the federal courts in Massachusetts, the Tribe's contention that the D.C. courts are more familiar with the history of the Tribe is not accurate. It is perhaps the Tribe's lack of success in prior litigation in Massachusetts, coupled with the prognosis for future losses in the federal courts in Massachusetts, that leads the Tribe to fight so hard to avoid going back there.

of Massachusetts.

## V.       INTERVENOR-DEFENDANTS SEEK EXPEDITED RESOLUTION OF THIS ACTION AS THEY DID IN *LITTLEFIELD* AS PLAINTIFFS.

The Tribe suggests that the *Littlefield* Plaintiffs are somehow responsible for the government's "dilatory conduct," Opp. 17 n.6, by breaking off and expediting the single question of whether the Secretary had authority under the IRA to take land into trust for the Tribe.  The *Littlefield* Plaintiffs' strategy in that regard effectively presented a narrow, dispositive legal question that saved the district court and the parties from having to address myriad other defects in the 2015 Record of Decision as stated in the *Littlefield* Amended Complaint.  That approach in fact saved substantial resources of the parties and the court.  That desirable outcome is precisely what the *Littlefield* Plaintiffs—as Intervenor-Defendants here—seek to accomplish by moving to transfer venue back to the District of Massachusetts and Judge Young.

## VI.      INTERVENOR-DEFENDANTS ARE NOT ENGAGING IN FORUM SHOPPING.

The Tribe's argument that Intervenor-Defendants are forum shopping when they seek to have the case transferred back to the federal court from which it originated, is the epitome of "the pot calling the kettle black."  This case arose on remand from Judge Young.  In the normal course, judicial review of Interior's decision on remand would occur in the district court that ordered the remand. *See Wyandotte*, 825 F. Supp. 2d at 262-264.  Going back to Judge Young here is not forum shopping but rather returning to the forum that already knows the parties, the dispute, and legal issues.  Forum shopping is precisely what the Tribe did in spurning Judge Young and taking its chances in a new forum in the District of Columbia.

## **CONCLUSION**

For the reasons stated in Intervenor-Defendants' Motion to Transfer and stated above,

venue should be transferred to the District of Massachusetts, a court that is already familiar with the

controversy, the parties, and the specific legal question at issue.


Dated:  March 14, 2019                                    Respectfully submitted,


                                                          /s/ Andrew Kim
                                                          Andrew Kim (D.C. Bar. No. 1029348)
                                                          GOODWIN PROCTER LLP
                                                          901 New York Avenue NW
                                                          Washington, DC  20001
                                                          Tel.:  202.346.4000
                                                          Fax.:  202.346.4444
                                                          *AndrewKim@goodwinlaw.com*

                                                          DAVID H. TENNANT (admitted *pro hac vice*)
                                                          Law Office of David Tennant PLLC
                                                          3349 Monroe Avenue, Suite 345
                                                          Rochester, NY 14618
                                                          Tel.:  585.708.9338
                                                          *david.tennant@appellatezealot.com*

                                                          *Attorneys for Intervenor-Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on March 14, 2019, I electronically filed the foregoing Reply Memorandum in Support of Intervenor-Defendants' Motion to Transfer Venue with the Clerk of the Court of the U.S. District Court for the District of Columbia by using the Court's CM/ECF system.   All participants in the case are registered CM/ECF users and will be served via the CM/ECF system.

/s/ Andrew Kim
Andrew Kim