UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MASHPEE WAMPANOAG TRIBE, | ) <br> ) <br> ) |
| Plaintiff, | ) <br> ) Civil Action No. 18-2242 (RMC) |
| v. | ) <br> ) |
| RYAN ZINKE, in his official capacity as Secretary of the Interior, *et al.*, | ) <br> ) <br> ) |
| Defendants. | ) <br> ) <br> ) |

MEMORANDUM OPINION

The Mashpee Wampanoag Tribe asked the United States Secretary of the Interior to acquire approximately 151 acres of land in Taunton, Massachusetts, in trust on its behalf for purposes of establishing a Class III gaming facility, as well as another 170 acres in the Town of Mashpee, where the Tribe has been based since the early 1600s. A positive response in 2015 from the Assistant Secretary of the Interior for Indian Affairs prompted an immediate lawsuit by individual residents of Taunton (collectively, the *Littlefield* plaintiffs, who are Defendant-Intervenors in the present lawsuit). *See Littlefield, v. Dep't of Interior*, 199 F. Supp. 3d 391 (D. Mass. 2016).[1]

---

[1] The *Littlefield* plaintiffs are David Littlefield; Michelle Littlefield; Tracy Acord; Deborah Canary; Veronica Casey; Patricia Colbert; Vivian Courcy; Donna Defaria; Kim Dorsey; Francis Lagace; Will Courcy; Antonio Defaria; Kelly Dorsey; Jill Lagace; David Lewry; Kathleen Lewry; Robert Lincoln; Christina McMahon; Carol Murphy; Dorothy Peirce; David Purdy; Louise Silvia; Francis Canary, Jr.; Michelle Lewry; and Richard Lewry. *See* Intervenor-Defs.' Mot. to Transfer Venue and Mem. in Supp. (Intervenors' Mot.) [Dkt. 15] (caption). The Mashpee are defendant-intervenors in the *Littlefield* litigation.

The parties dispute whether this Court should transfer this case to the Hon. William D. Young of the District of Massachusetts, who presided over *Littlefield* and who indicated, but then qualified, his agreement with the statutory interpretation argued by the *Littlefield* plaintiffs and later adopted by former Secretary of the Interior Ryan Zinke.[2] While recognizing that venue is proper in the District of Columbia, the *Littlefield* Intervenors urge the Court to exercise its discretion under 28 U.S.C. § 1404(a) and transfer the case because the Mashpee are in Massachusetts, Judge Young has "already waded significantly into the specific legal issue," and the impact of any decision on the status of the lands, currently held in trust by the United States, will be felt in Massachusetts.[3] Intervenors' Mot. at 4.

The Mashpee insist that this case presents a different question than *Littlefield* because it involves a 2018 decision by former Secretary Zinke, to wit: Did the Secretary act arbitrarily, capriciously, or not in accordance with law when he determined that the Mashpee were not "under federal jurisdiction" in 1934 for purposes of the Indian Reorganization Act?[4]

The Court will exercise its discretion and deny the motion to transfer.

## I. FACTS

### A. The Indian Reorganization Act (IRA)

The Indian Reorganization Act (IRA), 25 U.S.C. §§ 5101 *et seq.*, was adopted in 1934 to change "a century of oppression and paternalism" in the relationship of the United States and its native Indian tribes. *See* H.R. Rep. No. 73-1804, at 6 (1934). Its purpose was to create

---

[2] *See* Intervenors' Mot.; Pl.'s Mem. of P. & A. in Opp'n to Intervenor-Defs.' Mot. to Transfer Venue (Opp'n) [Dkt. 17]; Reply Mem. in Supp. of the *Littlefield* Pls.' Mot. to Transfer Venue (Reply) [Dkt. 20].

[3] The Department of the Interior (DOI) takes no position on Intervenors' Motion to Transfer Venue. *See* Fed. Defs.' Mot. for an Enlargement of Time [Dkt. 18] at 2.

