UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| MASHPEE WAMPANOAG TRIBE,<br><br>      Plaintiff,<br>v.<br><br>DAVID BERNHARDT, in his official capacity as Secretary of the Interior,<br><br>      and<br><br>U.S. DEPARTMENT OF THE INTERIOR<br><br>      Defendants<br>      and<br><br>DAVID LITTLEFIELD *et al.*,<br><br>      Intervenor-Defendants. | Civil Action No. 1:18-cv-02242-PLF |

INTERVENOR-DEFENDANTS *LITTLEFIELD* PLAINTIFFS'
SUPPLEMENTAL BRIEF IN RESPONSE TO THIS COURT'S
MAY 1, 2020 MEMORANDUM OPINION AND ORDER

Defendant-Intervenors respectfully submit this supplemental brief to respond to the questions presented in this Court's May 1, 2020 Memorandum Opinion and Order (ECF No. 53) ("Order"). The Order asks the parties to address the Department of Interior's withdrawal of M-Opinion No. 37029, as announced in M-37055, Memorandum, Withdrawal of Solicitor's Opinion M-37029, "The Meaning of 'Under Federal Jurisdiction' for Purposes of the Indian Reorganization Act," dated March 9, 2020 ("March 9 Memorandum"), as well as Interior's issuance of two new memoranda, the March 5, 2020 Memorandum entitled "Determining Eligibility Under the First Definition of 'Indian' in Section 19 of the Indian Reorganization Act of 1934" ("March 5 Memorandum"), and the March 10, 2020 Memorandum entitled "Procedure for Determining Eligibility for Land-into-Trust Under the First Definition of 'Indian' in Section 19 of the Indian Reorganization Act" ("March 10 Memorandum"). The March 10 Memorandum makes clear that the recently announced standards and procedure will apply prospectively, and thus past decisions rendered in accordance with the M-Opinion (M-37029) "need not be revisited." March 10 Memorandum at 2 ("Eligibility determinations rendered under Sol. Op. M-37029 remain in effect and need not be revisited."). For purposes of this case, the applicable guidance remains the M-Opinion, and thus, the March 5 and March 10 Memoranda have no relevance to the instant case.

All of the parties were aware of the widely reported withdrawal and replacement of the M-Opinion. No party considered any of the memoranda to have changed the "under federal jurisdiction" analysis in any way beneficial to the Tribe. The actual changes made by the Secretary are more cosmetic than substantive. But to the extent that Interior's reinterpretation has changed, it is now harder for the Tribe to establish eligibility for land in trust. The Mashpee clearly failed under the M-Opinion (M-37029) and would fail for the *very same reasons* under the newly issued guidance. That is why the Tribe did not seek a remand upon the withdrawal of the M-Opinion (M-37029) two months ago, or mention the announcement of a new procedure in its preliminary injunction papers.

Defendant-Intervenors are prepared to proceed with the oral argument scheduled for Thursday, May 7, 2020. We understand that the Tribe will seek an extension of time to respond in substance to the Order and an extension of time to file its reply in support of its preliminary injunction motion. To the extent that the Tribe raises new arguments based on any of the memoranda identified in the Order, Defendant-Intervenors request the opportunity to respond to the Tribe's papers if and when they are filed.

I. **THE WITHDRAWAL OF THE M-OPINION WAS WIDELY REPORTED IN THE MEDIA AND WAS KNOWN TO THE PARTIES, INCLUDING THE TRIBE AND ITS COUNSEL.**

The Court raised a specific concern that the Tribe "may well have been unaware of the change itself, rendering the Tribe no opportunity to address the relevance of the withdrawal to the pending motions for summary judgment and preliminary injunction." Order at 2. Given the limited state of the record before the Court, that concern is understandable, but the full record shows otherwise. Each of the parties and their counsel knew about the withdrawal when it happened. The federal government obviously knew. Defendant-Intervenors learned of the development the same day it was announced by the Department of Interior and first published in the media, *i.e.*, on March 10, 2020. The media coverage included two principal media outlets for Indian Country, and lawyers who practice in the field of Indian Law: (1) Turtle Talk, a blog run by Professor Matthew Fletcher, who teaches Indigenous Rights at Michigan State University; and (2) Indianz.com, a national media outlet owned and operated by Native Americans devoted to Native American news. Both of those outlets published articles on March 10. Specifically, Turtle Talk ran the headline, "Interior Withdraws Solicitor's Office M Opinion on the Meaning of IRA's 'Under Federal Jurisdiction' Language," and posted links to the pertinent Interior documents. Matthew L.M. Fletcher, Turtle Talk (Mar. 10, 2020), https://turtletalk.blog/tag/carcieri-v-salazar/. Indianz's headline read: "Trump Administration Changes Course With Withdrawal of Pro-Tribal Homelands Policy." Acee Agoyo, Indianz.com (Mar.

10, 2020), https://www.indianz.com/News/2020/03/10/trump-administration-charges-course-with.asp. Counsel for the Tribe are experienced Indian law practitioners and could not have missed this development.

Moreover, the Tribe itself likely had knowledge of the withdrawal of the M-Opinion through its participation in the tribal organization known as the United South and East Tribes (USET). Tribal Chairman Cedric Cromwell serves on the Board of USET. On March 13, 2020, USET issued a statement on the M-Opinion's withdrawal. United South and Eastern Tribes Sovereignty Protection Fund, *Tribal Sovereignty Should Not Be Held Hostage by Washington Politics*, Indianz.com (Mar. 13, 2020), https://www.indianz.com/News/2020/03/13/uset-spf-tribal-sovereignty-should-not-b.asp.

