**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

---

| | |
|---|---|
| MASHPEE WAMPANOAG TRIBE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 1:18-cv-02242-PLF |
| | ) |
| DAVID L. BERNHARDT, in his official capacity | ) |
| as Secretary of the Interior, and the U.S. | ) |
| DEPARTMENT OF THE INTERIOR, | ) |
| | ) |
| Defendants. | ) |
| | ) |

---

**PLAINTIFF MASHPEE WAMPANOAG TRIBE'S SUPPLEMENTAL**
**BRIEF ON THE DEFENDANTS' WITHDRAWAL OF THE M OPINION**

Tami Azorsky (D.C. Bar No. 388572 )
Kenneth J. Pfaehler (D.C. Bar No. 461718)
V. Heather Sibbison (D.C. Bar No. 422632)
Suzanne R. Schaeffer (D.C. Bar No. 429735)
DENTONS US LLP
1900 K Street, N.W.
Washington, D.C. 20006
Telephone: 202.496.7500

*Attorneys for Plaintiff Mashpee Wampanoag Tribe*

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

ARGUMENT ..................................................................................................................... 4

    I.   The Court Should Not Accord Deference to the Secretary's Interpretation of the M
          Opinion as Applied to the 2018 Mashpee Decision .......................................................... 4

        A.   The Secretary's conflicting statements regarding the legality of the M Opinion ....... 5

        B.   In Rendering His 2018 Decision, the Secretary Improperly Applied the
              Substance of his New 2020 "Under Federal Jurisdiction" Test. ................................. 6

             1.   The Tribe's Legitimate Reliance on the M Opinion Standard ........................... 6

             2.   The Agency applied portions of the Procedures to the 2018 Decision ............... 8

             3.   The Secretary's Application in his 2018 Decision of Standards Not
                  Formally Adopted and Made Public Until 2020 Was Improper. ....................... 14

    II.  The D.C. Circuit's Holding in *Grand Ronde* Does Not Support Awarding Deference
          to the Secretary's 2018 Decision ....................................................................................... 15

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Central N.Y. Fair Bus. Ass'n v. Jewell*,
   No. 6:08- ....................................................................................................................2

*Clark-Cowlitz Joint Operating Agency v. FERC*,
   826 F.2d 1074 (D.C.Cir.1987) (en banc) .............................................................16

*Cobell v. Norton*,
   240 F.3d 1081 (D.C. Cir. 2001) ........................................................................4, 16

*Confederated Tribes of Grand Ronde Cmty. Of Oregon v. Jewell*,
   830 F.3d 552 (D.C. Cir. 2016) ....................................................................... *passim*

*Confederated Tribes of Grande Ronde v. Jewell*,
   75 F.Supp.3d 387 (D.D.C. 2014) .................................................................. *passim*

*Consol. Edison Co. of New York, Inc. v. F.E.R.C.*,
   315 F.3d 316 (D.C. Cir. 2003) ..............................................................................7

*County of Amador v. U.S. Dep't of the Interior*,
   136 F. Supp. 3d 1193 (E.D. Cal. 2015), *aff'd*, 872 F.3d 1012 (9th Cir. 2017) .................1, 2, 8

*Dept. of Comm. v. New York*,
   ___ U.S. ___, 139 S.Ct. 2551 (2019) .................................................................15

*Encino Motorcars, LLC v. Navarro*,
   136 S.Ct. 2117...............................................................................................7, 14, 16

*F.C.C. v. Fox Television Stations, Inc.*,
   556 U.S. 502 (2009) ......................................................................................14, 15

*Grand Traverse Cty. Bd. of Comm'rs v. Acting Midwest Reg'l Dir.*,
   61 IBIA 273 (Sept. 25, 2015) ................................................................................1

*Jicarilla Apache Nation v. U.S. Dept. of Interior*,
   613 F.3d 1112 (D.C. Cir. 2010) ............................................................................6

*No Casino in Plymouth v. Jewell*,
   136 F. Supp. 3d .....................................................................................................1

*Redding Rancheria v. Hargan*,
   296 F. Supp. 3d 256 (D.D.C. 2017) .......................................................................5

*Smiley v. Citibank (S. Dakota), N.A.*,
   517 U.S. 735 (1996) ...................................................................................................7

*State of New York v. Acting Eastern Reg'l Dir.*,
   58 IBIA 323 (June 11, 2014) .....................................................................................1

**Statutes**

25 U.S.C. § 5123(f) ......................................................................................................9

23 Stat. 76, 98 ............................................................................................................11

Public Law 116-136 ....................................................................................................12

Indian Reorganization Act of 1934 .................................................................3, 7, 8, 9

**Other Authorities**

Bethany C. Sullivan & Jennifer L. Turner, *Enough Is Enough: Ten Years of
   Carcieri v. Salazar*, 40 Pub. Land & Resources L. Rev. 37,83,115 (2019) ............2

*Department of the Treasury, Coronavirus Relief Fund Allocations to Tribal
   Governments* (May 5, 2020),
   https://home.treasury.gov/system/files/136/Coronavirus-Relief-Fund-Tribal-
   Allocation-Methodology.pdf .....................................................................................12

*Determining Eligibility under the First Definition of "Indian" in Section 19 of the
   Indian Reorganization Act of 1934*, Memorandum from the Deputy Solicitor
   for Indian Affairs to the Solicitor at 2 (Mar. 5, 2020) ......................................1,2,7,9

Indianz.Com (Mar 10, 2020), *https://www.indianz.com/News/2020/03/10/trump-
   administration-charges-course-with.asp* ...................................................................3

