UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MASHPEE WAMPANOAG TRIBE, | ) | |
| Plaintiff, | ) ) ) | |
| v. | ) ) | Civil Action No. 18-2242 (PLF) |
| DAVID BERNHARDT, in his official capacity as Secretary of the Interior, et al., | ) ) ) | |
| Defendants, | ) ) ) | |
| and | ) ) | |
| DAVID LITTLEFIELD, et al., | ) ) ) | |
| Defendant-Intervenors. | ) ) | |

MEMORANDUM OPINION AND ORDER

On March 27, 2020, the Department of the Interior (the "Department" or "DOI") advised the Mashpee Wampanoag Tribe that it would begin the process of taking its land out of trust, rescinding its reservation status, and annulling the Tribe's gaming eligibility determination. The Tribe filed an emergency motion for a temporary restraining order and preliminary injunction in this Court.  After hearing oral argument on that motion and on cross-motions for summary judgment, the Court concluded in a separate Opinion and Order issued today that the Tribe was entitled to summary judgement because the Department of the Interior's 2018 Record of Decision (the "2018 ROD") was arbitrary, capricious, an abuse of discretion, and contrary to law.  The Court remanded the matter to the Department to issue a decision that conforms with the 2014 M-Opinion's standard, the evidence considered probative under the M-Opinion, the

Department's prior decisions under the 2014 M-Opinion, and this Court's summary judgment Opinion.  While it also denied the motion for preliminary injunction as moot, the Court now determines that there is a need to maintain the status quo pending a determination on remand.[1]

## I.

The opinion issued earlier today resolving the parties' cross-motions for summary judgment summarizes the factual and procedural history of this case.  This opinion assumes familiarity with the case and therefore includes only the factual and procedural history that is relevant here.

The Tribe has submitted a declaration signed by the Chairman of the Mashpee Wampanoag Tribe, Cedric Cromwell, swearing that the Department told the Tribe that it would not take the land out of trust pending the litigation in this Court with respect to the agency's 2018 ROD.  See Supplemental Declaration of the Honorable Cedric Cromwell, Chairman, Mashpee Wampanoag Tribe ("Cromwell Supp. Declaration") [Dkt. No. 57-1] at ¶¶ 3-5 (describing a phone call he had with the Department on September 7, 2018, in which the Tribe indicated that it would challenge the 2018 ROD in court, and the Department's representatives "said that the land

---

[1]  The Court has reviewed the following documents and accompanying exhibits in connection with the pending motion:  Complaint ("Compl.") [Dkt. No. 1]; Plaintiff's Emergency Motion for Temporary Restraining Order and Motion for a Preliminary Injunction ("Mashpee TRO & PI") [Dkt. No. 42]; Federal Defendants' Memorandum in Opposition to Plaintiff's Emergency Motion for Temporary Restraining Order and Motion for a Preliminary Injunction ("Federal Defendants PI Opp.") [Dkt. No. 50]; Defendant-Intervenors' Opposition to Plaintiff's Emergency Motion for Temporary Restraining Order and Motion for a Preliminary Injunction ("Defendant-Intervenors PI Opp.") [Dkt. No. 51]; Plaintiff's Reply in Support of its Emergency Motion for Temporary Restraining Order and Motion for a Preliminary Injunction ("Mashpee PI Reply") [Dkt. No. 57]; Amicus Brief by United States and Eastern Tribes Sovereignty Protection Fund [Dkt. No. 68]; Amicus Brief by Members of Congress [Dkt. No. 70]; Transcript of May 20, 2020 Motions Hearing ("May 20, 2020 Tr.") [Dkt. No. 71]; and Federal Defendants' Response to Amicus Brief by United States and Eastern Tribes Sovereignty Protection Fund [Dkt. No. 74].

would not be taken out of trust pending the Tribe's challenge"). While the Department now represents that it only told the Tribe that it would not take the land out of trust until related litigation in the First Circuit was complete, there is no signed declaration submitted by the federal defendants contradicting Chairman Cromwell's signed declaration. See May 20, 2020 Tr. at 49:15-24. What's more, the Department has represented in the past that its policy is to take "no action during the pendency" of litigation. See Cromwell Supp. Declaration at ¶ 4; see also Declaration of the Honorable Cedric Cromwell, Chairman, Mashpee Wampanoag Tribe ("Cromwell Declaration") [Dkt. No. 42-3] at ¶ 14 n.2 (citing Tanner Stening, Interior: Mashpee tribe's land remains in trust pending appeal, Cape Cod Times (Sept. 11, 2018), https://www.capecodtimes.com/news/20180911/interior-mashpee-tribes-land-remains-in-trust-pending-appeal ("Consistent with our practices and procedures, the department will continue to hold the tribe's land in trust until a final court order is imposed.")).