[4] Opp'n at 1.

the mechanisms whereby tribal governments could be reorganized and tribal corporate structures could be developed, *see* 25 U.S.C. §§ 5123 and 5124, as well as to make the acquisition of lands easier, to be held in trust by the United States to enlarge or create new Indian reservations. *See* 25 U.S.C. §§ 5108 and 5110; *see also* Cohen's Handbook of Federal Indian Law § 1.05 (Nell Jessup Newton ed., 2017). The United States Secretary of the Interior is delegated the authority to acquire land in trust for Indian tribes. 25 U.S.C. § 5108.[5, 6] The Secretary's authority under the IRA is cabined by whether a tribe meets the statute's definition of "Indian," found in Section 19 of the statute and codified at 25 U.S.C. § 5129:

> The term "Indian" as used in this Act shall include all persons of Indian descent [1] who are members of any recognized Indian tribe now under Federal jurisdiction and [2] all persons who are descendants of such members who were, on June 1, 1934, residing within the present boundaries of any Indian reservation, and shall further include [3] all other persons of one-half or more Indian blood.

25 U.S.C. § 5129.

### B. *Carcieri v. Salazar* and DOI Interpretation

The Supreme Court had occasion to interpret the definition of "Indian" in 2009 when the State of Rhode Island challenged DOI's plan to accept land in trust for use by the Narragansett Indian Tribe, which occupied much of present-day Rhode Island in colonial times. *Carcieri v. Salazar*, 555 U.S. 379, 381-82 (2009). Analyzing the first of the three definitions of "Indian" (included as [1] in Section I.A above), the Supreme Court held that the word "now" in the phrase "now under federal jurisdiction" referred to 1934 when the IRA was passed. *Id.* at

---

[5] The Secretary accepts legal title to the land in the name of the United States. *Id.*

[6] Congress authorized DOI and its Bureau of Indian Affairs (BIA) to manage all matters relating to Indian affairs under the direction of the President. *See* 25 U.S.C. §§ 2, 9. Pursuant to this delegation of authority to the DOI, BIA has promulgated regulations establishing procedures for placing property in trust status. *See* 25 C.F.R. § 151.

3

382-83. The Court determined that the Secretary had no authority to acquire land in trust for the Narragansett Tribe because that Tribe was not under Federal jurisdiction in 1934. *Id.*

Five years after *Carcieri*, the Solicitor of the Interior Department issued formal legal guidance to the Secretary, addressing the interpretation of the IRA phrase "under federal jurisdiction." DOI, M-37029, Memorandum on the Meaning of "Under Federal Jurisdiction" for Purposes of the Indian Reorganization Act (2014) (M Opinion). The M Opinion states that the *Carcieri* majority did "not address the meaning of the phrase 'under federal jurisdiction,'" as "the parties [in *Carcieri*] had not disputed that the Narragansett Tribe was not under federal jurisdiction in 1934" and the BIA had not adopted a definition. M Opinion at 3 (citing *Carcieri*, 555 U.S. at 382, 392). The M Opinion also noted that the IRA itself contains no definition for the term. *Id.* at 17. Therefore, the M Opinion concluded, there was no clear and unambiguous meaning to the term "under federal jurisdiction" as used in the IRA, and Congress left an interpretative gap for the DOI to fill. *Id.* (citing *Chevron v. Natural Res. Def. Council,* 467 U.S. 837, 840-43 (1984)).

The interpretation of "under federal jurisdiction" suggested by the Solicitor's M Opinion was directly influenced by Justice Breyer's concurring opinion in *Carcieri*. *See* M Opinion at 23-25. Justice Breyer had observed that "an interpretation that reads 'now' as meaning 'in 1934' may prove somewhat less restrictive than it at first appears," since "a tribe may have been 'under Federal jurisdiction' in 1934 even though the Federal Government did not believe so at the time." *Carcieri*, 555 U.S. at 397. Based on its reading of Justice Breyer's concurrence and the specific examples cited by the Justice, the DOI Solicitor advised the Secretary that "the word 'now' modifies 'under federal jurisdiction,' but does not modify 'recognized.'" M Opinion at 24. Thus, "regardless of whether a tribe was formally recognized

4

in 1934, a tribe could have been 'under federal jurisdiction' in 1934 as a result of, for example, a treaty with the United States that was in effect in 1934, a pre-1934 congressional appropriation, or enrollment as of 1934 with the Indian Office." *Id.* at 4 (citing *Carcieri*, 555 U.S. at 399).