The Tribe thus knew about the M-Opinion withdrawal, along with the accompanying revised standard and procedure announced in the March 10 Memorandum, for three weeks prior to submitting its Motion for a Temporary Restraining Order and Preliminary Injunction. The Tribe also has had the benefit of the responsive filings by the Federal Defendants (ECF No. 50) and Defendant-Intervenors (ECF No. 51), since April 21, 2020. The Tribe had every opportunity to evaluate the new standard and consider its potential impact on the pending motions, including the proper level of deference to be given to the Secretary's September 7, 2018 Remand Decision based on the M-Opinion. If the Tribe in fact thought the revised standard improved its chances of success on the merits, and provided a reason to seek a remand, it would have (and should have) said so in its motion papers before this Court. That the Tribe failed to do so, and in fact *failed to even mention the revised standard at all,* speaks volumes as to the Tribe's recognition that the withdrawal and replacement of the M-Opinion was of no help to the Tribe.

II. **THE ISSUANCE OF A REVISED STANDARD DOES NOT REPRESENT A MATERIAL CHANGE IN HOW THE DEPARTMENT OF INTERIOR CONSIDERS APPLICATIONS FOR LAND-IN-TRUST.**

As a preliminary matter, the March 10 Memorandum expressly states that the procedure

identified is to be applied prospectively. Interior issued the Remand Decision being challenged by the Tribe on September 7, 2018—nearly 20 months ago. That is the only agency action before this Court. The new procedure, to the extent it differs from the M-Opinion, would not apply here by its express terms.

Interior's March 5 Memorandum, which analyzes the IRA, and its March 10 Memorandum, which implements the new analysis, do little more than reinforce the limiting language of the phrase "now under federal jurisdiction." The new procedure is more strongly grounded in the holding of *Carcieri* and Justice Breyer's concurring opinion. The tribal applicant must come forward with evidence that the "federal government exercised or administered its responsibilities towards Indians in 1934 over the applicant tribe or its members as such," March 5 Memorandum at 2, and also show that it was federally recognized in or before 1934. *Id.* at 6-8. The new guidance makes clear that federal recognition means something different than the modern concept of a "federally recognized" or "federally acknowledged" tribe. "Recognized" for purposes of Category 1 means "recognition of a group's activities 'by *specific actions* of the Indian Office, the Department, or by Congress,'" and refers to tribes with whom the United States had a "continuing course of dealings or some legal obligation in 1934." *Id.* at 7 (emphasis in original). The statutory interpretation makes clear that "Congress intended . . . to exclude two categories of tribes from Category 1. The first category consists of tribes never 'recognized' by the United States in or before 1934. The second category consists of tribes who *were* 'recognized' before 1934 but no longer remained under federal jurisdiction in 1934." *Id.* at 29 (emphasis in original). Tribes like the Narragansett and Mashpee, which were always recognized by the state but never by the federal government, fall into the first categorical exclusion.

The March 10 Memorandum directs tribal applicants to focus their evidence on clear indicia of federal jurisdiction, before expending substantial resources canvassing the historical record. The clearest indicia of federal jurisdiction are set forth in Justice Breyer's concurring opinion in *Carcieri*:

4

the existence of a federal treaty, congressional appropriations for the tribe, and the enrollment of the tribe in the Office of Indian Affairs. *See Carcieri v. Salazar*, 555 U.S. 379, 399 (2009) (Breyer, J., concurring). Interior also considers evidence of an election under Section 18 of the IRA as unambiguous proof. March 10 Memorandum at 2. A tribe that cannot show any of these unambiguous manifestations of federal jurisdiction, such as the Mashpee, remains free to undertake an exhaustive historical review to try to show a course of dealings that demonstrate federal jurisdiction by a totality of the evidence. This consists of Step 4 under the new procedure, entitled "Cumulative Weight of an Applicant's Evidence." That step is exactly what the Mashpee Tribe attempted to satisfy under the M-Opinion. It requires a substantial showing of "actions of federal officials clearly dealing with the tribe on a more or less sovereign-to-sovereign basis or clearly acknowledging trust responsibilities." March 5 Memorandum at 28-29. The Secretary's reinterpretation of the first definition thus does not help the Tribe in any respect. In fact, by bringing the eligibility standard for land into trust more in line with *Carcieri*, the Secretary has made the required showing even further beyond the Tribe's reach.

## CONCLUSION

For the foregoing reasons, Defendant-Intervenors submit that there is no reason to delay the argument scheduled for May 7, 2020, at 10:00 a.m.

Dated: May 4, 2020                                      Respectfully submitted,

/s/ David H. Tennant
David H. Tennant (admitted *pro hac vice*)
Law Office of David Tennant PLLC
3349 Monroe Avenue, Suite 345
Rochester, NY 14618
Tel.:  585.708.9338
*david.tennant@appellatezealot.com*

/s/ Andrew Kim
Andrew Kim (D.C. Bar. No. 1029348)
GOODWIN PROCTER LLP

1900 N Street, N.W.
Washington, DC  20036
Tel.:  202.346.4000
Fax.:  202.346.4444
*AndrewKim@goodwinlaw.com*

*Attorneys for Intervenor-Defendants*