Letter from Assistant Secretary-Indian Affairs Larry Echo Hawk to Tribal
   Leaders (June 9, 2009),
   https://www.indianaffairs.gov/sites/bia.gov/files/assets/as-ia/pdf/idc-
   001854.pdf .................................................................................................................2

NW Regional Director's Analysis of Whether Samish Were Under Federal
   Jurisdiction in 1934, 22-23 (Nov. 9, 2018),
   https://turtletalk.files.wordpress.com/2018/11/2018-11-09-attachment-1-to-
   fttdec- .......................................................................................................................11

M-37029, Memorandum on the Meaning of "Under Federal Jurisdiction" for
   Purposes of the Indian Reorganization Act (Mar. 12, 2014) ......................... *passim*

*Procedure for Determining Eligibility for Land-into-Trust under the First Definition of "Indian" in Section 19 of the Indian Reorganization Act*, Memorandum from the Solicitor to Regional Solicitors, Field Solicitors, and SOL-Division of Indian Affairs (Mar. 10, 2020) ..................................................... *passim*

Sol. Op. M-37055, *Withdrawal of Solicitor's M Opinion, "The Meaning of 'Under federal Jurisdiction' for Purposes of the Indian Reorganization Act*" (Mar. 9,2020) ................................................................................................................................3,6

## INTRODUCTION

In the span of just a few weeks the Secretary made formal arguments both *for* and *against* the legality of the two-part test embodied in the 2014 M Opinion, M-37029, Memorandum on the Meaning of "Under Federal Jurisdiction" for Purposes of the Indian Reorganization Act (Mar. 12, 2014) (hereinafter M Opinion), which he has now withdrawn. The Department began to develop this two-part test a decade ago in 2010[1] and first applied it to the Cowlitz Indian Tribe that same year.[2] This is the same two-part test that was thoroughly reviewed and confirmed by the District Court for the District of Columbia and the Court of Appeals for the District of Columbia,[3] and later by the Eastern District of California and the Court of Appeals for the Ninth Circuit.[4] It is the same two-part test that has never been called into question by any federal court or administrative tribunal;[5] instead Interior's application of the test has been found to be reasonable no less than nine times by the federal courts.[6] And it is the same two-part test that,

---

[1] *See Determining Eligibility under the First Definition of "Indian" in Section 19 of the Indian Reorganization Act of 1934*, Memorandum from the Deputy Solicitor for Indian Affairs to the Solicitor at 2 (Mar. 5, 2020) (hereinafter Deputy Solicitor's Memorandum).

[2] *See* Deputy Solicitor's Memorandum at 2 (citing Dept. of the Interior, Assistant Secretary - Indian Affairs, Record of Decision, *Trust Acquisition of and Reservation Proclamation for the 151.87-acre Cowlitz Parcel in Clark County, Washington, for the Cowlitz Indian Trib*e at 77-106 (Dec. 17, 2010)).

[3] *Confederated Tribes of Grande Ronde v. Jewell*, 75 F.Supp.3d 387 (D.D.C. 2014); *aff'd*, 830 F.3d 552 (D.C. Cir. 2016).

[4] *See County of Amador v. U.S. Dep't of the Interior*, 136 F. Supp. 3d 1193, 1208 (E.D. Cal. 2015), *aff'd*, 872 F.3d 1012 (9th Cir. 2017).

[5] *See Grand Traverse Cty. Bd. of Comm'rs v. Acting Midwest Reg'l Dir.*, 61 IBIA 273, 280-81 n.9 (Sept. 25, 2015); *State of New York v. Acting Eastern Reg'l Dir.*, 58 IBIA 323, 334 n.17 (June 11, 2014).

[6] *See Confederated Tribes of Grande Ronde v. Jewell*, 75 F. Supp. 3d 387, 402-05 (D.D.C. 2014), *aff'd*, 830 F.3d 552, 564, 566 (D.C. Cir. 2016); *Stand Up for California! v. U.S. Dep't of the Interior*, 204 F. Supp. 3d 212, 278 (D.D.C. 2016), *aff'd*, 879 F.3d 1177, 1183-86 (D.C. Cir. 2018), *cert. denied*, 139 S. Ct. 786 (2019); *No Casino in Plymouth v. Jewell*, 136 F. Supp. 3d 1166, 1184 (E.D. Cal. 2015), *vacated and remanded sub nom., No Casino in Plymouth v. Zinke*, 698 F. App'x 531 (9th Cir. 2017) (vacated based on standing); *County of Amador v. U.S. Dep't of the Interior*, 136 F. Supp. 3d 1193, 1200, 1208-10 (E.D. Cal. 2015), *aff'd*, 872 F.3d 1012 (9th

prior to formalization as an M Opinion, was subject to extensive notice and comment on the part of the 573 federally recognized tribes,[7] and on which these tribes (including the Mashpee Tribe) now rely to provide stability and certainty as to how the Department will implement the crucially important statutory language, "recognized tribe under federal jurisdiction."[8]  The Deputy Solicitor's office admits in its March 5 Memorandum that during the last decade the Solicitor's Office has relied on the two-part test more than 80 times.[9]

In the wake of the withdrawal of the M Opinion, no deference should be accorded the analysis by which the Secretary justified his September 2018 refusal to confirm the status of the Mashpee Tribe's reservation.  Moreover, a comparison between this 2018 Decision and the

---

Cir. 2017), *cert. denied*, 139 S. Ct. 64 (2018); *Central N.Y. Fair Bus. Ass'n v. Jewell*, No. 6:08-cv-0660 (LEK/DEP), 2015 WL 11400384 (N.D.N.Y. Mar. 26, 2015); *Citizens for a Better Way v. U.S. Dep't of the Interior*, No. 2:12-cv-3021-TLN-AC, 2015 WL 5648925, at *21-22 (E.D. Ca. Sep. 24, 2015), *aff'd sub. nom., Cachil Dehe Band of Wintun Indians v. Zinke*, 889 F.3d 584 (9th Cir. 2018).