        Then, on March 27, 2020, the Secretary went back on his word to the Tribe in contravention of the Department's own practice of not taking such action while litigation is pending. On March 27, 2020, the Secretary wrote a letter to the Director and the Eastern Regional Director of the BIA directing them to "rescind" the 2015 Decision "whereby the BIA accepted land into trust on behalf of the Tribe," and to "revoke the reservation proclamation." See March 27, 2020 Secretary of the Interior letter [Dkt. No. 42-4]. The letter noted that the mandate and final judgment had issued from the First Circuit in related litigation, Littlefield v. Mashpee Wampanoag Indian Tribe ("Littlefield v. Mashpee"), 951 F.3d 30 (1st Cir. 2020), on March 19, 2020, which meant that the Littlefield decision was final. Id. Upon receiving the letter, the BIA scheduled a call with the Chairman of the Mashpee Wampanoag Tribe, Cedric Cromwell, to inform him of the directives in the March 27, 2020 letter. See Cromwell

Declaration at ¶¶ 12-14.  During the call, the BIA Director indicated that the agency would act on the Secretary's direction "soon," but did not provide further detail about the timeline or process for doing so.  Id. at ¶¶ 12-17.  The Tribe immediately filed a motion for preliminary injunction in this Court.

In view of the litigation pending in this Court, the federal defendants agreed to refrain from completing the ministerial tasks necessary to record transfer of the land out of trust, revoke the reservation proclamation, or annul the gaming eligibility determination – essentially agreeing to maintain the status quo – up to and including May 15, 2020, while the parties completed briefing on the motion for a preliminary injunction.  See April 3, 2020 Joint Motion for Scheduling Order [Dkt. No. 43] at 2.  The federal defendants subsequently agreed to extend their voluntary maintenance of the status quo through June 5, 2020, in order to allow this Court time to reach a decision on the merits.

II.

The federal defendants argue that this Court does not have jurisdiction to enjoin the Secretary from following through with directives to the Department in his March 27, 2020 letter to record transfer of the land out of trust, revoke the reservation proclamation, and annul the gaming eligibility determination.  First, they argue that there is no jurisdiction because the Tribe did not seek injunctive relief in its complaint.  Federal Defendants PI Opp. at 12-14.  Second, they argue that the mandate issuing from the First Circuit required the Secretary to "implement[]" the First Circuit's mandate.  Id. at 12.

The problem with the federal defendants' first argument is that the Tribe did seek injunctive relief in its complaint filed in this Court.  See Compl. ¶ 5.  The cases cited in the federal defendants' opposition that require injunctive relief to be related in some fashion to the

4

relief requested in the complaint therefore do not support the argument that this Court lacks jurisdiction. Contra Federal Defendants PI Opp. at 13. The Tribe cannot be faulted for not emphasizing the need for injunctive relief in its summary judgment briefing because, at that time, its land remained in trust and the Tribe was unaware that the status quo was in jeopardy.

As to the second argument, the First Circuit affirmed the decision of the United States District Court for the District of Massachusetts and its interpretation of the IRA's second definition of Indian. Littlefield v. Mashpee, 951 F.3d at 41. Nothing in the First Circuit's opinion goes beyond the remedy that the district court already had ordered: a remand to the agency. There is no language in the First Circuit's opinion that instructs the Department to immediately remove the land from trust. Rather, the remedy provided by the Massachusetts district court has already been effectuated: a remand to the agency.

The legitimacy of the agency's subsequent remand decision – the 2018 ROD – came into question when the Tribe initiated this litigation. And in accordance with this Court's decision on the cross-motions for summary judgment issued earlier today, the need to maintain the status quo persists until the agency reaches a legitimate decision on remand that appropriately applies the M-Opinion in accordance with the Department's own precedent.