The M Opinion established a two-part test for determining whether a tribe was "under federal jurisdiction" in 1934. The first part looks for evidence that the United States acted in a manner that sufficiently shows or generally reflects "federal obligations, duties, responsibility for or authority over the tribe by the Federal government" in or before 1934. *Id.* at 19. In this regard, the Opinion stated that various types of evidence may be considered, including but not limited to "the negotiation of and/or entering into treaties; the approval of contracts between a tribe and non-Indians; enforcement of the Trade and Intercourse Acts (Indian trader, liquor laws, and land transactions); the education of Indian students at BIA schools; and the provision of health or social services to a tribe." *Id.* Accordingly, when there is evidence that a tribe was under Federal jurisdiction in or before 1934, BIA then addresses the second part of the test, which is to "ascertain whether the tribe's jurisdictional status remained intact in 1934." *Id.*

C. **The 2015 Record of Decision**

In 2007, the Mashpee Tribe submitted an application to have DOI take land into trust on its behalf after BIA formally acknowledged the Tribe pursuant to the administrative procedures set forth in 25 C.F.R. § 83. DOI, Record of Decision, Trust Acquisition and Reservation Proclamation for 151 Acres in the City of Taunton, Massachusetts, and 170 Acres in the Town of Mashpee, Massachusetts, for the Mashpee Wampanoag Tribe, at 4 (2015) (2015 ROD). The 2015 ROD was issued on September 18, 2015 by the Assistant Secretary for Indian Affairs. It granted the Tribe's fee-to-trust application and announced that DOI would acquire

both requested parcels of land in Mashpee and Taunton.  DOI also announced that both sites would be eligible for gaming under the "initial reservation exception" of the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721.  2015 ROD at 5.  The 2015 ROD explained that DOI's authority to acquire land in trust for the Mashpee Tribe was based on the second definition of "Indian" in the IRA (noted as [2] in Section I.A above), that is, descendants of a tribe recognized in 1934.  *Id.* at 79.  The 2015 ROD specifically stated that it did not address "whether the Mashpee could also qualify under the first definition of 'Indian,' as qualified by the Supreme Court's decision in *Carcieri v. Salazar*."  *Id.* at 79-80.

### D. *Littlefield v. Dep't of Interior*

Shortly after issuing the 2015 ROD, DOI took the two parcels of land into trust for the Mashpee.  The *Littlefield* plaintiffs sued to challenge the 2015 ROD in the District of Massachusetts.  Complaint at 1-2, *Littlefield*, No. 16-cv-10184 (D. Mass. Feb. 4, 2016) [Dkt 1].  Among their claims, the *Littlefield* plaintiffs challenged DOI's interpretation of the IRA's second definition of "Indian."  *Littlefield*, 199 F. Supp. 3d at 393-94.

The Hon. William D. Young presided over the litigation.  Judge Young determined that resolving the dispute required defining the term "such members" in the second definition of "Indian."  *Id.* at 396.  The *Littlefield* plaintiffs argued that "such members" "plainly refers to the entire preceding clause"—that is, descendants of "all persons of Indian descent who are members of any recognized Indian tribe now under Federal jurisdiction" in 1934.  The government interpreted "such members" "to refer only to the first several words of the preceding clause in the first definition of 'Indian'"—"all persons of Indian descent who are members of any recognized Indian tribe."  *Id.*

6

In a memorandum opinion and order published July 28, 2016 (July 2016 Order),[7] Judge Young determined that "[i]n the wake of *Carcieri*, the Plaintiffs' interpretation is the one compelled by the plain text of the [IRA]." *Id.* at 397. Judge Young found that descendants of a recognized Indian tribe could only qualify under the second definition if their tribal ancestors were under federal jurisdiction in 1934. Judge Young concluded:

> This means that, despite their subsequent acknowledgment by the federal government, for purposes of Sections 465 and 479 of the IRA the Mashpees are not considered "Indians" because they were not under federal jurisdiction in June 1934. Thus, the Secretary lacked the authority to acquire land in trust for them, at least under the rationale the Secretary offered in the Record of Decision.