[7] Following the *Carcieri* decision, during the Summer of 2009 the Department of the Interior hosted three consultation session at locations across Indian country to receive input from tribal leaders regarding the Departments implementation of the decision.  *See* Letter from Assistant Secretary-Indian Affairs Larry Echo Hawk to Tribal Leaders (June 9, 2009), https://www.indianaffairs.gov/sites/bia.gov/files/assets/as-ia/pdf/idc-001854.pdf (stating "the Department is committed to supporting the ability of all federally recognized tribes to have lands acquired in trusts and seeks the views of tribes on this matter" and describing three consultations to be held in Bloomington, MN, Sacramento, CA and Arlington, VA).  Each consultation session was transcribed by the Department.  *See Summary of Tribal Consultation re: Carcieri, Bloomington, MN* (June 29, 2009), https://www.bia.gov/sites/bia.gov/files/assets/as-ia/pdf/idc-001873.pdf; *Summary of Tribal Consultation re: Carcieri*, Sacramento, CA (July 1, 2009), https://www.bia.gov/sites/bia.gov/files/assets/as-ia/pdf/idc-001870.pdf; *Transcript of Carcieri Tribal Consultation, Arlington, VA* (July 8, 2009),https://www.bia.gov/sites/bia.gov/files/assets/as-ia/pdf/idc-001871.pdf.

[8] *See* Bethany C. Sullivan & Jennifer L. Turner, *Enough Is Enough: Ten Years of Carcieri v. Salazar*, 40 Pub. Land & Resources L. Rev. 37,83,115 (2019) (stating "[t]he Carcieri M Opinion provides the legal foundation for most fee-to-trust acquisitions" and "Federal courts have also unanimously upheld the Department's interpretation of 'under federal jurisdiction' in 1934, concluding it was reasonable").

[9] Deputy Solicitor's Memorandum at 2 (stating that "the Solicitor's Office has prepared analyses affecting more than 80 tribes using the eligibility procedures memorialized in M-37029.").

Secretary's new March 2020 "under federal jurisdiction" test shows that the Secretary in fact applied the substance of this new test to Mashpee, substituting it for the M Opinion.  *See Procedure for Determining Eligibility for Land-into-Trust under the First Definition of "Indian" in Section 19 of the Indian Reorganization Act*, Memorandum from the Solicitor to Regional Solicitors, Field Solicitors, and SOL-Division of Indian Affairs (Mar. 10, 2020) (hereinafter "2020 Procedures").  Instead of applying the M Opinion in good faith to the thousands of pages of evidence collected, summarized and submitted by the Tribe to demonstrate that it meets the M Opinion test, the Secretary effectively used Mashpee as the foil on which to develop a new test not divulged to the public (let alone the Tribe) until March of this year.  The Secretary's retroactive application of this new test to Mashpee runs afoul of the Administrative Procedure Act, and runs afoul of his duties as the Tribe's trustee.  Accordingly, the Secretary's application of the M Opinion to Mashpee in 2018 should not be accorded any deference whatsoever.

Finally, the license with which the federal government characterizes Plaintiff's views on whether the Secretary's withdrawal of the M Opinion is relevant to this case is unfortunate ("Presumably, Plaintiff … did not deem it necessary to file these updated documents with the Court…").  Fed. Defs. Suppl. Br. In Resp. to the Court's. May 1, 2020 Order at 1, ECF 56 (hereinafter (Fed. Suppl. Br)  At no time did anyone from the Department reach out to the Tribe to provide notice either before or after the M Opinion was withdrawn.  Plaintiff was caught as unaware as was every other federally recognized tribe in the United States.  The Deputy Secretary's Memorandum is dated March 5, the withdrawal dated March 9[10], and the new "Procedures" March 10.  There was no formal announcement of the withdrawal, tribes received the news through press accounts that began appearing on March 10.[11]  It must also be said that

---

[10] Sol. Op. M-37055, *Withdrawal of Solicitor's M Opinion,* "*The Meaning of 'Under federal Jurisdiction' for Purposes of the Indian Reorganization Act*" (Mar. 9,2020) (hereinafter Withdrawal Opinion).

[11] *See, e.g.,* Acee Agoy, *Trump administration changes course with withdrawal of pro-tribal homelands policy*, Indianz.Com (Mar 10, 2020), *https://www.indianz.com/News/2020/03/10/trump-administration-charges-course-with.asp*

the Secretary's suite of actions in March were implemented despite the COVID-19 crisis taking

hold across the country, which had practical implications both for the Tribe and its attorneys.

Yet only eight business days after the Procedures were signed, as the COVID-19 crisis was

sharply escalating, the Department informed the Tribe that it would disestablish the Tribe's

reservation, launching the Tribe into a separate emergency effort to prevent such

disestablishment, sidelining the Tribe's review of the Procedures.  For the reasons discussed

herein, Plaintiffs urge that the Court should consider the Secretary's Withdrawal of the M

Opinion and adoption of new standards, and accord the Secretary no deference whatsoever on

the manner in which he purported to apply the M Opinion to Mashpee in 2018.