III.

Often in APA cases, the status quo is maintained when a court remands to an agency and vacates the agency's final decision that was on review. See, e.g., Sierra Club v. Johnson, 374 F. Supp. 2d 30, 33 (D.D.C. 2005) (the status quo ante, was created by the court of appeals' vacatur of the agency's earlier action). But where, as here, there is a threat that the agency may take an action that would affect the plaintiff's interests while the agency is considering the matter, courts have found it appropriate to enjoin an agency from taking such an

action.  See Stuttering Found. of America v. Springer, 498 F. Supp. 2d 203, 205 (D.D.C. 2007) (enjoining the agency from taking an adverse action until its final decision has been made on remand).  The threat is real here, as evidenced by the March 27, 2020 letter, and the harm would be irreparable.

The Tribe maintains that taking the land out of trust will result in the loss of its sovereignty over the land, the inability of the Tribe to exercise its right to self-governance, the loss of its eligibility for a variety of federal programs and funding including COVID relief, cause the Tribe to be responsible for back taxes, jeopardize its ongoing projects to build low-income housing, and harm any innocent third parties who purchase the foreclosed on land only to have it revert back to the Tribe upon a favorable agency decision.  The Tribe also argues that the irreparable harm to its cultural and community connections is so fundamental that it cannot be calculated in terms of money.  Mashpee TRO & PI at 13; Cromwell Declaration at ¶¶ 3, 10, 19-20.  The federal defendants and the defendant-intervenors respond that Mashpee's characterization of the repercussions of its land being removed from trust are overstated.  See Federal Defendants PI Opp. at 19; Defendant-Intervenors PI Opp. at 8.

The Court agrees that the Tribe will suffer irreparable harm if the Secretary is allowed to proceed with removing its land from trust pending remand.  The "most obvious harm" that the Tribe will suffer is the "loss of sovereign authority over the Tribe's historic lands." Mashpee TRO & PI at 13.  The nature of this harm is not one that can be "calculated in terms of money." Id. at 13.  See also Prairie Band of Potawatomi Indians v. Pierce, 253 F.3d 1234, 1252 (10th Cir. 2001) (holding that injuries to a tribal self-government are irreparable because they are not easily subject to valuation and cannot adequately be compensated for in the form of monetary damages).  The federal defendants and defendant-intervenors concede that loss of

sovereignty and jurisdiction over the land would be a consequence if the land is taken out of trust, but they argue that this does not constitute an irreparable harm. See Federal Defendants PI Opp. at 21; Defendant-Intervenors PI Opp. at 11. The Court disagrees. If the land is taken out of trust, then the Mashpee Tribe will lose its sovereignty over the land in its entirety. The total loss of sovereign authority, self-government, and jurisdiction over the land is unquestionably an irreparable harm. See Akiachak Native Community v. Jewell, 995 F. Supp. 2d 7, 17 (D.D.C. 2014) (finding loss of sovereignty to constitute an irreparable harm). See also Ute Indian Tribe of Uintah & Ouray Reservation v. Utah, 790 F.3d 1000, 1005 (10th Cir. 2015) (holding that even a partial infringement on a tribe's sovereignty over its land constitutes an irreparable harm); Wyandotte Nation v. Sebelius, 443 F.3d 1247, 1255 (10th Cir. 2006) (same); Seneca-Cayuga Tribe v. Oklahoma, 874 F.2d 709 (10th Cir. 1989) (same).[2]

The balance of the equities and the public interest also favor maintenance of the status quo. The Court finds that there is no injury or public interest consideration here for the federal defendants or defendant-intervenors that would outweigh the Tribe's irreparable injury. There is still an open question as to the Secretary's ability to take the land into trust because of the litigation pending in this Court and the remand it has ordered. While the First Circuit has determined that the Secretary could not take the land into trust under the IRA's second definition of Indian as the 2015 ROD interpreted it, there is still a question as to whether the Tribe was eligible to have its land taken into trust under the IRA's first definition of Indian. That question will be addressed on remand where the agency must make a decision that conforms with the 2014 M-Opinion and Department precedent. While the Court's opinion granting summary

---

[2] Having found that the tribe's loss of its sovereign authority is clear evidence of irreparable harm to the Tribe that will result absent injunctive relief, there is no need for the Court to address the other arguments regarding irreparable harm.

judgment for the Tribe does not predict what the ultimate outcome will be on remand, there is every possibility that the agency will issue a decision favorable to the Tribe. There therefore is no need for the Department to swiftly take the land out of trust now. See Mashpee TRO & PI at 17-18; Mashpee PI Reply at 18-19.