*Id.* Judge Young remanded the matter to DOI for further proceedings.

The government subsequently moved for partial reconsideration or clarification of Judge Young's Order. Motion for Partial Reconsideration, *Littlefield*, No. 16-cv-10184 (D. Mass. Feb. 4, 2016) [Dkt 100]. In its motion, the government noted that while it disagreed with Judge Young's interpretation of the second definition of "Indian," it did not seek reconsideration of that aspect of the Order. Rather, the government sought reconsideration of the court's factual finding that the Mashpee Tribe was not "under Federal jurisdiction" in 1934. *Id.* at 1. The government argued that Judge Young's finding on this issue was improper since DOI did not brief it and had specifically declined to address it in the 2015 ROD. The government asserted that Judge Young should have remanded to DOI for reconsideration of the land acquisition for the Mashpee in light of his interpretation of the definition of "Indian." *Id.* at 1-2.

Thereafter, Judge Young clarified his July 2016 Order. Order on Motion for Reconsideration, *Littlefield*, No. 16-cv-10184 (D. Mass. Oct. 12, 2016), [Dkt 121] (October 2016

---

[7] 199 F. Supp. 3d 391 (D. Mass. 2016).

Order).  Judge Young restated the key holding of his July 2016 Order:  "[I]n order to qualify as eligible beneficiaries under the second definition of 'Indian' set forth in the Indian Reorganization Act, 25 U.S.C. § 479, the Mashpees were required to have been 'under federal jurisdiction' in 1934."  October 2016 Order at 2.  Judge Young acknowledged that DOI had not briefed the issue of whether the Mashpees were under federal jurisdiction in 1934.  *Id.*  Judge Young clarified that his finding that the Mashpees were not under federal jurisdiction would not be binding on DOI on remand:

> Having remanded this matter to the Secretary, it is no violation of the Court's order should the agency wish to analyze the Mashpees' eligibility under the first definition of "Indian" provided in Section 479, or to reassess the Mashpees' eligibility under the second definition consistent with the Court's ruling on the proper interpretation of that definition.

### E. Remand Proceedings and 2018 Record of Decision

DOI notified the Tribe and the *Littlefield* plaintiffs in late 2016 that it was accepting Judge Young's direction and would reconsider the Tribe's eligibility under the first definition of "Indian."  Compl. [Dkt. 1] at 9.  DOI invited the parties "to submit any evidence or argument that the Tribe was under federal jurisdiction in 1934."  *Id.*  Briefing concluded in February 2017.  Four months later, DOI issued a draft decision finding that the Tribe was not "under federal jurisdiction" in 1934, the Department requested supplemental briefing, and briefing continued until November 2017.  *Id.* at 9-10.

On September 7, 2018, DOI issued a Record of Decision that the Tribe was not "under federal jurisdiction" as of 1934 and so did not meet the first or second definitions of "Indian" in the IRA.  DOI, Letter from Tara Sweeney, Assistant Secretary for Indian Affairs, to The Honorable Cedric Cromwell, Chairman, Mashpee Wampanoag Tribe, at 28 (2018 ROD).  The 2018 ROD stated:

8

> Applying [the 2014 M Opinion's] framework to my review of the parties' remand and supplemental submissions, I conclude that the evidence does not show that the Tribe was under Federal jurisdiction in 1934 within the meaning of the IRA's first definition of "Indian." The record before me contains little indicia of Federal jurisdiction beyond the general principle of plenary authority, and little if any evidence demonstrating that the United States took any actions establishing or reflecting Federal obligations, duties, responsibilities for or authority over the Tribe in or before 1934. Because the Tribe was not "under federal jurisdiction" in 1934, the Tribe does not qualify under the IRA's first definition of "Indian." Nor does it qualify under the second definition, as that definition has been interpreted by the United States District Court for the District of Massachusetts.