## ARGUMENT

### I.   The Court Should Not Accord Deference to the Secretary's Interpretation of the M Opinion as Applied to the 2018 Mashpee Decision

Where there are ambiguities in statutory language, the Indian canon of construction

(ambiguities resolved in favor of the tribe) applies.  Mashpee Tribe's Memorandum of Points

and Authorities in Support of Motion for Summary Judgment (Mashpee Summary Judgment Br.)

at 9; Mashpee Tribe's Combined Reply in Support of its Motion for Summary Judgment and

Memorandum of Points and Authorities in Opposition to Defendants' and Intervenor

Defendants' Motion for Summary Judgment at 6-8.  Any ambiguities in the phrase "recognized

tribe now under federal jurisdiction" must be resolved in favor of the Tribe.  The Secretary

asserts that he should be accorded *Chevron* deference for whatever interpretation he wishes to

apply to those statutory ambiguities, but in this Circuit, the Indian canon supersedes *Chevron*

deference.  *See Cobell v. Norton*, 240 F.3d 1081, 1101 (D.C. Cir. 2001)( finding that the Indian

---

 ("With no formal announcement, the top legal official at the Department of the Interior
withdrew the opinion on Monday. The move confirmed fears voiced by tribal leaders barely a
month ago about the Trump administration's failure to consult Indian nations on decisions
affecting one of their biggest issues -- their homelands.")

canon will control over *Chevron* deference);  *Redding Rancheria v. Hargan*, 296 F. Supp. 3d 256, 266-67 (D.D.C. 2017) (same).

Regardless, the Secretary's statements characterizing the M Opinion as "not consistent with the ordinary meaning, statutory context, legislative history, or contemporary administrative understanding of the phrase 'recognized Indian tribe now under federal jurisdiction.'"[12]  -- in contravention of case law in this Circuit and in other courts confirming that the M Opinion's two-part test is *not* contrary to law, raises the question of whether he faithfully followed the M Opinion or whether he deviated from it and thereby abused his discretion.  More to the point, it appears that the Secretary applied the narrower, more restrictive March 2020 test to his 2018 Decision despite the fact that the Tribe had submitted thousands of pages of argument and evidence in reliance on the M Opinion standard.  The application of the March 2020 Procedures to the 2018 Decision underscores that the Secretary's explanation for his 2018 Decision is inconsistent with the M Opinion and is therefore not a reasonable justification for the decision. As such, it should be entitled to no deference.

### A.    The Secretary's conflicting statements regarding the legality of the M Opinion

The Secretary admits that he was bound to apply the M Opinion and its two-part test to the 2018 Decision.  Fed. Suppl. Br. at 1.  The Secretary maintains that "although the M Opinion has been withdrawn, Interior did not deem the  M Opinion contrary to law."  Fed. Suppl. Br. at 7; *see also id.,* ("Interior has not found the M Opinion's analysis of the meaning of 'under federal jurisdiction' contrary to law").  Instead, he claims that his new approach to determining "under federal jurisdiction" merely "*better reflects* the ordinary meaning, statutory context, legislative history . . . ."  *Id.* (quoting Mar. 9 2020 M Opinion) (emphasis added).  The Secretary's protestations conflict with the explicit text of the Solicitor's March 9 decision withdrawing the

---

[12]  Withdrawal Opinion at 2.

M Opinion, wherein the Solicitor plainly found that the M Opinion's interpretation of "under federal jurisdiction" was "*not consistent*" with the statute:

> This review has led me to conclude that [the M Opinion's] interpretation of Category 1 is *not consistent* with the ordinary meaning, statutory context, legislative history, or contemporary administrative understanding of the phrase "recognized Indian tribe now under federal jurisdiction." Therefore, I hereby withdraw [the 2014 M Opinion]."

March 9 Withdrawal Opinion at 2 (emphasis added).[13]  On the one hand, to justify significantly altering the M Opinion test on which Indian tribes have been relying for ten years, the Department claims that the M Opinion must be withdrawn on legal grounds.  But in the instant action, the Department argues that the M Opinion is good law and that the Secretary applied it in good faith to Mashpee.  This "failure to come to grips with conflicting [agency] precedent constitutes 'an inexcusable departure from the essential requirement of reasoned decision making.'" *Jicarilla Apache Nation v. U.S. Dept. of Interior*, 613 F.3d 1112, 1120 (D.C. Cir. 2010), quoting *Ramaprakash v. FAA,* 346 F.3d 1121, 1125 (D.C.Cir.2003), quoting *Columbia Broad. Sys. v. FCC,* 454 F.2d 1018, 1027 (D.C.Cir.1971).  This Court should not afford deference to the Department's  interpretation of the M Opinion when the Secretary has "failed to come to grips" with whether that opinion remains good law.

> **B.     In Rendering His 2018 Decision, the Secretary Improperly Applied the Substance of his New 2020 "Under Federal Jurisdiction" Test.**

> **1.     The Tribe's Legitimate Reliance on the M Opinion Standard**

The Secretary acknowledges that he should have been bound by the M Opinion when he made his decision in 2018, explicitly conceding the parties' reasonable reliance on it.  *See* Fed.

---

[13] Notably, the Secretary has not explained how the M Opinion can be both "not … consistent" with the statute at the same time as it is "not contrary to law."

Suppl. Br. at 5.[14]  A change in agency interpretation "that does not take account of legitimate
reliance on prior interpretation . . . may be 'arbitrary, capricious or an abuse of discretion.'"
*Smiley v. Citibank (S. Dakota), N.A.*, 517 U.S. 735, 742, (1996) (internal quotations and citations
omitted); *see also Encino Motorcars, LLC v. Navarro*, ⸺ U.S. ⸺, 136 S.Ct. 2117, 2126
(2016) ("[i]n explaining its changed position, an agency must also be cognizant that longstanding
policies may have 'engendered serious reliance interests that must be taken into account.'")
(quoting *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009)).  The M Opinion is
the "established legal regime" under which all of the parties have been operating and on which
the Tribe expended substantial resources.  *See, e.g.*, *Consol. Edison Co. of New York, Inc. v.
F.E.R.C.*, 315 F.3d 316, 323 (D.C. Cir. 2003) (reliance by "affected parties" on an "established
legal regime" may preclude retroactive application of a new rule in an ongoing adjudication).
Yet despite Mashpee's obvious reliance on the M Opinion, in 2018. the Secretary actually
applied to the Mashpee Decision the standards only now made public in the March Opinions and
Procedures, subjecting the Tribe to the very interpretation that the Department acknowledges is
inapplicable to these proceedings.   Indeed, the Deputy Solicitor closely hints at this in his March
5, Memorandum justifying the new standard:  "*the Solicitor's Office in 2018 began* a review of
the Department's eligibility procedures to provide guidance for determining relevant evidence."
Deputy Solicitor's Memorandum at 2 (emphasis added).