Nor is there any harm to the federal defendants by maintaining the status quo while this case is on remand. Cf. Stellar IT Sols., Inc. v. USCIS, Civil Action No. 18-2015, 2018 WL 6047413, at *12 (D.D.C. Nov. 19, 2018) (holding that the balance of the equities and public interest were not in the government's favor when maintaining the status quo "would not require [the agency] to take any affirmative action"). The federal defendants' argument that it needs to take the land out of trust now in order to account for the state and local interests in Massachusetts rings hollow. See Federal Defendants PI Opp. at 24. The agency had no problem with maintaining the status quo pending its original remand from the district court in Massachusetts, and the Court sees no need that it should be any different now.

The defendant-intervenors' argue that they have an interest in "giving effect" to the First Circuit's decision because this will provide "assurances that the casino will not be constructed, thereby preserving the [defendant-intervenors'] community and way of life" and that allowing the Department to take the land out of trust now would "lift[] a cloud of uncertainty over the Taunton property for the benefit of all stakeholders in Southeastern Massachusetts." Defendant-Intervenors PI Opp. at 13-14. But there can be no "assurances" about the casino construction, nor would the "cloud of uncertainty" over the property be lifted even absent a stay maintaining the status quo. This Court has granted summary judgment for the Tribe and remanded to the agency to issue a decision that conforms with the M-Opinion and the

Department's precedent.  Not until the agency has completed this remand will the uncertainty about the land be alleviated.

The Mashpee Tribe also notes that the Department's process for taking the land out of trust has not been explained to the Tribe, nor is it entirely clear that the Secretary even has the authority to do so at this stage.  See Mashpee TRO & PI at 18-20; Mashpee PI Reply at 18, 20.  See also Members of Congress's Amicus Brief at 9-13.  The Department's process for taking the land out of trust and the statutory authority of the Secretary to do so are not squarely before the Court at this time.  But these doubts raised by the Tribe and the Members of Congress as to whether Congress has ever authorized such action certainly weigh in favor of maintaining the status quo for now and weigh against allowing the Secretary to proceed in this unexpectedly expedited manner.  As always, there is a weighty interest indeed in requiring the Executive Branch of government to comply with the law.

For all of the foregoing reasons, it is hereby

ORDERED that the federal defendants – David Bernhardt (substituted for former Secretary Ryan Zinke) as Secretary of the Interior, the United States Department of the Interior, and their employees, agents, servants, attorneys, and all other persons in active concert or participation with them (collectively, the "federal defendants") – are prohibited from taking any steps to alter the status quo ante with respect to the approximately 170 acres in the Town of Mashpee, Massachusetts and the 151 acres in the Town of Taunton, Massachusetts, that were taken into trust by the Department of the Interior for the benefit of the Mashpee Wampanoag Tribe on November 10, 2015 (the "Trust Land").  This temporary stay includes, but is not limited to, restraining the aforementioned federal defendants from:

(1) Taking any steps or initiating any procedures to take the Trust Land out of trust or attempt to return the Trust Land to fee ownership status, including without limitation, any steps to change, alter, or re-record title to the Trust Land, whether in the Indian Lands Title Records Office or in Barnstable or Bristol Counties in Massachusetts, or elsewhere, and

(2) Rescinding, revoking, withdrawing, vacating, or otherwise terminating the proclamation that the Trust Land is the Tribe's Reservation, see 81 Fed. Reg. 948 (Jan. 8, 2016), or making any proclamation or announcement to the contrary; and it is

FURTHER ORDERED that this temporary stay shall last until fourteen days after the Department has issued a decision on remand that conforms with the 2014 M-Opinion's standard, the evidence permitted therein, and the Department's prior decisions under the 2014 M-Opinion.

    SO ORDERED.

/s/
_____
PAUL L. FRIEDMAN
United States District Judge

DATE: June 5, 2020