*Id.*

### F.     First Circuit Proceedings in *Littlefield*

Judge Young's rulings in *Littlefield* are on appeal to the First Circuit. Notice of Appeal, *Littlefield, v. Mashpee Wampanoag Indian Tribe*, No. 16-2484 (1st Cir. Dec. 12, 2016) (appealing the July and October 2016 Orders). In May 2017, upon the Tribe's request, the First Circuit granted a stay of appellate proceedings until DOI issued the 2018 ROD on remand. *See* Defendant-Appellant Mashpee Wampanoag Indian Tribe's Motion For Stay, *Littlefield*, No. 16-2484 (1st Cir. Apr. 24, 2017); Order, No. 16-2484 (1st Cir. May 15, 2017). The First Circuit granted a series of further extensions to permit for DOI's supplemental briefing and to allow for the Tribe to propose a course of action after DOI's 2018 ROD. *See* Orders, No. 16-2484 (entered on May 15, 2017; Aug. 8, 2017; Nov. 30, 2017; and Sept. 19, 2018).

The Tribe requested a further stay after DOI issued the 2018 ROD. Defendant-Appellant Mashpee Wampanoag Indian Tribe's Status Report, No. 16-2484 (1st Cir. Sept. 27, 2018). The Tribe informed the First Circuit that it had filed the present lawsuit in the District of Columbia challenging the 2018 ROD. The Tribe requested a stay in the appeal pending entry of judgment in the immediate action, asserting that a victory in D.C. might render the appeal in

9

Massachusetts moot. *Id.* at 4. The *Littlefield* plaintiffs opposed, arguing that the Tribe should either voluntarily dismiss or immediately prosecute the appeal. Plaintiffs-Appellees' Opposition to Intervenor-Defendant-Appellant's Further Stay Request, No. 16-2484 (1st Cir. Oct. 9, 2018). The First Circuit has yet to rule on the motion to stay proceedings.

## II. LEGAL STANDARD

### A. Jurisdiction and Venue

In suits challenging federal agency action, venue is proper in any district in which "(A) a defendant in the action resides, (B) a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or (C) the plaintiff resides if no real property is involved in the action." 28 U.S.C. § 1391(e).

### B. Transfer of Venue under 28 U.S.C. § 1404(a)

Transfer of venue as sought by the *Littlefield* plaintiffs is governed by 28 U.S.C. § 1404(a). It states: "[f]or the convenience of the parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." *Id*. Section 1404(a) vests "discretion in the district court to adjudicate motions to transfer according to individualized, case-by-case consideration of convenience and fairness." *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 622 (1964)). The moving party bears the burden of establishing that (a) the plaintiff could have originally brought the action in the proposed transferee district, and that (b) considerations of convenience and the interest of justice weigh in favor of transfer. *See Van Dusen*, 376 U.S. at 622-23; *Trout Unlimited v. Dep't of Agric.*, 944 F. Supp. 13, 16 (D.D.C. 1996).

Courts consider a number of "public" and "private" interests in making their transfer decisions, and it is the movant's burden to establish that the various factors line up in

favor of transfer. *See Trout Unlimited*, 944 F. Supp. at 16. The private interests that must be balanced are:

> (1) the plaintiffs' choice of forum, unless the balance of convenience is strongly in favor of the defendants; (2) the defendants' choice of forum; (3) whether the claim arose elsewhere; (4) the convenience of the parties; (5) the convenience of the witnesses of the plaintiff and defendant, but only to the extent that the witnesses may actually be unavailable for trial in one of the fora; and (6) the ease of access to sources of proof.

*Id.* Public interest considerations include:

> (1) the transferee's familiarity with the governing laws; (2) the relative congestion of the calendars of the potential transferee and transferor courts; and (3) the local interest in deciding local controversies at home.

*Id.*

### C. APA Review

Because it affects the analysis of Section 1404(a), the Court also notes the primary features of review of agency action under the Administrative Procedure Act (APA), 5 U.S.C. §§ 551 *et seq*. The APA provides that a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). In determining whether the agency's action was arbitrary and capricious, the Court must determine whether the agency action was a "product of reasoned decisionmaking" or whether the agency "failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, 52 (1983).

## III. ANALYSIS

### A. This Case Could Have Been Brought in Massachusetts

The Mashpee Tribe does not dispute that this suit could have been brought in Massachusetts, as the Tribe is located there. Opp'n at 5. There is no doubt that Massachusetts is "a judicial district in which . . . a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). Therefore, the Court balances the public and private interests in deciding whether to transfer the case to that District Court. *See Trout Unlimited*, 944 F. Supp. at 16.