---

[14] In a separate M Opinion concerning the second definition of "Indian" under the Indian
Reorganization Act, also released March 9, 2020, the Secretary acknowledged that "an agency
must also be cognizant that longstanding policies may have engendered serious reliance interests
that must be taken into account." *See* M-37054, *Interpreting the Second Definition of "Indian"
in Section 19 of the Indian Reorganization Act of 1934*, at 5 (quoting *Encino Motorcars , LLC v.
Navarro*, 136 S.Ct. 2117, 2126) (internal quotations omitted).  It also explicitly found that the
lack of a developed body of administrative and case law opining on existing policy "militate[s]
against any reasonable reliance."  *See Id.*

## 2.     The Agency applied portions of the Procedures to the 2018 Decision

The 2020 Procedures and the Deputy Solicitor's Memorandum that supports the 2020 Procedures were issued under the guise of "streamlining" the process by which the Department makes "under federal jurisdiction" determinations.  In reality, they materially change the M Opinion's test and substantially narrow the forms of evidence available to demonstrate that a tribe was under federal jurisdiction in 1934 and thus meets the first definition of Indian in the IRA.  This constricted standard was applied to Mashpee in 2018.

The 2020 Procedures now require demonstration of recognition on or before 1934, which the M Opinion did not.  The M Opinion does not require recognition on or before 1934, only at the time the decision applying the IRA to the tribe is made, consistent with Justice Breyer's concurring opinion in *Carcieri* that the IRA "*after all, imposes no time limit upon recognition*".[15] *See* M Opinion at 24-26 (quoting *Carcieri*, 555 U.S. at 398 (Breyer, J., concurring))(emphasis added).  The D.C. Circuit has confirmed the M Opinion's interpretation of  recognition.  *See Confederated Tribes of the Grande Ronde Cmty. of Or. v. Jewell*, 75 F. Supp. 3d 387 (D.D.C. 2014), *aff'd*, 830 F.3d 552 (D.C. Cir. 2016), *cert. den. sub nom.*, *Citizens Against Reservation Shopping v. Zinke*, 137 S.Ct. 1433 (2017).  The M Opinion also confirms that "under federal jurisdiction" and "recognition" may be understood as separate concepts.  *See* M Opinion at 24-26.

The 2020 Procedures have imposed new restrictions, now requiring in Steps 3 and 4[16] that a tribe "demonstrate[] that it was 'recognized' *in or before 1934 and* remained under

---

[15] The Ninth Circuit has confirmed the Department's interpretation of recognition as well.  *See County of Amador v. Jewell*, 136 F. Supp. 3d 1193 (E.D. Cal. 2015); *aff'd*, 872 F.3d 1012, 1021 (9th Cir. 2017), *cert. denied*, 139 S. Ct. 64 (2018) (concluding de novo that the expression "recognized Indian tribe" as used in Section 19, "when read most naturally, includes all tribes that are currently – that is, at the moment of the relevant decision – 'recognized' and that were 'under Federal jurisdiction' at the time the IRA was passed").

[16] Steps 1 and 2 of the 2020 Procedures identify certain types of "presumptive evidence" demonstrating that a tribe was under federal jurisdiction in 1934.  2020 Procedures at 2-6.

jurisdiction in 1934." 2020 Procedures at 6 (italicized and underline emphases added); *see also*
Deputy Solicitor's Memorandum at 28 ("recognized" "refer[s] to actions taken by federal
officials with respect to a tribe for political or administrative purposes *in or before 1934*.")[17] The
March 5, 2020 Deputy Solicitor's Memorandum explicitly concludes that "Congress intended the
phrase 'now under federal jurisdiction' to exclude … tribes never 'recognized' by the United
States in or before 1934." Deputy Solicitor's Memorandum at 29.

Continuing its conflation of recognition and under federal jurisdiction, the 2020
Procedures require a tribe to demonstrate that it was recognized "in or before 1934" by
producing some of the same kinds of evidence that tribes have been using under the M Opinion
to demonstrate that they were under federal jurisdiction, but with new limitations on whether
such evidence will be counted.[18] These new limitations were applied in the 2018 Mashpee
Decision.   Examples include:

---

[17] This standard appears to run afoul of the 1994 amendments to the Indian Reorganization Act
which require that the Department treat all federally recognized tribes equally.  25 U.S.C.
§ 5123(f) ("Departments or agencies of the United States shall not promulgate any regulation or
make any decision or determination pursuant to the Act of June 18, 1934 (25 U.S.C. 461 *et seq.*,
48 Stat. 984) as amended [the Indian Reorganization Act], or any other Act of Congress, with
respect to a federally recognized Indian tribe that classifies, enhances, or diminishes the
privileges and immunities available to the Indian tribe relative to other federally recognized
tribes by virtue of their status as Indian tribes.")