### B. Private-Interest Factors

The Tribe argues that it brings this lawsuit against its federal trustee, with which it has a special legal relationship, over a decision made by federal officials located solely in Washington, D.C., and that the case should not be transferred and comingled with the Intervenor-Defendants' litigation in Massachusetts. Opp'n at 4-5. The *Littlefield* plaintiffs insist that this case concerns land in Massachusetts and that "the District of Columbia has no 'meaningful ties to the controversy and no particular interest in the parties or subject matter.'" Intervenors' Mot. at 8-9 (quoting *Wyandotte Nation v. Salazar*, 825 F. Supp. 2d 261, 269 (D.D.C. 2011)).

The private-interest factors support retaining this litigation in the District of Columbia. First, the Tribe's decision to sue in D.C. merits some deference. Generally, a "[p]laintiff's choice of forum is given paramount consideration and the burden of demonstrating that an action should be transferred is on the movant." *Air Line Pilots Ass'n v. E. Air Lines*, 672 F. Supp. 525, 526 (D.D.C. 1987). While the amount of deference is diminished where a plaintiff is not a resident of its chosen forum, *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 256 (1981), plaintiffs are still afforded some deference if they can establish a meaningful connection between the chosen forum and the dispute. *See Wilderness Soc'y v. Babbitt*, 104 F. Supp. 2d 10, 13

(D.D.C. 2000) ("The degree of deference accorded to these plaintiffs' forum depends upon the nexus between the chosen forum . . . and the dispute.").

Here, the Tribe has demonstrated a meaningful connection between the District of Columbia and the challenged decision because D.C. is where "the claim arose." *See Trout Unlimited*, 944 F. Supp. at 16. "In cases brought under the APA, courts generally focus on where the decisionmaking process occurred to determine where the claims arose." *Nat'l Ass'n of Home Builders v. EPA*, 675 F. Supp. 2d 173, 179 (D.D.C. 2009). Obviously, DOI made the challenged decision in the District of Columbia: The 2018 ROD was issued by the Assistant Secretary for Indian Affairs from BIA's national headquarters in D.C. Neither party has claimed that any regional BIA officials, in Massachusetts or elsewhere, were involved in the decisionmaking process. Thus, this case is distinguishable from those cited by Intervenors in which decisions were focused outside D.C. *See, e.g.*, *Alabama v. U.S. Army Corps of Eng'rs*, 304 F. Supp. 3d 56, 63 (D.D.C. 2018) (noting that the relevant decision "was made by personnel from the Corps' offices in Atlanta and Mobile"); *Shawnee Tribe v. United States*, 298 F. Supp. 2d 21, 25 (D.D.C. 2002) (finding that while some officials located in the District of Columbia were involved, the decisionmaking process was primarily focused elsewhere).

The *Littlefield* Intervenors have legitimate reasons for preferring the District of Massachusetts. The Tribe is located in Massachusetts and the impact of any decision on the status of the Taunton land will be felt in Massachusetts. However, this lawsuit might have national policy implications that exceed the status of a single parcel of land. *See* Section III.C, *infra*. Additionally, unlike the cases on which Intervenors rely, the presence of federal agency defendants is not the only significant connection to Washington, D.C. *See, e.g.*, *Wyandotte Nation v. Nat'l Indian Gaming Comm'n*, No. 04-cv-1727, 2005 WL 8160917, at *4 (D.D.C. May

2, 2005) (finding that plaintiffs' argument that the "entire administrative process . . . was conducted in Washington, D.C." was unpersuasive, in part because the case concerned "a run-of-the-mill agency decision" that did not touch on any "issue of nationwide interest"); *Wyandotte Nation v. Salazar*, 825 F. Supp. 2d at 269 ("[M]ere involvement on the part of federal agencies, or some federal officials who are located in Washington, D.C. is not determinative."). The relevant decision and decisionmakers originated in D.C. and the Tribe was within its rights to choose to challenge the 2018 ROD—which was not before Judge Young—in this forum. It did not drag the *Littlefield* Intervenors involuntarily out of Massachusetts.