[18] The 2020 Procedures and underlying Deputy Solicitor's Memo describe evidence of federal
recognition in or before 1934 to include the following: "[s]pecific indicia of Congressional
'recognition'" includes "enactments specifically referring to a tribe as an existing entity;
authorizing appropriations to be expended for the benefit of a tribe; authorizing tribal funds to be
held in the federal treasury; directing officials of the Government to exercise supervisory
authority over a tribe; and prohibiting state taxation of a tribe", and "[s]pecific indicia of
Executive or administrative 'recognition' before 1934 include[s] the setting aside or acquisition
of lands for Indians by Executive Order; the presence of an Indian agent on a reservation;
denomination of a tribe in an Executive Order; the establishment of schools and other service
institutions for the benefit of a tribe; the supervision of tribal contracts; the establishment by the
Department of an agency office or Superintendent for a tribe; the institution of suits on behalf of
a tribe and the expenditure of funds appropriated for the use of particular Indian groups." 2020
Procedures at 7-8; Deputy Solicitor's Memorandum at 27-28.

Attendance at BIA School.  The Tribe submitted evidence that Mashpee children

attended the Carlisle Indian School, operated and controlled by the Bureau of Indian Affairs,

from 1905 through 1918.  AR0009238-AR0009321.  The M Opinion expressly recognizes

"education of Indian students at *BIA* schools" as evidence demonstrating that a Tribe was under

federal jurisdiction in 1934.  M Opinion at 19 (emphasis added);  *see also Grand Ronde,* 75 F.

Supp. 3d at 402-04 (documents that "Cowlitz children attended schools operated by the Bureau

of Indian Affairs" constitutes evidence that Cowlitz was under federal jurisdiction in 1934).

To justify rejecting Mashpee's BIA school enrollment evidence, the Secretary found that

the Tribe's school records "do not unambiguously demonstrate that such [Mashpee members']

enrollment was predicated on a jurisdictional relationship *with the Tribe as such*."  2018

Decision at 27, AR0005114 (emphasis added).  The 2020 Procedures now expressly state the

Department credits only school evidence relating to BIA schools established for individual tribes

-- attendance at a school run by the Bureau of Indian Affairs for children of multiple tribes, such

as Carlisle, now does not count as evidence.  2020 Procedures at 7 (giving weight only for "the

establishment of schools and other service institutions *for the benefit of a tribe").*[19] (Emphasis

added.)

Federal Census Documents.  The Tribe also submitted evidence that it was included in

multiple federal census lists, including censuses prepared both by the Office of Indian Affairs

---

[19] The Department also rejected Mashpee's evidence that the Carlisle Superintendent provided
medical and other social services, including job placement services, to the Mashpee Tribal
members at Carlisle*,* despite accepting such evidence for other tribes like Cowlitz, by arguing
that Cowlitz had other kinds of evidence that Mashpee did not.  *See* 2018 Decision at 27,
AR0005114.  Again, this is inconsistent with the M Opinion's acceptance of this kind of
jurisdictional evidence, *see* M Opinion at 19, and instead follows the more restrictive approach in
the Procedures that accepts only "service institutions [established] for the benefit of a tribe"
because these are indicia of "recognition" before 1934. *See* 2020 Procedures at 7; Deputy
Solicitor's Memorandum at 27.

and the Census Bureau between 1850 and 1930.[20]   The M Opinion recognizes census records as

evidence demonstrating a tribe was under federal jurisdiction.  M Opinion at 16, 19; s*ee also*

*Grand Ronde,* 75 F. Supp. 3d at 404 (confirming that local Superintendent's enumeration of

Cowlitz tribal members, and inclusion of them on Office of Indian Affairs statistical tabulation,

demonstrated "unambiguous federal jurisdiction").

> The Department's 2018 Decision inexplicably rejected as irrelevant the 1910 Indian
Population Schedule listing Mashpee tribal members because it was not prepared by the Office
of Indian Affairs pursuant to an 1884 Act directing Indian agents to submit census records of all
Indians under their jurisdiction.[21]   2018 Decision at 27-28, AR0005114-AR0005115.  The
Department cited no authority for the proposition that a census must be prepared pursuant to the
1884 Act to be considered as jurisdictional evidence -- because that is not the standard under the
M Opinion.  In prior decisions under the M Opinion, the Department accepted a range of census
evidence to support the "under federal jurisdiction" inquiry.  *See* BIA NW Regional Director's
Letter to The Honorable Tom Wooten, Chairman, Samish Indian Nation re: Trust Acquisition of
Campbell Lake South Property, Attachment 1, NW Regional Director's Analysis of Whether
Samish Were Under Federal Jurisdiction in 1934, 22-23 (Nov. 9, 2018),
https://turtletalk.files.wordpress.com/2018/11/2018-11-09-attachment-1-to-fttdec- (relying in
part on the *listing of Samish members on an Indian Population Schedules* as evidence that
Samish was under federal jurisdiction); Letter from Bureau of Indian Affairs Acting Director
Eastern Region to the Honorable Earl Barbry, Sr., Chairman Tunica Biloxi Tribe of Louisiana

---

[20] AR0008630 - AR0008634; AR0008636; AR0008627; AR0009563; AR0009687-AR0009692; AR0008625; AR0008616 - AR0008623.

[21] Act of July 4, 1884, ch. 180 § 9, 23 Stat. 76, 98.

(Aug.11, 2011), AR0005528 (recognizing that *"inclusion in federal census counts"* is one form of evidence that a tribe is under federal jurisdiction) (emphasis added).