The three private-interest factors that address convenience—convenience of the parties, the convenience of witnesses, and ease of access to sources of proof—do not favor transfer. "In an APA case, 'neither the convenience of the parties and witnesses nor the ease of access to sources of proof weighs heavily in the analysis.'" *Tuttle v. Jewell*, 952 F. Supp. 2d 203, 208 (D.D.C. 2013) (quoting *Pueblo v. Nat'l Indian Gaming Comm'n*, 731 F. Supp. 2d 36, 42 (D.D.C. 2010)). "This follows from the nature of the judicial review that such cases receive." *Tuttle*, 952 F. Supp. at 208. This case involves judicial review of agency action that is preserved in an administrative record and, under the APA, will likely be resolved on summary judgment based on that record. Further, none of the parties would be inconvenienced by litigating in this district. The government and its lawyers are in D.C. and the Plaintiff Mashpee Tribe wishes to be here; little difficulty is imposed on the *Littlefield* Intervenors, who can file their briefs electronically.

### C. Public-Interest Factors

Ultimately, the public-interest factors also support retaining this litigation in the District of Columbia.

14

### 1. Judicial Economy

The *Littlefield* Intervenors insist that Judge Young is fully familiar with the dispute and "the specific legal question raised here, namely, whether [DOI] has authority to take land in trust for the Mashpee." Intervenors' Mot. at 2. Intervenors argue that Judge Young would be "at a substantial advantage in resolving the present lawsuit upon his disposal of *Littlefield* [199 F. Supp. 3d 391 (D. Mass. 2016).]" Intervenors' Mot. at 11. The Mashpee respond that that Judge Young has "no expertise and familiarity" with the single claim presented here: "whether the Department acted arbitrarily and capriciously . . . when it determined that the Tribe was not under federal jurisdiction in the 2018 [ROD]." Opp'n at 4-5, 21.

It is impossible not to agree that Judge Young inadvertently decided the issue of statutory construction presented here. In his July 2016 Order, Judge Young determined that "the Mashpees are not considered 'Indians' because they were not under federal jurisdiction in June 1934." *Littlefield*, 199 F. Supp. 3d at 397. This finding touches on the precise legal question at issue in this case. *See* Compl. at 18 (alleging that "[the DOI Secretary] improperly issued a Decision incorrectly finding that the Mashpee Tribe was not 'now under federal jurisdiction,' within the meaning of 25 U.S.C. § 5129"). The *Littlefield* Intervenors quietly bask in Secretary Zinke's apparent agreement with Judge Young and urge the Court to transfer this case back to Massachusetts for a prompt resolution.

However, Judge Young made this finding, as his clarifying Order qualifying that part of his opinion noted, without hearing from DOI, which had *not* decided the question in the administrative forum or argued it on appeal. October 2016 Order at 1-2. Thus, it is not entirely accurate to say that he has already decided the critical issue of statutory interpretation since he opined without giving DOI the first opportunity to do so in the context of this dispute and the

15

relevant administrative record. Judge Young also focused on a different agency decision: He considered the 2015 ROD and, of course, not the 2018 ROD that was issued on remand and is the subject of this lawsuit.[8]

It is surely true that Judge Young's July 2016 opinion may be persuasive to the ultimate question in this case. However, the fact that DOI under Secretary Zinke may agree with Judge Young is not determinative under the APA as to whether DOI was arbitrary and capricious when it allegedly changed a prior statutory interpretation of some years' standing without sufficient explanation. Moreover, the District of Massachusetts has no greater familiarity with the APA and administrative law principles that govern this case. These are issues with which the D.C. Circuit is as familiar, if not more so, than the First Circuit, and which do not materially involve familiarity with the parties. *See Stewart v. Azar*, 308 F. Supp. 3d 239, 248 ("If anything, this Court has more experiences with APA cases, which would weigh against transfer.").