The 2020 Procedures, in contrast, expressly accept only inclusion in a 1934 Indian Population Report prepared by the Office of Indian Affairs pursuant to the 1884 Act as presumptive evidence that a tribe was recognized and under federal jurisdiction in 1934,[22] and include no other form of census evidence (not even Census Bureau evidence) as relevant to the under federal jurisdiction/federal recognition inquiry.  2020 Procedures at 4-5.  Here too, the Department applied the new requirement, only later articulated in its Procedures, to Mashpee's census evidence, rather than properly applying the 2014 M Opinion standard.[23]

Other Evidence of Federal Jurisdiction.  The Tribe submitted evidence showing that it was included in multiple federal reports governing federal Indian policy and enumerating tribes the federal government asserted were under the jurisdiction of the federal government from the late 1800s through 1935.  AR0008382-AR0008384.  Under the M Opinion standard, the Department has previously accepted this type of federal report as evidence that a tribe was under

---

[22] As noted in the Tribe's summary judgment briefing, the Department entirely ignores the fact that in addition to the 1910 Indian Population Schedule and other census evidence, the Tribe did in fact submit  two censuses prepared pursuant to the 1884 Act.  *See* Mashpee Summary Judgment Br. at 21-22.

[23] Although the 2018 Decision rejects the use of Census Bureau evidence to demonstrate that Mashpee was under federal jurisdiction, the federal government at the same time is relying on Census Bureau evidence as the basis for its distribution of Coronavirus Relief Fund payments to tribes under the CARES Act.  "For purposes of the payments based on Tribal population, Treasury will refer to the Tribal population data used by the Department of Housing and Urban Development (HUD) in connection with the Indian Housing Block Grant (IHBG) program.  This population data is based on Census Bureau data, and Tribal governments are familiar with it and have already been provided the opportunity to scrutinize and challenge its accuracy."  *See* DEPARTMENT OF THE TREASURY, CORONAVIRUS RELIEF FUND ALLOCATIONS TO TRIBAL GOVERNMENTS (May 5, 2020),  https://home.treasury.gov/system/files/136/Coronavirus-Relief-Fund-Tribal-Allocation-Methodology.pdf.

federal jurisdiction.  M Opinion at 16, 19; *see Grand Ronde*, 75 F. Supp. 3d at 404 (repeated

inclusion in internal correspondence and memoranda of "*Cowlitz Indians among* those for whom

[federal officials at the Taholah Indian Agency] believed they had supervisory responsibilities"

demonstrates that Cowlitz was under federal jurisdiction in 1934, even though the Taholah

Agency was not specifically created for Cowlitz ); *Grand Ronde*, 830 F.3d at 564 (confirming

that the Cowlitz Tribe was under federal jurisdiction in 1934 based in part on the Taholah

Agency's enumeration of Cowlitz individual members in federal reports and general assertions

of authority over the Tribe by the Agency).

In its 2018 Mashpee Decision, the Department rejected these reports, in which federal

officials expressly acknowledged Mashpee as being under the federal government's jurisdiction,

because, the Secretary said, they did not demonstrate the federal government's *exercise* of

jurisdiction *over "the Tribe itself"* -- that the reports did not "demonstrate that Congress or the

Executive Branch *took any further action* with respect to the Tribe" and that "[n]one of the

reports submitted by the Tribe reflect that they were prepared as an *exercise of administrative*

*jurisdiction over the Tribe*."  2018 Decision at 21, 22, 24, AR0005108, AR0005109, AR0005111

(emphasis added).  Those statements track the Secretary's 2020 Procedures, which now require

federal officials to affirmatively exercise jurisdiction, not just acknowledge it.  *See* 2020

Procedures at 7 (identifying actions that "direct[] officials of the Government to *exercise*

supervisory authority over a tribe" and generally including only evidence that is specific to that

individual tribe).

The same is true for Mashpee's evidence relating to protection of usufructuary rights.  In

prior decisions made under the M Opinion standard, the Department accepted evidence of federal

acknowledgment of fishing rights even if they were not based on federal treaty rights.[24]  In his

2018 Mashpee decision, the Secretary rejected evidence of federal acknowledgement of the

Tribe's aboriginal hunting and fishing rights because these did not arise pursuant to federal

treaty.[25]  This too is a rule that was unknown to Mashpee when the Tribe submitted evidence to

be evaluated under the M Opinion.  The new 2020 Procedures do not even acknowledge federal

protection of aboriginal or other usufructory rights as evidence, giving weight only to rights that

have been guaranteed by federal treaty.  *See* 2020 Procedures at 4 (finding that "treaty rights

guaranteed by a treaty entered into by the United States and ratified before the era of treaty-

making ended in 1871" is evidence that a tribe was under federal jurisdiction in 1934.)

### 3. The Secretary's Application in his 2018 Decision of Standards Not Formally Adopted and Made Public Until 2020 Was Improper.

In rendering a decision, an agency may not "depart from a prior policy *sub silentio* or

simply disregard rules that are still on the books," *F.C.C. v. Fox Television Stations, Inc*., 556

U.S. 502, 515 (2009).   Instead, "the agency must at least 'display awareness that it is changing

position' and 'show that there are good reasons for the new policy.'" *Encino Motorcars, LLC v.

Navarro*, 136 S. Ct. 2117, 2125–26, 195 L. Ed. 2d 382 (2016), quoting *Fox Television Stations,

Inc*., 556 U.S. at 515. *Sub silentio* interpretive changes also are disfavored "when [an agency's]

---

[24] *See, e.g.,* Dep't of the Interior, Bureau of Indian Affairs, Record of Decision, Trust Acquisition of, and Reservation Proclamation for the 151.87-acre Cowlitz Parcel in Clark County, Washington, for the Cowlitz Indian Tribe (April 2013) (evidence that Indian Agency Superintendent assisted Cowlitz tribal members with access to fishing rights considered evidence of federal jurisdiction, even though there was no record evidence that the Tribe had treaty fishing rights). *See* AR0005709-AR0005711, AR0005713.