Finally, the District Court in D.C. is less congested than the District of Massachusetts. Opp'n. at 16-17 (noting that the District of Massachusetts has a 32% higher overall caseload than the District of Columbia, Massachusetts has 166 more pending cases per judge, and, due to its docket, the Massachusetts District Court takes more than four times longer to resolve civil cases than does this Court, which has many senior judges).[9] When a proposed

---

[8] In this regard, this matter is distinguishable from *Villa v. Salazar*, 933 F. Supp. 2d 50 (D.D.C. 2013). *Villa* involved multiple lawsuits that concerned "APA challenges to the exact same decision at issue." *Villa*, 933 F. Supp. 2d at 56. The transferee court in *Villa* was "already reviewing the same Record of Decision" and would be doing so without regard to whether the District of Columbia retained the case. *Id.* at 57. In contrast, the duplicative use of judicial resources is not a concern here since Judge Young focused on a different agency decision altogether.

[9] *See* Admin. Office of the U.S. Courts, United States District Courts – National Judicial Caseload Profile (December 31, 2018), https://www.uscourts.gov/sites/default/files/fcms_na_distprofile1231.2018.pdf.

transferee court's docket is "substantially more congested" than the other, this factor weighs against transfer. *Nat'l Ass'n of Home Builders*, 675 F. Supp. 2d at 178. While Judge Young runs a timely and efficient docket and ordered expedited *Littlefield* briefing in 2016, the Court finds that the caseload disparity between Massachusetts and the District of Columbia "counsels in favor of maintaining venue" in D.C. *Ouachita Riverkeeper, Inc. v. Bostick*, No. 12-CV-803, 2013 WL 12324686, at *3 (D.D.C. Jan. 29, 2013) (finding that the relative congestion between the two courts weighs against transfer because "it takes nearly twice as long for a civil case to reach a final disposition in the Western District of Arkansas compared to the District of Columbia").

### 2. Local Interest

The *Littlefield* plaintiffs emphasize the preference for deciding local controversies at home, stressing the location of the land and the impact on their community if the Tribe builds a casino. *See* Intervenors' Mot. at 13-14; *Adams v. Bell*, 711 F.2d 161, 167 (D.C. Cir. 1983) ("There is a local interest in having localized controversies decided at home") (quoting *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 509 (1947)). However, the Court is persuaded by the Tribe that "this case is not a purely 'localized controversy.'" *Forest Cty. Potawatomi Cmty. v. United States*, 169 F. Supp. 3d 114, 118 (quoting *Stand Up for Cal. v. U.S. Dep't of the Interior*, 919 F. Supp. 2d 51, 64 (D.D.C. 2013)). To the contrary, the Complaint raises national questions regarding the scope of DOI's authority to acquire land in trust for Indian tribes under the IRA and the standards by which its acquisitions are judged. *See Stand Up for Cal.*, 919 F. Supp. 2d at 65. While presented as an individual dispute, this matter has generated concern among national and regional tribal organizations. *See* Opp'n at 13-14. Following the 2018 ROD, the National Congress of American Indians (NCAI), which represents more than 250 tribes across the

17

country, formally adopted a resolution that opposes the 2018 ROD. NCAI Resolution No. DEN-18-055 at 2 (stating that "DOI's September 7, 2018 decision misinterpreting the *Carcieri* M Opinion is of . . . concern to tribes, many of whom have documented evidence of exercises of federal jurisdiction similar to the Mashpee Tribe"). The United South and Eastern Tribes (USET) also formally resolved to oppose the 2018 ROD. USET Sovereignty Protection Fund Resolution No. 2019 SPF:010 at 2 (stating that the 2018 ROD "threatens the sovereignty and security of Tribal Nations, their citizens, and their lands, inconsistent with [DOI's] solemn trust responsibility"). This Court concludes that this case does not concern "the type of purely 'localized controversy' that would warrant transfer to the local district court," *Forest Cty. Potawatomi Cmty.*, 169 F. Supp. at 118 (quoting *Stand Up for Cal.*, 919 F. Supp. 2d at 64), but is focused on decisions made by DOI in Washington, D.C. that have the potential to impact Indian Tribes across the country.

## IV. CONCLUSION

For the reasons stated and in concert with the principles of 28 U.S.C. § 1404(a), the Court will exercise its discretion and retain this case in D.C. The Motion to Transfer Venue, Dkt. 15, will be denied. A memorializing Order accompanies this Memorandum Opinion.

Date: June 21, 2019

ROSEMARY M. COLLYER
United States District Judge