[25] The Tribe submitted evidence that the Secretary of the Navy expressly acknowledged the Tribe's aboriginal usufructuary rights documented in a 1949 title report prepared as part of a U.S. Navy condemnation action. AR0005113. In rejecting this evidence, the Secretary distinguished Mashpee's aboriginal rights from those of the Stillaguamish Tribe, noting that Stillaguamish's "fishing rights were acknowledged and protected by the United States under the 1855 Treaty of Point Elliot." 2018 Decision at 26, AR0005113.

prior policy has engendered serious reliance interests that must be taken into account." *Fox Television Stations*, *supra*, citing *Smiley*, 517 U.S. at 742. As noted above, such "serious reliance interests" are unquestionably at issue in these proceedings.

Here, the Department gave no notice that it was applying the new policy, let alone show good reasons for doing so. Instead, it disregarded the M Opinion and substituted the new, more restrictive standards in the 2020 Procedures *sub silentio*. While the Department continues to claim that it was, in fact, applying the M Opinion, instead, this Court "is presented . . . with an explanation for agency action that is incongruent with what the record reveals about the agency's priorities and decisionmaking process." *Dept. of Comm. v. New York*, ___ U.S. ___, 139 S.Ct. 2551, 2575 (2019). The Department's claimed adherence to the M Opinion is, in other words, "contrived." *Id.* at 2576. It should therefore be afforded no deference.

## II. The D.C. Circuit's Holding in *Grand Ronde* Does Not Support Awarding Deference to the Secretary's 2018 Decision

All parties agree that *Confederated Tribes of Grand Ronde Cmty. Of Oregon v. Jewell*, 830 F.3d 552 (D.C. Cir. 2016) remains controlling precedent. In that case, the Court of Appeals for the District of Columbia found that the M Opinion was reasonable "in light of the remedial purposes of the IRA," and that it comported with the Indian canons of construction, *id.* at 565, which require "that statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit." *Id.* at 558-59, quoting *California Valley Miwok Tribe v. United States*, 515 F.3d 1262, 1266 n.7 (D.C. Cir. 2008) (quoting *Cobell v. Norton*, 240 F.3d 1081, 1101 (D. C. Cir. 2001)).

However, this Court should award no deference to the Department's arbitrary, capricious, and contrived interpretation of the M Opinion that it unmistakably (and inexplicably) has repudiated. While the Secretary avers that the "M Opinion continues to be entitled to deference and *Grand Ronde* remains the relevant controlling authority," Fed. Suppl. Br. 8, in fact the Department has ignored *Grand Ronde's* holding that the M Opinion and its two-part test are

15

reasonable.  The Department's "'[u]nexplained inconsistency' in agency policy is 'a reason for holding an interpretation to be an arbitrary and capricious change from agency practice.'" *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2125–26, 195 L. Ed. 2d 382 (2016), quoting *National Cable & Telecommunications Assn. v. Brand X Internet Services,* 545 U.S. 967, 981 (2005).  The Department's interpretation "is itself unlawful and receives no *Chevron* deference." *Id.*  Moreover, because the court in *Grand Ronde* found the M Opinion consistent with the Indian canons of construction, it continues to control over any more restrictive interpretation that the Department might advance.  *See Cobell*, 240 F.3d at 1101.  Accordingly, this Court should remand to the Department to apply the M Opinion to the Tribe correctly, consistent with its interpretation in *Grand Ronde*, and without the *sub silentio* application of the new and more restrictive standards in the March 2020 Procedures.

The Department appears to concede that the 2014 M Opinion must apply on remand.  *See* Supp. Br. at 6 ("The [2014] M Opinion remains the correct test to apply to the question of whether the Tribe was 'under federal jurisdiction' in 1934.")  Small wonder, as the alternative would be to reveal the Department's position in the current proceedings as a sham.  The Department already has indicated that it would deny the Tribe's application pursuant to the more restrictive standard articulated in the Withdrawal Opinion.  Supp. Br. at 10 n.4.  In the event that the Court grants the relief the Tribe requests, the Department has made clear that – if it were to apply the new M Opinion – the Tribe's success would be quickly followed by an inevitable loss on remand.  *See Clark-Cowlitz Joint Operating Agency v. FERC*, 826 F.2d 1074, 1081 (D.C.Cir.1987) (en banc) ("[A] retrospective application can properly be withheld when to apply the new rule to past conduct or prior events would work a 'manifest injustice'").  Such a heads we win, tails you lose scenario would clearly work a "manifest injustice" for the Tribe.

Dated: May 11, 2020

Respectfully submitted,

/s/ *Tami Lyn Azorsky*
Tami Lyn Azorsky (D.C. Bar No. 388572)
Kenneth J. Pfaehler (D.C. Bar No. 461718)
V. Heather Sibbison (D.C. Bar No. 422632)
Suzanne Schaeffer (D.C. Bar 429735)
DENTONS US LLP
1900 K Street, NW
Washington, DC 20006
Tel.: 202.496.7500
Fax.: 202.496.7756
tami.azorsky@dentons.com
kenneth.pfaehler@dentons.com
heather.sibbison@dentons.com
suzanne.schaeffer@dentons.com

*Attorneys for Plaintiff*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on May 11, 2020, I electronically filed the foregoing Supplemental Brief on the Defendants' Withdrawal of the M Opinion with the Clerk of the Court of the U.S. District Court for the District of Columbia by using the Court's CM/ECF system. All participants in this case are registered CM/ECF users and will be served by the CM/ECF system.

/s/ *Tami Lyn Azorsky*
Tami Lyn Azorsky

114751937