APPEAL,TYPE-E

# U.S. District Court
## District of Columbia (Washington, DC)
## CIVIL DOCKET FOR CASE #: 1:18-cv-02242-PLF

MASHPEE WAMPANOAG TRIBE v. ZINKE et al
Assigned to: Judge Paul L. Friedman
Cause: 05:702 Administrative Procedure Act

Date Filed: 09/27/2018
Jury Demand: None
Nature of Suit: 899 Administrative
Procedure Act/Review or Appeal of
Agency Decision
Jurisdiction: U.S. Government
Defendant

**Plaintiff**

**MASHPEE WAMPANOAG TRIBE**          represented by **Kenneth John Pfaehler**
DENTONS US LLP
1900 K Street, NW
Washington, DC 20006
(202) 408-6468
Fax: (202) 496-7756
Email: kenneth.pfaehler@dentons.com
*ATTORNEY TO BE NOTICED*

**Samuel F. Daughety**
DENTONS US LLP
1900 K Street, NW
Washington, DC 20006
202-408-6427
Email: samuel.daughety@dentons.com
*ATTORNEY TO BE NOTICED*

**Suzanne R. Schaeffer**
DENTONS US LLP
1900 K Street, NW
Washington, DC 20006
(202) 408-7097
Fax: (202) 408-6399
Email: suzanne.schaeffer@dentons.com
*ATTORNEY TO BE NOTICED*

**V. Heather Sibbison**
DENTONS US LLP
1900 K Street, NW
Washington, DC 20006
(202) 408-6439
Fax: (202) 496-7756

Email: heather.sibbison@dentons.com
*ATTORNEY TO BE NOTICED*

**Tami Lyn Azorsky**
DENTONS US LLP
1900 K Street, NW
Suite 100
Washington, DC 20006
(202) 496-7573
Fax: (202) 496-7756
Email: tami.azorsky@dentons.com
*ATTORNEY TO BE NOTICED*

V.

**Defendant**

**RYAN ZINKE**
*in his official capacity as Secretary of
the Interior*

represented by **Sara E. Costello**
U.S. DEPARTMENT OF JUSTICE
ENRD/NRS
4 Constitution Square
Room 3.109
150 M Street, NE
Washington, DC 20002
(202) 305-0484
Fax: (202) 305-0506
Email: sara.costello2@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Defendant**

**U.S. DEPARTMENT OF THE
INTERIOR**

represented by **Sara E. Costello**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

V.

**Intervenor Defendant**

**DAVID LITTLEFIELD**

represented by **Andrew Kim**
GOODWIN PROCTER LLP
1900 N St NW
Washington, DC 20036
202-346-4000
Email: andrewkim@goodwinlaw.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David H. Tennant**

LAW OFFICE OF DAVID TENNANT
PLLC
3349 Monroe Ave.
Suite 345
Rochester, NY 14618
(585) 281-6682
Email:
david.tennant@appellatezealot.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**MICHELLE LITTLEFIELD**          represented by   **Andrew Kim**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **David H. Tennant**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**TRACY ACORD**                   represented by   **Andrew Kim**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **David H. Tennant**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**DEBORAH CANARY**                represented by   **Andrew Kim**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

                                                   **David H. Tennant**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**VERONICA CASEY**                represented by   **Andrew Kim**
                                                   (See above for address)
                                                   *LEAD ATTORNEY*
                                                   *ATTORNEY TO BE NOTICED*

**David H. Tennant**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**PATRICIA COLBERT**                    represented by    **Andrew Kim**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David H. Tennant**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**VIVIAN COURCY**                       represented by    **Andrew Kim**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David H. Tennant**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**DONNA DEFARIA**                       represented by    **Andrew Kim**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David H. Tennant**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**KIM DORSEY**                          represented by    **Andrew Kim**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David H. Tennant**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**FRANCIS LAGACE**                        represented by   **Andrew Kim**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **David H. Tennant**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**WILL COURCY**                           represented by   **Andrew Kim**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **David H. Tennant**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**ANTONIO DEFARIA**                       represented by   **Andrew Kim**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **David H. Tennant**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**KELLY DORSEY**                          represented by   **Andrew Kim**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

                                                           **David H. Tennant**
                                                           (See above for address)
                                                           *LEAD ATTORNEY*
                                                           *ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**JILL LAGACE**                           represented by   **Andrew Kim**
                                                           (See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David H. Tennant**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**DAVID LEWRY**                    represented by   **Andrew Kim**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David H. Tennant**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**KATHLEEN LEWRY**                 represented by   **Andrew Kim**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David H. Tennant**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**ROBERT LINCOLN**                 represented by   **Andrew Kim**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David H. Tennant**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**CHRISTINA MCMAHON**              represented by   **Andrew Kim**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David H. Tennant**
(See above for address)

*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**CAROL MURPHY**                    represented by   **Andrew Kim**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David H. Tennant**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**DOROTHY PEIRCE**                    represented by   **Andrew Kim**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David H. Tennant**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**DAVID PURDY**                    represented by   **Andrew Kim**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David H. Tennant**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**LOUISE SILVIA**                    represented by   **Andrew Kim**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**David H. Tennant**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**FRANCIS CANARY, JR.**                  represented by  **Andrew Kim**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **David H. Tennant**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**MICHELLE LEWRY**                       represented by  **Andrew Kim**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **David H. Tennant**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Intervenor Defendant**

**RICHARD LEWRY**                        represented by  **Andrew Kim**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

                                                         **David H. Tennant**
                                                         (See above for address)
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Amicus**

**UNITED SOUTH AND EASTERN**             represented by  **Kaitlyn Elizabeth Klass**
**TRIBES SOVEREIGNTY**                                   HOBBS, STRAUS, DEAN &
**PROTECTION FUND**                                      WALKER, LLP
                                                         1899 L Street, NW
                                                         Suite 1200
                                                         Washington, DC 20036
                                                         (202) 822-8282
                                                         Email: KKlass@hobbsstraus.com
                                                         *LEAD ATTORNEY*
                                                         *ATTORNEY TO BE NOTICED*

**Amicus**

**MEMBERS OF CONGRESS**                  represented by  **Keith M. Harper**
                                                         KILPATRICK TOWNSEND &
                                                         STOCKTON, LLP
                                                         607 14th Street, NW

Suite 900
Washington, DC 20005
(202) 508-5844
Fax: (202) 585-0919
Email:
kharper@kilpatricktownsend.com
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

**Adam Howard Charnes**
KILPATRICK TOWNSEND &
STOCKTON LLP
2001 Ross Avenue
2001 Ross Avenue
Suite 4400
Dallas, TX 75201
214-922-7106
Email:
acharnes@kilpatricktownsend.com
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 09/27/2018 | 1 | COMPLAINT against U.S. DEPARTMENT OF THE INTERIOR, RYAN ZINKE ( Filing fee $ 400 receipt number 0090-5709592) filed by MASHPEE WAMPANOAG TRIBE. (Attachments: # 1 Civil Cover Sheet, # 2 Summons (U.S. Department of the Interior), # 3 Summons (Ryan Zinke))(Azorsky, Tami) (Entered: 09/27/2018) |
| 09/28/2018 | 2 | REQUEST FOR SUMMONS TO ISSUE *U.S. Attorney for D.C. (Attn.: civil-process clerk) and U.S. Attorney General* re 1 Complaint, filed by MASHPEE WAMPANOAG TRIBE. Related document: 1 Complaint, filed by MASHPEE WAMPANOAG TRIBE.(Azorsky, Tami) (Entered: 09/28/2018) |
| 09/28/2018 | | Case Assigned to Judge Rosemary M. Collyer. (zrdj) (Entered: 09/28/2018) |
| 09/28/2018 | 3 | SUMMONS (4) Issued Electronically as to U.S. DEPARTMENT OF THE INTERIOR, RYAN ZINKE, U.S. Attorney and U.S. Attorney General (Attachments: # 1 Notice and Consent)(zrdj) (Entered: 09/28/2018) |
| 10/24/2018 | 4 | RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed. U.S. DEPARTMENT OF THE INTERIOR served on 10/5/2018; RYAN ZINKE served on 10/5/2018, RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed on United States Attorney General. Date of Service Upon United States Attorney General 10/10/2018., RETURN OF SERVICE/AFFIDAVIT of Summons and Complaint Executed as to the United States Attorney. Date of Service Upon United States Attorney on 10/10/2018. ( Answer due for ALL FEDERAL DEFENDANTS by 12/9/2018.) (Attachments: # 1 Summons Returned Executed - U.S. Dept. of |

| | | |
|---|---|---|
| | | Interior, # 2 Summons Returned Executed - U.S. Attorney General, # 3 Summons Returned Executed - U.S. Attorney's Office D.C.)(Azorsky, Tami) (Entered: 10/24/2018) |
| 11/20/2018 | 5 | NOTICE of Appearance by Sara E. Costello on behalf of U.S. DEPARTMENT OF THE INTERIOR, RYAN ZINKE (Costello, Sara) (Entered: 11/20/2018) |
| 11/20/2018 | 6 | Unopposed MOTION for Extension of Time to File Answer re 1 Complaint, by U.S. DEPARTMENT OF THE INTERIOR, RYAN ZINKE (Attachments: # 1 Text of Proposed Order)(Costello, Sara) (Entered: 11/20/2018) |
| 11/27/2018 | | ORDER granting 6 Unopposed Motion for Extension of Time to Answer. Defendants' answer or response to Plaintiff's complaint shall be due on or before January 9, 2019. Signed by Judge Rosemary M. Collyer on 11/27/2018. (lcrmc1) (Entered: 11/27/2018) |
| 11/27/2018 | | Set/Reset Deadlines/Hearings: Answer or other response to complaint due by 1/9/2019. (zcdw) (Entered: 12/11/2018) |
| 12/05/2018 | 7 | NOTICE of Appearance by V. Heather Sibbison on behalf of MASHPEE WAMPANOAG TRIBE (Sibbison, V.) (Entered: 12/05/2018) |
| 12/28/2018 | 8 | Unopposed MOTION to Stay *Defendants' Answer or Response to Plaintiff's Complaint* by U.S. DEPARTMENT OF THE INTERIOR, RYAN ZINKE (Attachments: # 1 Text of Proposed Order)(Costello, Sara) (Entered: 12/28/2018) |
| 01/02/2019 | | MINUTE ORDER denying 8 Motion to Stay and instead granting an extension of the deadline for a response to the complaint. Defendants shall file an answer or response to the complaint no later than January 30, 2019. Signed by Judge Rosemary M. Collyer on 1/2/2019. (lcrmc1) (Entered: 01/02/2019) |
| 01/02/2019 | | Set/Reset Deadlines: Answer due by 1/30/2019, (mac) (Entered: 01/02/2019) |
| 01/24/2019 | 9 | MOTION for Extension of Time to File Answer re 1 Complaint, by U.S. DEPARTMENT OF THE INTERIOR, RYAN ZINKE (Attachments: # 1 Text of Proposed Order)(Costello, Sara) (Entered: 01/24/2019) |
| 01/25/2019 | | MINUTE ORDER granting 9 Motion for Extension of Time to Answer. Defendants' answer or response to the Complaint shall be filed on or before February 20, 2019. Signed by Judge Rosemary M. Collyer on 1/25/2019. (lcrmc1) (Entered: 01/25/2019) |
| 01/25/2019 | | Set/Reset Deadlines/Hearings: Answer or response to Complaint due by 2/20/2019. (zcdw) (Entered: 01/29/2019) |
| 02/14/2019 | 10 | MOTION to Intervene *and Memorandum in Support* by DAVID LITTLEFIELD, MICHELLE LITTLEFIELD, TRACY ACORD, DEBORAH CANARY, VERONICA CASEY, PATRICIA COLBERT, VIVIAN COURCY, DONNA DEFARIA, KIM DORSEY, FRANCIS LAGACE, WILL COURCY, ANTONIO DEFARIA, KELLY DORSEY, JILL LAGACE, DAVID LEWRY, KATHLEEN LEWRY, ROBERT LINCOLN, |

| | | |
|---|---|---|
| | | CHRISTINA MCMAHON, CAROL MURPHY, DOROTHY PEIRCE, DAVID PURDY, LOUISE SILVIA, FRANCIS CANARY, JR., MICHELLE LEWRY, RICHARD LEWRY (Attachments: # 1 Exhibit A - Proposed Intervenor-Defendants' Answer to Complaint, # 2 Declaration of David H. Tennant, # 3 Exhibit 1 to Tennant Declaration, # 4 Exhibit 2 to Tennant Declaration, # 5 Exhibit 3 to Tennant Declaration, # 6 Exhibit 4 to Tennant Declaration, # 7 Text of Proposed Order)(Kim, Andrew) (Entered: 02/14/2019) |
| 02/14/2019 | 11 | NOTICE of Appearance by Andrew Kim on behalf of TRACY ACORD, DEBORAH CANARY, FRANCIS CANARY, JR., VERONICA CASEY, PATRICIA COLBERT, VIVIAN COURCY, WILL COURCY, ANTONIO DEFARIA, DONNA DEFARIA, KELLY DORSEY, KIM DORSEY, FRANCIS LAGACE, JILL LAGACE, DAVID LEWRY, KATHLEEN LEWRY, MICHELLE LEWRY, RICHARD LEWRY, ROBERT LINCOLN, DAVID LITTLEFIELD, MICHELLE LITTLEFIELD, CHRISTINA MCMAHON, CAROL MURPHY, DOROTHY PEIRCE, DAVID PURDY, LOUISE SILVIA (Kim, Andrew) (Entered: 02/14/2019) |
| 02/14/2019 | 12 | MOTION for Leave to Appear Pro Hac Vice :Attorney Name- David H. Tennant, :Firm- Law Office of David Tennant PLLC, :Address- 3349 Monroe Avenue, Suite 345, Rochester, NY 14618. Phone No. - 585.708.9338. Filing fee $ 100, receipt number 0090-5948920. Fee Status: Fee Paid. by TRACY ACORD, DEBORAH CANARY, FRANCIS CANARY, JR., VERONICA CASEY, PATRICIA COLBERT, VIVIAN COURCY, WILL COURCY, ANTONIO DEFARIA, DONNA DEFARIA, KELLY DORSEY, KIM DORSEY, FRANCIS LAGACE, JILL LAGACE, DAVID LEWRY, KATHLEEN LEWRY, MICHELLE LEWRY, RICHARD LEWRY, ROBERT LINCOLN, DAVID LITTLEFIELD, MICHELLE LITTLEFIELD, CHRISTINA MCMAHON, CAROL MURPHY, DOROTHY PEIRCE, DAVID PURDY, LOUISE SILVIA (Attachments: # 1 Declaration of David H. Tennant, # 2 Text of Proposed Order)(Kim, Andrew) (Entered: 02/14/2019) |
| 02/14/2019 | 13 | ENTERED IN ERROR..... MOTION to Change Venue *and Memorandum in Support* by TRACY ACORD, DEBORAH CANARY, FRANCIS CANARY, JR., VERONICA CASEY, PATRICIA COLBERT, VIVIAN COURCY, WILL COURCY, ANTONIO DEFARIA, DONNA DEFARIA, KELLY DORSEY, KIM DORSEY, FRANCIS LAGACE, JILL LAGACE, DAVID LEWRY, KATHLEEN LEWRY, MICHELLE LEWRY, RICHARD LEWRY, ROBERT LINCOLN, DAVID LITTLEFIELD, MICHELLE LITTLEFIELD, CHRISTINA MCMAHON, CAROL MURPHY, DOROTHY PEIRCE, DAVID PURDY, LOUISE SILVIA (Attachments: # 1 Exhibit A to Motion to Transfer Venue, # 2 Exhibit B to Motion to Transfer Venue, # 3 Exhibit C to Motion to Transfer Venue, # 4 Text of Proposed Order, # 5 Declaration of David H. Tennant, # 6 Exhibit 3 to Tennant Declaration)(Kim, Andrew) Modified on 2/15/2019 (znmw). (Entered: 02/14/2019) |
| 02/15/2019 | | NOTICE OF CORRECTED DOCKET ENTRY: Docket Entry 13 MOTION to Change Venue *and Memorandum in Support* was entered in error (filed |

|  |  | prematurely as a separate docket entry); counsel shall refile said pleading when motion to intervene is granted. (znmw) (Entered: 02/15/2019) |
|---|---|---|
| 02/19/2019 | 14 | ANSWER to Complaint by U.S. DEPARTMENT OF THE INTERIOR, RYAN ZINKE.(Costello, Sara) (Entered: 02/19/2019) |
| 02/21/2019 |  | MINUTE ORDER granting 10 Motion to Intervene. The Clerk shall add the movants as Intervenor-Defendants in this action. Signed by Judge Rosemary M. Collyer on 2/21/2019. (lcrmc1) (Entered: 02/21/2019) |
| 02/21/2019 |  | MINUTE ORDER granting 12 Motion for Leave to Appear Pro Hac Vice. Mr. Tennant is admitted to represent Intervenor-Defendants. Signed by Judge Rosemary M. Collyer on 2/21/2019. (lcrmc1) (Entered: 02/21/2019) |
| 02/21/2019 | 15 | MOTION to Change Venue *and Memorandum in Support* by TRACY ACORD, DEBORAH CANARY, FRANCIS CANARY, JR., VERONICA CASEY, PATRICIA COLBERT, VIVIAN COURCY, WILL COURCY, ANTONIO DEFARIA, DONNA DEFARIA, KELLY DORSEY, KIM DORSEY, FRANCIS LAGACE, JILL LAGACE, DAVID LEWRY, KATHLEEN LEWRY, MICHELLE LEWRY, RICHARD LEWRY, ROBERT LINCOLN, DAVID LITTLEFIELD, MICHELLE LITTLEFIELD, CHRISTINA MCMAHON, CAROL MURPHY, DOROTHY PEIRCE, DAVID PURDY, LOUISE SILVIA (Attachments: # 1 Exhibit A to Motion to Transfer Venue, # 2 Exhibit B to Motion to Transfer Venue, # 3 Exhibit C to Motion to Transfer Venue, # 4 Text of Proposed Order, # 5 Declaration of David H. Tennant, # 6 Exhibit 3 to Tennant Declaration)(Kim, Andrew) (Entered: 02/21/2019) |
| 03/07/2019 | 16 | NOTICE of Appearance by Samuel F. Daughety on behalf of MASHPEE WAMPANOAG TRIBE (Daughety, Samuel) (Entered: 03/07/2019) |
| 03/07/2019 | 17 | Memorandum in opposition to re 15 MOTION to Change Venue *and Memorandum in Support* filed by MASHPEE WAMPANOAG TRIBE. (Attachments: # 1 Exhibit 1, # 2 Exhibit 2, # 3 Exhibit 3, # 4 Exhibit 4, # 5 Text of Proposed Order)(Daughety, Samuel) (Entered: 03/07/2019) |
| 03/11/2019 | 18 | MOTION for Extension of Time to *Submit Certified List of Administrative Record Contents* by U.S. DEPARTMENT OF THE INTERIOR, RYAN ZINKE (Attachments: # 1 Text of Proposed Order)(Costello, Sara) (Entered: 03/11/2019) |
| 03/12/2019 | 19 | NOTICE of Appearance by Suzanne R. Schaeffer on behalf of MASHPEE WAMPANOAG TRIBE (Schaeffer, Suzanne) (Entered: 03/12/2019) |
| 03/14/2019 |  | MINUTE ORDER granting 18 Motion for Extension of Time. The parties shall file a joint status report including proposed schedule no later than 10 days after any denial of the motion to change venue. The Court advises Federal Defendants to assemble the Administrative Record materials now, to prevent future delay. Signed by Judge Rosemary M. Collyer on 3/14/2019. (lcrmc1) (Entered: 03/14/2019) |
| 03/14/2019 | 20 | REPLY re 15 MOTION to Change Venue *and Memorandum in Support* filed by WILL COURCY, MICHELLE LITTLEFIELD, RICHARD LEWRY, |

| | | |
|---|---|---|
| | | DEBORAH CANARY, KIM DORSEY, DONNA DEFARIA, FRANCIS LAGACE, MICHELLE LEWRY, DAVID LEWRY, VERONICA CASEY, ROBERT LINCOLN, FRANCIS CANARY, JR., ANTONIO DEFARIA, DAVID LITTLEFIELD, DOROTHY PEIRCE, KELLY DORSEY, DAVID PURDY, JILL LAGACE, TRACY ACORD, PATRICIA COLBERT, CHRISTINA MCMAHON, LOUISE SILVIA, VIVIAN COURCY, CAROL MURPHY, KATHLEEN LEWRY by TRACY ACORD, DEBORAH CANARY, FRANCIS CANARY, JR., VERONICA CASEY, PATRICIA COLBERT, VIVIAN COURCY, WILL COURCY, ANTONIO DEFARIA, DONNA DEFARIA, KELLY DORSEY, KIM DORSEY, FRANCIS LAGACE, JILL LAGACE, DAVID LEWRY, KATHLEEN LEWRY, MICHELLE LEWRY, RICHARD LEWRY, ROBERT LINCOLN, DAVID LITTLEFIELD, MICHELLE LITTLEFIELD, CHRISTINA MCMAHON, CAROL MURPHY, DOROTHY PEIRCE, DAVID PURDY, LOUISE SILVIA. (Kim, Andrew); Modified event and text on 3/15/2019 (tth). (Entered: 03/14/2019) |
| 06/21/2019 | 21 | MEMORANDUM OPINION. Signed by Judge Rosemary M. Collyer on 06/21/2019. (lcrmc1) (Entered: 06/21/2019) |
| 06/21/2019 | 22 | ORDER denying 15 Intervenor-Defendants' Motion to Transfer Venue. See Order for details. Signed by Judge Rosemary M. Collyer on 06/21/2019. (lcrmc1) (Entered: 06/21/2019) |
| 07/01/2019 | 23 | Joint MOTION for Scheduling Order by U.S. DEPARTMENT OF THE INTERIOR, RYAN ZINKE (Attachments: # 1 Text of Proposed Order) (Costello, Sara) (Entered: 07/01/2019) |
| 07/01/2019 | 24 | NOTICE of Change of Address by Sara E. Costello (Costello, Sara) (Entered: 07/01/2019) |
| 07/01/2019 | 25 | STATUS REPORT by U.S. DEPARTMENT OF THE INTERIOR. (See Docket Entry 23 to view document). (znmw) (Entered: 07/02/2019) |
| 07/03/2019 | 26 | ORDER granting 23 Joint Motion for Scheduling Order. See Order for details. Federal Defendants shall file a certified list of the contents of the Administrative Record by July 19, 2019. The Tribe and Intervenor/Defendants shall serve Federal Defendants with any objections, comments, or questions regarding the Administrative Record by July 26, 2019. Federal Defendants shall respond to responses regarding the Administrative Record by August 9, 2019. Further deadlines will depend on whether the parties file any motions regarding the Administrative Record. Signed by Judge Rosemary M. Collyer on 07/03/2019. (lcrmc1) (Entered: 07/03/2019) |
| 07/03/2019 | | Set/Reset Deadlines: Federal Defendants To File A Certified List Of The Contents Of The Administrative Record due by 7/19/2019. Federal Defendants To Respond To Responses Regarding The Administrative Record due by 8/9/2019. (mac) (Entered: 07/03/2019) |
| 07/19/2019 | 27 | NOTICE *of Filing of the Index to the Administrative Record* by U.S. DEPARTMENT OF THE INTERIOR, RYAN ZINKE (Attachments: # 1 |

| | | |
|---|---|---|
| | | Index to the administrative record, # 2 Certification of the administrative record)(Costello, Sara) (Entered: 07/19/2019) |
| 08/09/2019 | 28 | NOTICE *of filing of the index to the supplement to the administrative record and corrected administrative record index* by U.S. DEPARTMENT OF THE INTERIOR, RYAN ZINKE (Attachments: # 1 administrative record supplement index, # 2 corrected administrative record index, # 3 certification) (Costello, Sara) (Entered: 08/09/2019) |
| 08/16/2019 | 29 | MOTION for Summary Judgment by MASHPEE WAMPANOAG TRIBE (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order) (Azorsky, Tami) (Entered: 08/16/2019) |
| 08/19/2019 | 30 | ERRATA by MASHPEE WAMPANOAG TRIBE 29 MOTION for Summary Judgment filed by MASHPEE WAMPANOAG TRIBE. (Attachments: # 1 Memorandum in Support of Plaintiff's Motion for Summary Judgment (corrected version))(Azorsky, Tami) (Entered: 08/19/2019) |
| 09/13/2019 | 31 | Cross MOTION for Summary Judgment by U.S. DEPARTMENT OF THE INTERIOR, RYAN ZINKE (Attachments: # 1 Memorandum in Support, # 2 Text of Proposed Order)(Costello, Sara) (Entered: 09/13/2019) |
| 09/13/2019 | 32 | Memorandum in opposition to re 29 MOTION for Summary Judgment filed by U.S. DEPARTMENT OF THE INTERIOR, RYAN ZINKE. (Costello, Sara) (Entered: 09/13/2019) |
| 09/13/2019 | 33 | Cross MOTION for Summary Judgment by TRACY ACORD, DEBORAH CANARY, FRANCIS CANARY, JR., VERONICA CASEY, PATRICIA COLBERT, VIVIAN COURCY, WILL COURCY, ANTONIO DEFARIA, DONNA DEFARIA, KELLY DORSEY, KIM DORSEY, FRANCIS LAGACE, JILL LAGACE, DAVID LEWRY, KATHLEEN LEWRY, MICHELLE LEWRY, RICHARD LEWRY, ROBERT LINCOLN, DAVID LITTLEFIELD, MICHELLE LITTLEFIELD, CHRISTINA MCMAHON, CAROL MURPHY, DOROTHY PEIRCE, DAVID PURDY, LOUISE SILVIA (Attachments: # 1 Memorandum in Support, # 2 Addendum, # 3 Text of Proposed Order)(Kim, Andrew) (Entered: 09/13/2019) |
| 09/13/2019 | 34 | Memorandum in opposition to re 29 MOTION for Summary Judgment filed by TRACY ACORD, DEBORAH CANARY, FRANCIS CANARY, JR., VERONICA CASEY, PATRICIA COLBERT, VIVIAN COURCY, WILL COURCY, ANTONIO DEFARIA, DONNA DEFARIA, KELLY DORSEY, KIM DORSEY, FRANCIS LAGACE, JILL LAGACE, DAVID LEWRY, KATHLEEN LEWRY, MICHELLE LEWRY, RICHARD LEWRY, ROBERT LINCOLN, DAVID LITTLEFIELD, MICHELLE LITTLEFIELD, CHRISTINA MCMAHON, CAROL MURPHY, DOROTHY PEIRCE, DAVID PURDY, LOUISE SILVIA. (See Docket Entry 33 to view document). (znmw) (Entered: 09/18/2019) |
| 09/30/2019 | 35 | REPLY to opposition to motion re 29 MOTION for Summary Judgment filed by MASHPEE WAMPANOAG TRIBE. (Attachments: # 1 Exhibit A - |

| | | |
|---|---|---|
| | | Corrections to Intervenors' Addendum)(Azorsky, Tami) (Entered: 09/30/2019) |
| 09/30/2019 | 36 | Memorandum in opposition to re 33 Cross MOTION for Summary Judgment , 31 Cross MOTION for Summary Judgment filed by MASHPEE WAMPANOAG TRIBE. (Attachments: # 1 Exhibit A - Corrections to Intervenors' Addendum)(Azorsky, Tami) (Entered: 09/30/2019) |
| 10/15/2019 | 37 | REPLY to opposition to motion re 31 Cross MOTION for Summary Judgment filed by U.S. DEPARTMENT OF THE INTERIOR, RYAN ZINKE. (Costello, Sara) (Entered: 10/15/2019) |
| 10/15/2019 | 38 | REPLY to opposition to motion re 33 Cross MOTION for Summary Judgment filed by TRACY ACORD, DEBORAH CANARY, FRANCIS CANARY, JR., VERONICA CASEY, PATRICIA COLBERT, VIVIAN COURCY, WILL COURCY, ANTONIO DEFARIA, DONNA DEFARIA, KELLY DORSEY, KIM DORSEY, FRANCIS LAGACE, JILL LAGACE, DAVID LEWRY, KATHLEEN LEWRY, MICHELLE LEWRY, RICHARD LEWRY, ROBERT LINCOLN, DAVID LITTLEFIELD, MICHELLE LITTLEFIELD, CHRISTINA MCMAHON, CAROL MURPHY, DOROTHY PEIRCE, DAVID PURDY, LOUISE SILVIA. (Kim, Andrew) (Entered: 10/15/2019) |
| 10/29/2019 | 39 | JOINT APPENDIX by MASHPEE WAMPANOAG TRIBE. (Attachments: # 1 Appendix (Tabs 1-12), # 2 Appendix (Tabs 13-22), # 3 Appendix (Tabs 23-43), # 4 Appendix (Tab 44), # 5 Appendix (Tabs 45-53), # 6 Appendix (Tab 54, pt.1), # 7 Appendix (Tab 54, pt. 2), # 8 Appendix (Tabs 55-56))(Azorsky, Tami) (Entered: 10/29/2019) |
| 02/13/2020 | 40 | Case directly reassigned to Judge Paul L. Friedman by consent. Judge Rosemary M. Collyer is no longer assigned to the case. (ztnr) (Entered: 02/13/2020) |
| 03/30/2020 | 41 | NOTICE of Appearance by Kenneth John Pfaehler on behalf of MASHPEE WAMPANOAG TRIBE (Pfaehler, Kenneth) (Entered: 03/30/2020) |
| 03/30/2020 | 42 | Emergency MOTION for Temporary Restraining Order , MOTION for Preliminary Injunction by MASHPEE WAMPANOAG TRIBE (Attachments: # 1 Memorandum in Support, # 2 Exhibit 1 to Memorandum, # 3 Declaration of The Honorable Cedric Cromwell, # 4 Exhibit 1 to Cromwell Declaration, # 5 Certification of Kenneth Pfaehler pursuant to LCvR 65.1, # 6 Text of Proposed Order (TRO))(Pfaehler, Kenneth) (Entered: 03/30/2020) |
| 03/31/2020 | | MINUTE ORDER. A call with all counsel concerned with 42 plaintiffs' emergency motion for a temporary restraining order and motion for a preliminary injunction shall be held on March 31, 2020 at 3:00 p.m. Signed by Judge Paul L. Friedman on March 31, 2020. (lcdr) (Entered: 03/31/2020) |
| 03/31/2020 | | MINUTE ORDER. Based on the representations made on the conference call, the parties have agreed to jointly file a proposed briefing schedule on or before April 3, 2020 that will include the specifics of their commitments and agreements related to the plaintiff's 42 emergency motion for a temporary |

| | | |
|---|---|---|
| | | restraining order and motion for a preliminary injunction. Signed by Judge Paul L. Friedman on March 31, 2020. (lcdr) (Entered: 03/31/2020) |
| 03/31/2020 | | Set/Reset Deadlines: Proposed Briefing Schedule due by 4/3/2020. (tj) (Entered: 03/31/2020) |
| 04/03/2020 | 43 | Joint MOTION for Briefing Schedule by MASHPEE WAMPANOAG TRIBE (Attachments: # 1 Text of Proposed Order)(Pfaehler, Kenneth) (Entered: 04/03/2020) |
| 04/06/2020 | 44 | ORDER holding that the Tribe's emergency motion for a temporary restraining order 42 shall be HELD IN ABEYANCE. This Order sets the briefing schedule on the Tribe's motion for a preliminary injunction 42 . Oral argument on the motion for a preliminary injunction is set for May 7, 2020 at 10:00 a.m. See Order for further details. Signed by Judge Paul L. Friedman on April 6, 2020. (lcdr) (Entered: 04/06/2020) |
| 04/06/2020 | | Set/Reset Deadlines:( Responses due by 4/21/2020, Replies due by 5/5/2020.), Set/Reset Hearings:( Motion Hearing set for 5/7/2020 at 10:00 AM before Judge Paul L. Friedman.) (tj) (Entered: 04/06/2020) |
| 04/08/2020 | 45 | ORDER directing the parties to file, either jointly or separately, a status report on or before April 10, 2020 indicating their position on whether the Court should consolidate its consideration of the plaintiff's motion for a preliminary injunction with the cross-motions for summary judgment. See Order for details. Signed by Judge Paul L. Friedman on April 8, 2020. (lcdr) (Entered: 04/08/2020) |
| 04/08/2020 | | Set/Reset Deadlines: Status Report due by 4/10/2020 (tj) (Entered: 04/08/2020) |
| 04/10/2020 | 46 | STATUS REPORT by TRACY ACORD, DEBORAH CANARY, FRANCIS CANARY, JR., VERONICA CASEY, PATRICIA COLBERT, VIVIAN COURCY, WILL COURCY, ANTONIO DEFARIA, DONNA DEFARIA, KELLY DORSEY, KIM DORSEY, FRANCIS LAGACE, JILL LAGACE, DAVID LEWRY, KATHLEEN LEWRY, MICHELLE LEWRY, RICHARD LEWRY, ROBERT LINCOLN, DAVID LITTLEFIELD, MICHELLE LITTLEFIELD, CHRISTINA MCMAHON, CAROL MURPHY, DOROTHY PEIRCE, DAVID PURDY, LOUISE SILVIA. (Kim, Andrew) (Entered: 04/10/2020) |
| 04/10/2020 | 47 | STATUS REPORT by U.S. DEPARTMENT OF THE INTERIOR, RYAN ZINKE. (Costello, Sara) (Entered: 04/10/2020) |
| 04/10/2020 | 48 | STATUS REPORT by MASHPEE WAMPANOAG TRIBE. (Azorsky, Tami) (Entered: 04/10/2020) |
| 04/10/2020 | 49 | ORDER CONSOLIDATING the May 7, 2020 hearing on the plaintiff's motion for a preliminary injunction with the parties' cross-motions for summary judgment and AMENDING the April 6, 2020 Order. The parties shall file a jointly proposed oral argument schedule on or before April 30, 2020. See Order for details. Signed by Judge Paul L. Friedman on April 10, 2020. (lcdr) (Entered: 04/10/2020) |
| | | |

| 04/10/2020 | | Set/Reset Deadlines: Proposed Oral Argument Schedule due by 4/30/2020. (zcal) (Entered: 04/10/2020) |
|---|---|---|
| 04/21/2020 | 50 | Memorandum in opposition to re 42 Emergency MOTION for Temporary Restraining Order MOTION for Preliminary Injunction filed by U.S. DEPARTMENT OF THE INTERIOR, RYAN ZINKE. (Attachments: # 1 Exhibit)(Costello, Sara) (Entered: 04/21/2020) |
| 04/21/2020 | 51 | Memorandum in opposition to re 42 Emergency MOTION for Temporary Restraining Order MOTION for Preliminary Injunction filed by TRACY ACORD, DEBORAH CANARY, FRANCIS CANARY, JR., VERONICA CASEY, PATRICIA COLBERT, VIVIAN COURCY, WILL COURCY, ANTONIO DEFARIA, DONNA DEFARIA, KELLY DORSEY, KIM DORSEY, FRANCIS LAGACE, JILL LAGACE, DAVID LEWRY, KATHLEEN LEWRY, MICHELLE LEWRY, RICHARD LEWRY, ROBERT LINCOLN, DAVID LITTLEFIELD, MICHELLE LITTLEFIELD, CHRISTINA MCMAHON, CAROL MURPHY, DOROTHY PEIRCE, DAVID PURDY, LOUISE SILVIA. (Attachments: # 1 Declaration of David H. Tennant, # 2 Exhibit A-1, # 3 Exhibit A-2, # 4 Exhibit A-3, # 5 Exhibit A-4, # 6 Exhibit B, # 7 Exhibit C, # 8 Exhibit D, # 9 Exhibit E, # 10 Exhibit F, # 11 Exhibit G, # 12 Exhibit H, # 13 Exhibit I)(Kim, Andrew) (Entered: 04/21/2020) |
| 04/29/2020 | | MINUTE ORDER. The motions hearing presently set for May 7, 2020 at 10:00 a.m. will be held by Video/Teleconference. Counsel for the parties will be notified of the dial in procedures and numbers they will need to access the hearing by video in a separate email the week of the hearing. Public access to this hearing will be made available through the Court's public teleconference line, as indicated on the Court's website. Signed by Judge Paul L. Friedman on April 29, 2020. (lcdr) (Entered: 04/29/2020) |
| 04/29/2020 | | Set/Reset Hearings: Motion Hearing set for 5/7/2020 at 10:00 AM in Telephonic/VTC before Judge Paul L. Friedman. (tj) (Entered: 04/29/2020) |
| 04/30/2020 | 52 | NOTICE / *Joint Proposed Oral Argument Schedule* by MASHPEE WAMPANOAG TRIBE re 49 Order, (Azorsky, Tami) (Entered: 04/30/2020) |
| 05/01/2020 | 53 | MEMORANDUM OPINION AND ORDER directing the parties to file supplemental briefing on the government's withdrawal of the M-Opinion on or before Monday, May 4, 2020. Signed by Judge Paul L. Friedman on May 1, 2020. (lcdr) (Entered: 05/01/2020) |
| 05/01/2020 | | Set/Reset Deadlines: Supplemental Memorandum due by 5/4/2020. (tj) (Entered: 05/01/2020) |
| 05/04/2020 | 54 | RESPONSE TO ORDER OF THE COURT re 53 Memorandum & Opinion filed by MASHPEE WAMPANOAG TRIBE. (Azorsky, Tami) (Entered: 05/04/2020) |
| 05/04/2020 | 55 | RESPONSE TO ORDER OF THE COURT re 53 Memorandum & Opinion filed by TRACY ACORD, DEBORAH CANARY, FRANCIS CANARY, JR., VERONICA CASEY, PATRICIA COLBERT, VIVIAN COURCY, WILL COURCY, ANTONIO DEFARIA, DONNA DEFARIA, KELLY |

| | | |
|---|---|---|
| | | DORSEY, KIM DORSEY, FRANCIS LAGACE, JILL LAGACE, DAVID LEWRY, KATHLEEN LEWRY, MICHELLE LEWRY, RICHARD LEWRY, ROBERT LINCOLN, DAVID LITTLEFIELD, MICHELLE LITTLEFIELD, CHRISTINA MCMAHON, CAROL MURPHY, DOROTHY PEIRCE, DAVID PURDY, LOUISE SILVIA. (Kim, Andrew) (Entered: 05/04/2020) |
| 05/04/2020 | 56 | RESPONSE TO ORDER OF THE COURT re 53 Memorandum & Opinion filed by U.S. DEPARTMENT OF THE INTERIOR, RYAN ZINKE. (Attachments: # 1 Exhibit Sol. Op. M-37055, # 2 Exhibit Solicitors Guidance, # 3 Exhibit Deputy Solicitors Mem., # 4 Exhibit turtletalk article, # 5 Exhibit indianz article, # 6 Exhibit Law 360 article)(Costello, Sara) (Entered: 05/04/2020) |
| 05/05/2020 | | MINUTE ORDER. A call with all counsel shall be held on May 5, 2020 at 12:00 p.m. Dial-in information has been emailed separately. Signed by Judge Paul L. Friedman on May 5, 2020. (lcdr) (Entered: 05/05/2020) |
| 05/05/2020 | | MINUTE ORDER. Upon consideration of the supplemental briefs filed on May 4, 2020, the plaintiff's reply brief currently due on May 5, 2020, and the motions hearing currently set for May 7, 2020 at 10:00 a.m. shall be CONTINUED to future dates that will be determined shortly. Signed by Judge Paul L. Friedman on May 5, 2020. (lcdr) (Entered: 05/05/2020) |
| 05/05/2020 | | MINUTE ORDER. The deadline for the plaintiff's reply brief in support of its motion for a preliminary injunction previously due on May 5, 2020 is EXTENDED. The plaintiff shall file its reply brief on or before May 11, 2020. The plaintiff shall file its supplemental brief elaborating on its response to the Court's May 1, 2020 Memorandum Opinion & Order 53 on or before May 11, 2020. Any response the federal defendants and the defendant-intervenors wish to make to the plaintiff's briefs due on May 11, 2020 shall be filed on or before May 18, 2020. Signed by Judge Paul L. Friedman on May 5, 2020. (lcdr) (Entered: 05/05/2020) |
| 05/05/2020 | | MINUTE ORDER. The motions hearing previously set for May 7, 2020 at 10:00 a.m. is VACATED. The motions hearing is now set for May 20, 2020 at 10:00 a.m.. Signed by Judge Paul L. Friedman on May 5, 2020. (lcdr) (Entered: 05/05/2020) |
| 05/05/2020 | | MINUTE ORDER. The motions hearing set for May 20, 2020 at 10:00 a.m. will be held by Video/Teleconference. Counsel for the parties will be notified of the dial in procedures and numbers they will need to access the hearing by video in a separate email the week of the hearing. Public access to this hearing will be made available through the Court's public teleconference line, as indicated on the Court's website. Signed by Judge Paul L. Friedman on May 5, 2020. (lcdr) (Entered: 05/05/2020) |
| 05/05/2020 | | Set/Reset Deadlines: Responses due by 5/18/2020 Replies due by 5/11/2020. Supplemental Memorandum due by 5/11/2020. (tj) (Entered: 05/05/2020) |
| 05/11/2020 | 57 | REPLY to opposition to motion re 42 Emergency MOTION for Temporary Restraining Order MOTION for Preliminary Injunction filed by MASHPEE |

| | | |
|---|---|---|
| | | WAMPANOAG TRIBE. (Attachments: # 1 Supplemental Declaration of The Honorable Cedric Cromwell, # 2 Exhibit 1 to Supplemental Cromwell Declaration, # 3 Declaration of Michelle Tobey)(Azorsky, Tami) (Entered: 05/11/2020) |
| 05/11/2020 | 58 | MOTION for Leave to File *Amicus Curiae Brief* by UNITED SOUTH AND EASTERN TRIBES SOVEREIGNTY PROTECTION FUND (Attachments: # 1 Proposed Brief, # 2 Text of Proposed Order)(Klass, Kaitlyn) (Entered: 05/11/2020) |
| 05/11/2020 | 59 | NOTICE of Appearance by Kaitlyn Elizabeth Klass on behalf of UNITED SOUTH AND EASTERN TRIBES SOVEREIGNTY PROTECTION FUND (Klass, Kaitlyn) (Entered: 05/11/2020) |
| 05/11/2020 | 60 | SUPPLEMENTAL MEMORANDUM to re 56 Response , 53 Memorandum & Opinion filed by MASHPEE WAMPANOAG TRIBE. (Azorsky, Tami) Modified linkage and text on 5/12/2020 (ztd). (Entered: 05/11/2020) |
| 05/18/2020 | 61 | RESPONSE re 60 Supplemental Memorandum filed by TRACY ACORD, DEBORAH CANARY, FRANCIS CANARY, JR., VERONICA CASEY, PATRICIA COLBERT, VIVIAN COURCY, WILL COURCY, ANTONIO DEFARIA, DONNA DEFARIA, KELLY DORSEY, KIM DORSEY, FRANCIS LAGACE, JILL LAGACE, DAVID LEWRY, KATHLEEN LEWRY, MICHELLE LEWRY, RICHARD LEWRY, ROBERT LINCOLN, DAVID LITTLEFIELD, MICHELLE LITTLEFIELD, CHRISTINA MCMAHON, CAROL MURPHY, DOROTHY PEIRCE, DAVID PURDY, LOUISE SILVIA. (Kim, Andrew) (Entered: 05/18/2020) |
| 05/18/2020 | 62 | RESPONSE re 60 Supplemental Memorandum filed by U.S. DEPARTMENT OF THE INTERIOR, RYAN ZINKE. (Costello, Sara) (Entered: 05/18/2020) |
| 05/18/2020 | 63 | RESPONSE re 58 MOTION for Leave to File *Amicus Curiae Brief* filed by U.S. DEPARTMENT OF THE INTERIOR, RYAN ZINKE. (Costello, Sara) (Entered: 05/18/2020) |
| 05/19/2020 | | MINUTE ORDER. The joint proposed oral argument schedule 52 is ADOPTED with the following amendment: there will be two fifteen-minute breaks. The first recess shall be after the Tribe's opening argument. The second recess shall be after the Defendant and Defendant-Intervenors' opening arguments, before the rebuttal arguments. Signed by Judge Paul L. Friedman on May 19, 2020. (lcdr) (Entered: 05/19/2020) |
| 05/19/2020 | 64 | NOTICE of Appearance by Keith M. Harper on behalf of Amici Curaie Members of Congress (Harper, Keith) (Entered: 05/19/2020) |
| 05/19/2020 | 65 | MOTION for Leave to File *Amici Curiae Brief in Support of Plaintiff* by Amici Curaie Members of Congress (Attachments: # 1 Proposed Brief, # 2 Text of Proposed Order)(Harper, Keith) (Entered: 05/19/2020) |
| 05/20/2020 | | Minute Entry for proceedings held before Judge Paul L. Friedman: Motion Hearing held on 5/20/2020 re 33 Cross MOTION, 29 MOTION for Summary Judgment, 31 Cross MOTION for Summary Judgment. Oral argument heard |

| | | and motions taken under advisement. (Court Reporter: Sara Wick) (tj) (Entered: 05/20/2020) |
|---|---|---|
| 05/21/2020 | 66 | NOTICE of Appearance by Adam Howard Charnes on behalf of MEMBERS OF CONGRESS (Charnes, Adam) (Entered: 05/21/2020) |
| 05/22/2020 | 67 | MEMORANDUM OPINION AND ORDER granting 58 motion for leave to file amicus curiae brief. Signed by Judge Paul L. Friedman on May 22, 2020. (lcdr) (Entered: 05/22/2020) |
| 05/26/2020 | 68 | AMICUS BRIEF by UNITED SOUTH AND EASTERN TRIBES SOVEREIGNTY PROTECTION FUND. (ztd) (Entered: 05/26/2020) |
| 05/28/2020 | 69 | MEMORANDUM OPINION AND ORDER granting 65 motion for leave to file amicus curiae brief. Signed by Judge Paul L. Friedman on May 28, 2020. (lcdr) (Entered: 05/28/2020) |
| 05/28/2020 | 70 | AMICUS BRIEF by MEMBERS OF CONGRESS. (ztd) (Entered: 05/29/2020) |
| 06/02/2020 | 71 | TRANSCRIPT OF MOTION HEARING before Judge Paul L. Friedman, held on 05/20/2020. Page Numbers: 1-73. Date of Issuance: 06/02/2020. Court Reporter: Sara Wick, telephone number 202-354-3284. Transcripts may be ordered by submitting the Transcript Order Form<br><br>For the first 90 days after this filing date, the transcript may be viewed at the courthouse at a public terminal or purchased from the court reporter referenced above. Aft er 90 days, the transcript may be accessed via PACER. Other transcript formats, (multi-page, condensed, CD or ASCII) may be purchased from the court reporter.<br><br>**NOTICE RE REDACTION OF TRANSCRIPTS:** The parties have twenty-one days to file with the court and the court reporter any request to redact personal identifiers from this transcript. If no such requests are filed, the transcript will be made available to the public via PACER without redaction after 90 days. The policy, which includes the five personal identifiers specifically covered, is located on our website at www.dcd.uscourts.gov.<br><br>Redaction Request due 6/23/2020. Redacted Transcript Deadline set for 7/3/2020. Release of Transcript Restriction set for 8/31/2020.(Wick, Sara) (Entered: 06/02/2020) |
| 06/02/2020 | 72 | MOTION for Leave to File *Response to USET SPF's Amicus Brief* by U.S. DEPARTMENT OF THE INTERIOR, RYAN ZINKE (Attachments: # 1 Exhibit Resp. to USET SPF's Amicus Brief, # 2 Text of Proposed Order) (Costello, Sara) (Entered: 06/02/2020) |
| 06/02/2020 | 73 | ORDER granting 72 Motion for Leave to File Response to USET SPF's Amicus Brief. The Clerk of the Court shall file the federal defendants' response [72-1] on the docket. Signed by Judge Paul L. Friedman on June 2, 2020. (lcdr) (Entered: 06/02/2020) |
| | | |

| 06/02/2020 | 74 | RESPONSE re 68 Amicus Brief filed by U.S. DEPARTMENT OF THE INTERIOR, RYAN ZINKE. (ztd) (Entered: 06/05/2020) |
|---|---|---|
| 06/05/2020 | 75 | OPINION granting plaintiffs motion for summary judgment 29 , denying federal defendants cross-motion for summary judgment 31 and denying the defendant-intervenors cross-motion for summary judgment. The plaintiffs emergency motion for a temporary restraining order and preliminary injunction 42 is denied as moot. This matter is REMANDED to the agency for further proceedings consistent with this Opinion. Signed by Judge Paul L. Friedman on June 5, 2020. (lcdr) (Entered: 06/05/2020) |
| 06/05/2020 | 76 | ORDER granting plaintiffs motion for summary judgment 29 , denying federal defendants cross-motion for summary judgment 31 and denying the defendant-intervenors cross-motion for summary judgment. The plaintiffs emergency motion for a temporary restraining order and preliminary injunction 42 is denied as moot. This matter is REMANDED to the agency for further proceedings consistent with the accompanying Opinion. Signed by Judge Paul L. Friedman on June 5, 2020. (lcdr) (Entered: 06/05/2020) |
| 06/05/2020 | 77 | MEMORANDUM OPINION AND ORDER entering a temporary stay to maintain the status quo during remand to the agency. Signed by Judge Paul L. Friedman on June 5, 2020. (lcdr) (Entered: 06/05/2020) |
| 07/31/2020 | 78 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 76 Memorandum & Opinion,, Order, 77 Memorandum & Opinion, 75 Memorandum & Opinion, by RYAN ZINKE, U.S. DEPARTMENT OF THE INTERIOR. Fee Status: No Fee Paid. Parties have been notified. (Costello, Sara) (Entered: 07/31/2020) |
| 07/31/2020 | 79 | NOTICE OF APPEAL TO DC CIRCUIT COURT as to 75 Memorandum & Opinion, 76 Memorandum & Opinion,, Order, 77 Memorandum & Opinion by TRACY ACORD, DEBORAH CANARY, FRANCIS CANARY, JR., VERONICA CASEY, PATRICIA COLBERT, VIVIAN COURCY, WILL COURCY, ANTONIO DEFARIA, DONNA DEFARIA, KELLY DORSEY, KIM DORSEY, FRANCIS LAGACE, JILL LAGACE, DAVID LEWRY, KATHLEEN LEWRY, MICHELLE LEWRY, RICHARD LEWRY, ROBERT LINCOLN, DAVID LITTLEFIELD, MICHELLE LITTLEFIELD, CHRISTINA MCMAHON, CAROL MURPHY, DOROTHY PEIRCE, DAVID PURDY, LOUISE SILVIA. Filing fee $ 505, receipt number ADCDC-7411774. Fee Status: Fee Paid. Parties have been notified. (Kim, Andrew) (Entered: 07/31/2020) |
| 08/03/2020 | 80 | Transmission of the Notice of Appeal, Order Appealed (Memorandum Opinion), and Docket Sheet to US Court of Appeals. The Court of Appeals docketing fee was not paid because the appeal was filed by the government re 78 Notice of Appeal to DC Circuit Court,. (ztd) (Entered: 08/03/2020) |

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

|  |  |  |
|---|---|---|
| MASHPEE WAMPANOAG TRIBE, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | |
| | ) | |
| DAVID BERNHARDT, in his official capacity as | ) | |
| Secretary of the Interior, | ) | |
| | ) | |
| and | ) | Civil Action No. 1:18-cv-02242-PLF |
| | ) | |
| U.S. DEPARTMENT OF THE INTERIOR | ) | |
| | ) | |
| Defendants | ) | |
| and | ) | |
| | ) | |
| DAVID LITTLEFIELD *et al.*, | ) | |
| | ) | |
| Intervenor-Defendants. | ) | |
| | ) | |

## INTERVENOR-DEFENDANTS' NOTICE OF APPEAL

Pursuant to Federal Rule of Appellate Procedure 3, Intervenor-Defendants David Littlefield,

Michelle Littlefield, Tracy Acord, Deborah Canary, Veronica Casey, Patricia Colbert, Vivian Courcy,

Donna DeFaria, Kim Dorsey, Francis Lagace, Will Courcy, Antonio DeFaria, Kelly Dorsey, Jill

Lagace, David Lewry, Kathleen Lewry, Robert Lincoln, Christina McMahon, Carol Murphy, Dorothy

Peirce, David Purdy, Louise Silva, Francis Canary, Jr., Michelle Lewry, and Richard Lewry hereby

appeal to the United States Court of Appeals for the District of Columbia Circuit from the District

Court's Opinion entered on June 5, 2020 (ECF No. 75), Order entered on June 5, 2020 (ECF No.

76), Memorandum Opinion and Order entered on June 5, 2020 (ECF No. 77), and all other opinions,

rulings, and orders in this case that are adverse to Intervenor-Defendants.

Dated: July 31, 2020

Respectfully submitted,

/s/ Andrew Kim
Andrew Kim (D.C. Bar. No. 1029348)
GOODWIN PROCTER LLP
1900 N Street, N.W.
Washington, DC  20036
Tel.:  202.346.4000
Fax.:  202.346.4444
*AndrewKim@goodwinlaw.com*

David H. Tennant (admitted *pro hac vice*)
Law Office of David Tennant PLLC
3349 Monroe Avenue, Suite 345
Rochester, NY 14618
Tel.:  585.708.9338
*david.tennant@appellatezealot.com*

*Attorneys for Intervenor-Defendants*

## CERTIFICATE OF SERVICE

I hereby certify that on July 31, 2020, a copy of the foregoing was filed through the Court's

CM/ECF management system and electronically served on counsel of record.

/s/ Andrew Kim
Andrew Kim

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                                    )
MASHPEE WAMPANOAG TRIBE,                             )
                                                    )
             Plaintiff,                             )
                                                    )
      v.                                            )        Civil Action No. 18-2242 (PLF)
                                                    )
DAVID BERNHARDT, in his official                    )
capacity as Secretary of the Interior, et al.,      )
                                                    )
             Defendants,                            )
                                                    )
      and                                           )
                                                    )
DAVID LITTLEFIELD, et al.,                          )
                                                    )
             Defendant-Intervenors.                 )
_____           )


ORDER

For the reasons set forth in the Opinion issued this same day, it is hereby

ORDERED that plaintiff Mashpee Wampanoag Tribe's motion for summary

judgment [Dkt. No. 29] is GRANTED; it is

FURTHER ORDERED that the federal defendants' motion for summary

judgment [Dkt. No. 31] is DENIED; it is

FURTHER ORDERED that the defendant-intervenors' motion for summary

judgment [Dkt. No. 33] is DENIED; it is

FURTHER ORDERED that plaintiff's emergency motion for a temporary

restraining order and motion for a preliminary injunction [Dkt. No. 42] is DENIED AS MOOT;

it is

FURTHER ORDERED that the Secretary of the Interior's September 7, 2018 Record of Decision is DECLARED arbitrary, capricious, an abuse of discretion, and contrary to law; and it is

FURTHER ORDERED that this matter is REMANDED to the Department of the Interior to issue a decision that is consistent with the Court's June 5, 2020 Opinion and that conforms with the 2014 M-Opinion's standard, the evidence permitted therein, and the Department's prior decisions applying the M-Opinion's two-part test.

SO ORDERED.

/s/
_____
PAUL L. FRIEDMAN
United States District Judge

DATE:  June 5, 2020

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____ )
)
MASHPEE WAMPANOAG TRIBE,                 )
)
        Plaintiff,                       )
)
        v.                               )        Civil Action No. 18-2242 (PLF)
)
DAVID BERNHARDT, in his official         )
capacity as Secretary of the Interior, et al.,  )
)
        Defendants,                      )
)
        and                             )
)
DAVID LITTLEFIELD, et al.,               )
)
        Defendant-Intervenors.           )
_____ )


<u>OPINION</u>

        This case involves a challenge to a decision of the Secretary of the Interior

determining that the Mashpee Wampanoag Tribe (the "Tribe" or "Mashpee") did not meet either

the first or second definition of "Indian" in the Indian Reorganization Act ("IRA") because the

Tribe was not "under federal jurisdiction" as of 1934.  The Secretary had reached the opposite

conclusion in 2015, but that decision was challenged and a federal district court in Massachusetts

ultimately remanded for the Secretary to reassess the Tribe's application under the court's

reading of the statute.  <u>Littlefield v. U.S. Dep't of Interior</u>, 199 F. Supp. 3d 391 (D. Mass.

2016), <u>aff'd sub nom.</u> <u>Littlefield v. Mashpee Wampanoag Indian Tribe</u>, 951 F.3d 30 (1st Cir.

2020).  On remand, the Secretary issued the decision that the Mashpee Tribe challenges here.

This matter is now before the Court on cross-motions for summary judgment filed by the Tribe, by the federal defendants, and by defendant-intervenors – the plaintiffs in the Littlefield litigation.  Also pending before the Court is the Tribe's emergency motion for a temporary restraining order and motion for a preliminary injunction, which it filed shortly after the Secretary directed the Bureau of Indian Affairs (the "BIA") to take the land out of trust.  The parties have agreed that the Court should consolidate its consideration of the motion for a preliminary injunction and the cross-motions for summary judgment.  The Court heard oral argument by videoconference on these motions on May 20, 2020.  Upon careful consideration of the parties' filings, the relevant legal authorities, the arguments of counsel at the May 20, 2020 hearing, and the entire record in this case, the Court will grant the plaintiff's motion for summary judgment, deny the defendants' and defendant-intervenors' motions for summary judgment, and remand to the agency for further proceedings.  The Court will deny as moot the plaintiff's emergency motion for a temporary restraining order and motion for a preliminary injunction, now that the Court is issuing this opinion on the merits, granting summary judgment for the plaintiff.[1]

---

[1]     The Court has reviewed the following documents and accompanying exhibits in connection with the pending motion:  Complaint ("Compl.") [Dkt. No. 1]; Plaintiff's Motion for Summary Judgment ("Mashpee MSJ") [Dkt. No. 29]; Federal Defendants' Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment ("Federal Defendants Cross-MSJ & Opp.") [Dkt. No. 32]; Defendant-Intervenors' Cross-Motion for Summary Judgment and Opposition to Plaintiff's Motion for Summary Judgment ("Defendant-Intervenors Cross-MSJ & Opp.") [Dkt. No. 33]; Plaintiff's Reply in Support of its Motion for Summary Judgment and Opposition to the Federal Defendants and Defendant-Intervenors' Motions for Summary Judgments and Opposition ("Mashpee Reply & Opp.") [Dkt. No. 35]; Federal Defendants' Reply in Support of their Cross-Motion for Summary Judgment ("Federal Defendants Reply") [Dkt. No. 37]; Defendant Intervenors' Reply in Support of their Cross-Motion for Summary Judgment ("Defendant-Intervenors Reply") [Dkt. No. 38]; Plaintiff's Emergency Motion for Temporary Restraining Order and Motion for a Preliminary Injunction ("Mashpee PI") [Dkt. No. 42]; Mashpee April 10, 2020 Status Report [Dkt. No. 48]; Federal Defendants' April 10, 2020 Status Report [Dkt. No. 47]; Defendant-Intervenors' April 10, 2020

## I.   BACKGROUND AND PROCEDURAL HISTORY

### A.  The Indian Reorganization Act

The Indian Reorganization Act (the "IRA"), 25 U.S.C. §§ 5101 et seq., was adopted in 1934 to change "a century of oppression and paternalism" in the relationship between the United States and its native Indian tribes.  See H.R. Rep. No. 73-1804, at 6 (1934), AR at 8513.  Its purpose was to create the mechanisms whereby tribal governments could be reorganized and tribal corporate structures could be developed, see 25 U.S.C. §§ 5123 and 5124, as well as to make the acquisition of lands easier, to be held in trust by the United States to enlarge or create new Indian reservations.  See 25 U.S.C. §§ 5108 and 5110; see also Cohen's Handbook of Federal Indian Law § 1.05 (Nell Jessup Newton ed., 2017).  The United States Secretary of the Interior (the "Secretary") is delegated the authority to acquire land in trust for Indian tribes.  25 U.S.C. § 5108.[2]

---

Status Report [Dkt. No. 46]; Federal Defendants' Memorandum in Opposition to Plaintiff's Emergency Motion for Temporary Restraining Order and Motion for a Preliminary Injunction ("Federal Defendants PI Opp.") [Dkt. No. 50]; Defendant-Intervenors' Opposition to Plaintiff's Emergency Motion for Temporary Restraining Order and Motion for a Preliminary Injunction ("Defendant-Intervenors PI Opp.") [Dkt. No. 51]; Plaintiff's Reply in Support of its Emergency Motion for Temporary Restraining Order and Motion for a Preliminary Injunction ("Mashpee PI Reply") [Dkt. No. 57]; Plaintiff's Response to the Court's May 1, 2020 Order ("Mashpee Response to Order") [Dkt. No. 54]; Federal Defendants' Response to the Court's May 1, 2020 Order ("Federal Defendants Response to Order") [Dkt. No. 56]; Defendant-Intervenors' Response to the Court's May 1, 2020 Order ("Defendant-Intervenors Response to Order") [Dkt. No. 55]; Plaintiff's Supplemental Brief to the Court's May 1, 2020 Order ("Mashpee Supp. Br.") [Dkt. No. 60]; Federal Defendants' Response to Plaintiff's Supplemental Brief ("Federal Defendants Supp. Br.") [Dkt. No. 62]; Defendant' Intervenors' Response to Plaintiff's Supplemental Brief ("Defendant Intervenors Supp. Br.") [Dkt. No. 61]; Amicus Brief by United States and Eastern Tribes Sovereignty Protection Fund [Dkt. No. 68]; Amicus Brief by Members of Congress [Dkt. No. 70]; Transcript of May 20, 2020 Motions Hearing ("May 20, 2020 Tr.") [Dkt. No. 71]; and Federal Defendants' Response to Amicus Brief by United States and Eastern Tribes Sovereignty Protection Fund [Dkt. No. 74].

[2]      Congress authorized the Department of the Interior ("DOI") and its Bureau of Indian Affairs ("BIA") to manage all matters relating to Indian affairs under the direction of the President.  See 25 U.S.C. §§ 2, 9.  Pursuant to this delegation of authority to the DOI, BIA has

The Secretary's authority under the IRA is cabined by whether a tribe meets the statute's definition of "Indian," which is found in Section 19 of the statute and codified at 25 U.S.C. § 5129:

> The term "Indian" as used in this Act shall include all persons of Indian descent [1] who are members of any recognized Indian tribe now under Federal jurisdiction and [2] all persons who are descendants of such members who were, on June 1, 1934, residing within the present boundaries of any Indian reservation, and shall further include [3] all other persons of one-half or more Indian blood.

25 U.S.C. § 5129.

### B.  *Carcieri v. Salazar*

In 2009, the United States Supreme Court interpreted the IRA's definition of "Indian" when the State of Rhode Island challenged the Secretary's plan to accept land in trust for use by the Narragansett Indian Tribe, which occupied much of present-day Rhode Island in colonial times.  Carcieri v. Salazar, 555 U.S. 379, 381-82 (2009).  The Court analyzed only the first of the three definitions of "Indian" in Section 19 of the IRA and held that the word "now" in the phrase "now under federal jurisdiction" did not refer to the time of the statute's application, but rather referred to 1934, the year in which the IRA was enacted.  Id. at 395.

The meaning of the phrase "under federal jurisdiction" was not a question before the Court in Carcieri v. Salazar, so the majority did not elaborate on the meaning of that phrase. In a concurring opinion, however, Justice Breyer expressed some views on this matter.  He noted that the Court's interpretation of "now" as meaning "in 1934" was "less restrictive than it first appears" because "a tribe may have been 'under federal jurisdiction' in 1934 even though the

---

promulgated regulations establishing procedures for placing property in trust status.  See 25 C.F.R. § 151.  The Secretary accepts legal title to the land in the name of the United States.  25 U.S.C. § 5108.

federal government did not believe so at the time." Carcieri v. Salazar, 555 U.S. at 397 (Breyer, J., concurring).  Justice Breyer cited to specific tribes that were erroneously treated as not under federal jurisdiction by federal officials at the time the IRA was enacted, but whose status was later recognized by the federal government.  See id. at 398-99.  His concurrence suggests that these later-recognized tribes could have been "under federal jurisdiction" in 1934 notwithstanding earlier actions or statements by federal officials to the contrary.  Id. at 399.  Importantly, Justice Breyer also outlined certain types of evidence that "implied a 1934 relationship between the Tribe and Federal Government" – a treaty with the United States in effect in 1934, a congressional appropriation before 1934, or enrollment with the Indian Office as of 1934.  Id.

Justices Souter and Ginsburg would have remanded the case to allow the Department of the Interior (the "Department" or "DOI") the opportunity to show that the Narragansett Tribe was under federal jurisdiction in 1934.  Carcieri v. Salazar, 555 U.S. at 400-01 (Souter, J., dissenting in part).  But the majority disagreed and found that the Narragansett Tribe was not under federal jurisdiction in 1934 because none of the parties, including the Narragansett Tribe, had argued that the Tribe was under federal jurisdiction in 1934.  Rather, the assertion in the petition for writ of certiorari that the Narragansett Tribe was "neither federally recognized nor under the jurisdiction of the federal government" was not contested, which meant that the Court could accept it as fact.  Id. at 395-96.

## C.   The M-Opinion

Five years after Carcieri v. Salazar was decided, the Solicitor of the Department of the Interior issued formal legal guidance to the Secretary for how to interpret the phrase "under federal jurisdiction" in the IRA's first definition of "Indian."  DOI, M-37029,

Memorandum on The Meaning of "Under Federal Jurisdiction" for Purposes of the Indian

Reorganization Act (March 12, 2014) ("M-Opinion").  This signed M-Opinion binds the

Department and its officials.  See 2018 ROD at 11, AR at 5098; see also M-Opinion at 17, 26.

Applying Chevron, the Solicitor first concluded that the phrase "under federal jurisdiction" was

ambiguous, and that Congress therefore "left a gap for the agency to fill."  M-Opinion at 17

(citing Chevron v. Natural Res. Def. Council, 467 U.S. 837, 840-43 (1984)).  In order to fill the

gap, the Solicitor examined the text of the IRA, its remedial purposes, its legislative history, and

the DOI's early practices.  Id. at 8-20.  He also considered the Indian canon of construction.  Id.

at 5, 19.  The Solicitor's interpretation of "under federal jurisdiction" was informed by Justice

Breyer's concurring opinion in Carcieri.  Id. at 23-25.  The M-Opinion also specified that

Congress's constitutional plenary authority over Indian tribes is insufficient to show that a tribe

was "under federal jurisdiction" in 1934.  Id. at 17-18.[3]

       In the M-Opinion, the Solicitor announced a two-part test for determining whether

a tribe was under federal jurisdiction.  M-Opinion at 19-20.  First, the Secretary must determine

whether there is a "sufficient showing in the tribe's history, at or before 1934, that it was under

federal jurisdiction."  Id. at 19.  Second, the Secretary must determine "whether the tribe's

jurisdictional status remained intact in 1934."  Id.

       In order to answer the first part of the test, the Solicitor said that the Secretary

should look to whether

> the United States had, in 1934 or at some point in the tribe's history
> prior to 1934, taken an action or series of actions – through a course
> of dealings or other relevant acts for or on behalf of the tribe or in
> some instance tribal members – that are sufficient to establish, or

---

[3]     "The Constitution grants Congress broad general powers to legislate in respect to
Indian tribes, powers that [have been] consistently described as 'plenary and exclusive.'"  United
States v. Lara, 541 U.S. 193, 200 (2004) (internal citations omitted).

that generally reflect federal obligations, duties, responsibility for or
authority over the tribe by the Federal Government.

M-Opinion at 19.  The M-Opinion noted that "[s]ome federal actions may in and of themselves

demonstrate that a tribe was, at some identifiable point or period in its history, under federal

jurisdiction," whereas "[i]n other cases, a variety of actions when viewed in concert may

demonstrate that a tribe was under federal jurisdiction."  Id.

> The Solicitor added that evaluating the first part of the test is a "fact and tribe-
specific inquiry" and offered examples of various types of evidence that may be considered:
"the negotiation of and/or entering into treaties," the "approval of contracts between a tribe and
non-Indians," the "enforcement of the Trade and Intercourse Acts (Indian trader, liquor laws, and
land transactions)," the "education of Indian students at BIA schools," the "provision of health or
social services to a tribe," and "actions by the Office of Indian Affairs," the office responsible for
the administration of the Indian reservations and implementing legislation.

M-Opinion at 19.[4]  The Solicitor noted that "[t]here may, of course be other types of actions not

referenced" that could serve as evidence that a tribe met the first part of the inquiry.  Id.

> In this tribe- and fact-specific inquiry, different types of evidence carry different
weight.  Some evidence "unambiguously and conclusively establishes that the United States
understood that a particular tribe was under federal jurisdiction in 1934."  M-Opinion at 20.  For
instance, a tribe that voted on whether to opt out of the IRA in the years following its enactment,
regardless of which way it voted, is "unambiguous" evidence that the tribe was under federal
jurisdiction in 1934, thus "obviating the need to examine the tribe's history prior to 1934," and
eliminating the need to proceed to the second step of the two-part inquiry.  Id. at 19-20.  For

---

[4]     The BIA was originally named the Office of Indian Affairs, which was located
within the Department of War.  Cobell v. Babbitt, 91 F. Supp. 2d 1, 7 n.2 (D.D.C. 1999).  The
BIA was transferred to the newly created Department of the Interior in 1849.

other tribes the Secretary may point to "a variety of actions when viewed in concert" that

demonstrate that a tribe was under federal jurisdiction prior to 1934 (to satisfy part one) and

determine from "the universe of actions or evidence" that a tribe's jurisdictional status remained

intact in 1934 (to satisfy part two).  Id. at 19.

   When there is evidence that a tribe was under federal jurisdiction before 1934, the

Secretary proceeds to the second part of the test, which is to "ascertain whether the tribe's

jurisdictional status remained intact in 1934."  M-Opinion at 19.  The Solicitor noted, however,

that "the Federal Government's failure to take any actions towards, or on behalf of a tribe during

a particular time period does not necessarily reflect a termination or loss of the tribe's

jurisdictional status," as "there may be periods where federal jurisdiction exists but is dormant."

Id. at 20.  Rather, once the first part of the inquiry is satisfied – that at some point prior to 1934 a

tribe was under federal jurisdiction – "the absence of any probative evidence that a tribe's

jurisdictional status was terminated or lost prior to 1934 would strongly suggest that such status

was retained in 1934."  Id.

   The D.C. Circuit has reviewed and upheld the two-part test set forth in the M-

Opinion.  See Confederated Tribes of Grand Ronde Cmty. v. Jewell ("Grand Ronde v. Jewell"),

830 F.3d 552, 564-65 (D.C. Cir. 2016) (finding the phrase "under Federal jurisdiction" in the

IRA to be ambiguous and sanctioning DOI's two-part test outlined in the M-Opinion). [5]

   The M-Opinion was issued in 2014, but the Department first announced this two-

part framework for interpreting "now under federal jurisdiction" in a December 2010 record of

decision to acquire land in trust for the Cowlitz Indian Tribe.  2018 ROD at 11, AR at 5098

---

   [5] In Grand Ronde v. Jewell, the Circuit analyzed a record of decision from 2013
that predated the M-Opinion but that applied the same test later codified in the M-Opinion.

(citing the Cowlitz ROD, AR at 5610-5727).  The Department's decisions applying this two-part

framework from the Cowlitz ROD onward are therefore precedential for the purposes of the

Department's application of the two-part test formally announced in the M-Opinion.  See May

20, 2020 Tr. at 40:05-11.

### D.  The 2015 Record of Decision

In 2007, after the BIA formally acknowledged the Mashpee Tribe pursuant to the

administrative procedures set forth in 25 C.F.R. § 83, the Tribe applied to have the Secretary take

land into trust on its behalf.  DOI, Record of Decision, Trust Acquisition and Reservation

Proclamation for 151 Acres in the City of Taunton, Massachusetts, and 170 Acres in the Town of

Mashpee, Massachusetts, for the Mashpee Wampanoag Tribe (Sept. 18, 2015) ("2015 ROD"),

AR at 5223-357.[6]  The 2015 ROD granted the Tribe's fee-to-trust application and announced

that the Secretary would acquire both requested parcels of land; one in Mashpee and the other in

Taunton.  DOI also announced that both sites would be eligible for gaming under the "initial

reservation exception" of the Indian Gaming Regulatory Act, 25 U.S.C. §§ 2701-2721.  2015

ROD, AR at 5230.  The 2015 ROD explained that the Secretary's authority to acquire land in

trust for the Mashpee Tribe was based on the second definition of "Indian" in the IRA.  Id.

at 5304.  The 2015 ROD specifically stated that it did not address "whether the Mashpee could

---

[6]      The Tribe sought the trust land to support the needs of its members and provide
land for self-determination and self-governance, housing, education and cultural preservation.
The Mashpee land, which includes culturally significant and historic sites in the heart of the
Tribe's historic territory (including a Mashpee burial ground used by the Tribe for centuries), is
for use for tribal administrative and cultural purposes, and tribal housing.  The Taunton land is
for use for economic development in the form of an Indian gaming facility, with revenues
intended to support the Mashpee tribal government and meet the needs of Tribal members, many
of whom suffer from unemployment or incomes below poverty level.  See Compl. ¶ 23.

also qualify under the first definition of 'Indian,'" and therefore did not analyze whether the tribe was under federal jurisdiction in 1934.  Id. at 5304-05.

### E.   *Littlefield v. U.S. Dep't of Interior* and Remand Proceedings

Shortly after issuing the 2015 ROD, the Secretary took the two parcels of land into trust for the Mashpee Tribe, and development of the Taunton site began.  See Littlefield v. U.S. Dep't of Interior, 199 F. Supp. 3d 391, 393 (D. Mass 2016).  The Littlefield plaintiffs – residents of Taunton who claimed they were injured by the acquisition and planned development of the land at issue – sued to challenge the 2015 ROD in the United States District Court for the District of Massachusetts.  Id. at 392, 394.  The Littlefield plaintiffs challenged the Secretary's interpretation of the IRA's second definition of "Indian," arguing that the Mashpee Tribe did not qualify under a proper reading of the IRA's second definition, and therefore the Secretary lacked authority to acquire the land in trust.  Id. at 394.

The district court agreed.  It interpreted the IRA's second definition of "Indian" as "us[ing] the word 'such' to indicate that the 'members' to which it refers are those described in the first definition."  Littlefield v. U.S. Dep't of Interior, 199 F. Supp. 3d at 397.  The phrase "under federal jurisdiction" in the IRA's first definition of "Indian" therefore also qualifies the IRA's second definition of "Indian."  The court stated that "the Mashpees are not considered 'Indians'" under the IRA's second definition "because they were not under federal jurisdiction in June 1934," and the Secretary therefore "lacked the authority to acquire land in trust for them, at least under the rationale . . . offered in the Record of Decision."  Id.  The court remanded the matter to DOI for further proceedings.  Id. at 400.

The Department of the Interior subsequently sought reconsideration of the court's factual finding that the Mashpee Tribe was not under federal jurisdiction in June 1934 since the

Department had not briefed the issue, and it had not been addressed in the 2015 ROD.  The court thereafter clarified that its finding that the Mashpee Tribe weas not under federal jurisdiction in 1934 would not be binding on DOI on remand.  See Order on Motion for Reconsideration, Littlefield v. U.S. Dep't of Interior, Civil Action No. 16-10184 (D. Mass. Oct. 12, 2016) [Dkt 121].  The court explained that on remand DOI could either consider the Mashpee Tribe's eligibility under the first definition of "Indian" or reassess its eligibility under the second definition consistent with the court's interpretation.  Id.

DOI notified the Tribe and the Littlefield plaintiffs in late 2016 that it would reconsider the Tribe's eligibility under the first definition of "Indian."  Compl. ¶ 28; Answer ¶ 28.  DOI invited the parties "to submit any evidence or argument that the Tribe was under federal jurisdiction in 1934."  Id.  The Tribe submitted evidence and arguments in two parts:  first on December 21, 2016, and again on January 5, 2017.  See Mashpee First Submission, AR at 5196-5220; Mashpee Second Submission, AR at 5740-5785.  The Littlefield plaintiffs submitted their own brief, to which the Tribe replied.

Briefing initially concluded in February 2017.  Four months later, DOI issued a draft decision finding that the Tribe was not "under federal jurisdiction" in 1934.  DOI then requested supplemental briefing regarding the effect of Massachusetts' exercise of authority over the Tribe and whether Massachusetts could be considered a federal surrogate for purposes of the "under federal jurisdiction" inquiry.  Compl. ¶ 30.  DOI considered supplemental evidence provided by the Tribe, the Littlefield plaintiffs, and several third parties.[7]  Supplemental briefing concluded in November 2017.

_____

[7]    The third parties included a neighboring Indian tribe and several towns in Connecticut.

*F.   The 2018 Record of Decision*

On September 7, 2018, the Secretary of the Department of the Interior (the "Secretary") through his designee, the Assistant Secretary for Indian Affairs, issued a Record of Decision in which she concluded that the Tribe was not "under federal jurisdiction" as of 1934 and so did not meet either the first or second definition of "Indian" in the IRA.  DOI, Letter from Tara Sweeney, Assistant Secretary for Indian Affairs, to The Honorable Cedric Cromwell, Chairman, Mashpee Wampanoag Tribe ("2018 ROD"), AR at 5088-115.  Expressly relying on the M-Opinion of March 12, 2014, Assistant Secretary Sweeney concluded:

> Applying [the 2014 M-Opinion's] framework to my review of the parties' remand and supplemental submissions, I conclude that the evidence does not show that the Tribe was under Federal jurisdiction in 1934 within the meaning of the IRA's first definition of "Indian." The record before me contains little indicia of Federal jurisdiction beyond the general principle of plenary authority, and little if any evidence demonstrating that the United States took any actions establishing or reflecting Federal obligations, duties, responsibilities for or authority over the Tribe in or before 1934.  Because the Tribe was not "under federal jurisdiction" in 1934, the Tribe does not qualify under the IRA's first definition of "Indian."  Nor does it qualify under the second definition, as that definition has been interpreted by the United States District Court for the District of Massachusetts.

2018 ROD at 28, AR at 5115.  In relying on the M-Opinion, the Assistant Secretary acknowledged that the M-Opinion was binding on her determination.  2018 ROD at 11, AR at 5098 ("Because a signed M-Opinion binds the Department and its officials until modified by the Solicitor, Deputy Secretary, or Secretary or otherwise overruled by the courts, [the M-Opinion] guides this analysis."); see also M-Opinion at 17, 26 .

The Mashpee Tribe filed suit in this Court on September 27, 2018, challenging the 2018 ROD.  The Tribe asks the Court to vacate the 2018 ROD as arbitrary, capricious, an abuse of discretion and contrary to law; declare that the evidence submitted to DOI by the Tribe

12

is sufficient to support a finding that the Mashpee Tribe was "under federal jurisdiction" in 1934 within the meaning of the IRA; and instruct the Secretary to confirm the trust status of the land that makes up the Tribe's reservation.  See Mashpee MSJ at 2.

G. _Littlefield v. Mashpee_ and Mashpee's Motion for Preliminary Injunction

As it challenged the 2018 ROD before this Court, the Mashpee Tribe was simultaneously appealing the Littlefield decision regarding the 2015 ROD to the First Circuit. On February 20, 2020, the First Circuit affirmed the Massachusetts district court's decision, holding that "the IRA unambiguously forecloses the BIA's interpretation" of the second definition of "Indian" in the 2015 ROD, and therefore "the Secretary lacked authority to take land into trust for the benefit of the Tribe."  Littlefield v. Mashpee Wampanoag Indian Tribe ("Littlefield v. Mashpee"), 951 F.3d 30, 41 (1st Cir. 2020).[8]

On March 27, 2020 the Secretary wrote a letter to the Director and the Eastern Regional Director of the BIA noting that the mandate and final judgment had issued from the First Circuit on March 19, 2020, which meant that the Littlefield decision was final.  See March 27, 2020 Secretary of the Interior letter [Dkt. No. 42-4].  The letter directed the BIA to "rescind" the 2015 Decision "whereby the BIA accepted land into trust on behalf of the Tribe," and to "revoke the reservation proclamation."  Id.  Upon being advised of the Secretary's letter, the Mashpee Tribe filed an emergency motion for a temporary restraining order and a preliminary injunction in this Court on March 30, 2020, seeking to preserve the "status quo" during the

---

[8]     Before it reached a decision on the merits, the First Circuit had ordered the parties to brief (1) whether the appeal was moot given DOI's decision on remand (the 2018 ROD) and the litigation pending in this Court, and (2) whether the certification of the appeal was proper in light of the fact that the Massachusetts district court remanded the matter to DOI.  See Littlefield v. Mashpee, Order, Court of Appeals No. 16-2484 (Aug. 20, 2019).  Ultimately, the First Circuit held that it had jurisdiction over the appeal.  Littlefield v. Mashpee, 951 F.3d at 34-36.

pendency of this action.  See Mashpee PI.  The parties thereafter agreed with the Court's

suggestion that it consolidate the hearing on the motion for a preliminary injunction with a

hearing on the cross-motions for summary judgment.  See April 10, 2020 Order [Dkt. No. 49]

at 1.  The Federal Defendants have agreed to maintain the status quo through June 5, 2020.

## II.  LEGAL STANDARDS

### A.  Summary Judgment

"In APA cases such as this one, involving cross-motions for summary judgment,

'the district judge sits as an appellate tribunal.  The entire case on review is a question of law.'"

Stand Up for California! v. Dep't of the Interior, 204 F. Supp. 3d 212, 244 (D.D.C. 2016)

(quoting Am. Bioscience, Inc. v. Thompson, 269 F.3d 1077, 1083 (D.C. Cir. 2001) (internal

citations omitted)); see also Marshall Cnty. Health Care Auth. v. Shalala, 988 F.2d 1221, 1226

(D.C. Cir. 1993) ("[W]hen an agency action is challenged[, t]he entire case on review is a

question of law, and only a question of law.").  The standard for granting summary judgment set

forth in Rule 56 of the Federal Rules of Civil Procedure – whether there are genuine issues of

material fact that preclude judgment for one side or the other – therefore does not apply to a

review of agency action.  Sierra Club v. Mainella, 459 F. Supp. 2d 76, 89-90 (D.D.C. 2006).

Summary judgment nonetheless "serves as the mechanism for deciding, as a matter of law,

whether the agency action is supported by the administrative record and otherwise consistent

with the APA standard of review."  Id. at 90 (citing Richards v. INS, 554 F.2d 1173, 1177

& n. 28 (D.C. Cir. 1977)); accord UPMC Braddock v. Harris, 934 F. Supp. 2d 238, 245 (D.D.C.

2013); Cottage Health Sys. v. Sebelius, 631 F. Supp. 2d 80, 89-90 (D.D.C. 2009).  "Judicial

review is limited to the administrative record, since '[i]t is black-letter administrative law that in

an [Administrative Procedure Act] case, a reviewing court should have before it neither more nor

less information than did the agency when it made its decision.'" <u>Cigar Ass'n of Am. v. U.S. Food & Drug Admin.</u>, Civil Action No. 16-01460, 2020 WL 532392, at *7 (D.D.C. Feb. 3, 2020) (citing <u>CTS Corp. v. EPA</u>, 759 F.3d 52, 64 (D.C. Cir. 2014) (internal quotations and citations omitted; alteration in original)).

### B.   Review under the Administrative Procedure Act

Under the APA, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A).  "This is a 'deferential standard' that 'presume[s] the validity of agency action.'" <u>WorldCom, Inc. v. FCC</u>, 238 F.3d 449, 457 (D.C. Cir. 2001) (alteration in original) (quoting <u>Sw. Bell Tel. Co. v. FCC</u>, 168 F.3d 1344, 1352 (D.C. Cir. 1999)).  This standard "obligates the agency to examine all relevant factors and record evidence, and to articulate a reasoned explanation for its decision." <u>Am. Wild Horse Pres. Campaign v. Perdue</u>, 873 F.3d 914, 923 (D.C. Cir. 2017) (citing <u>Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. 29, 52 (1983)).

An agency decision is arbitrary and capricious if it either (1) "relied on factors which Congress has not intended it to consider," (2) "entirely failed to consider an important aspect of the problem," (3) "offered an explanation for its decision that runs counter to the evidence before the agency," or (4) "is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." <u>Cablevision Sys. Corp. v. FCC</u>, 649 F.3d 695, 714 (D.C. Cir. 2011) (quoting <u>Motor Vehicle Mfrs. Ass'n v. State Farm Mut. Auto. Ins. Co.</u>, 463 U.S. at 43); <u>accord</u> <u>Agape Church, Inc. v. FCC</u>, 738 F.3d 397, 410 (D.C. Cir. 2013).  Just as the Court may not "substitute [its] judgment for that of the agency" to set aside an agency action, <u>Rural Cellular Ass'n v. FCC</u>, 588 F.3d 1095, 1105 (D.C.Cir.2009), it also may not "affirm an

agency decision on a ground other than that relied upon by the agency."  Manin v. Nat'l Transp.

Safety Bd., 627 F.3d 1239, 1243 (D.C. Cir. 2011).

If an agency "chang[es] its course" from its own precedent it must "acknowledge"

that change and "provide an adequate explanation for its departure from established precedent[; ]

an agency that neglects to do so acts arbitrarily and capriciously."  Jicarilla Apache Nation v.

U.S. Dep't of Interior, 613 F.3d 1112, 1119 (D.C. Cir. 2010) (citing Dillmon v. NTSB, 588 F.3d

1085, 1089-90 (D.C. Cir. 2009.  But while an agency cannot "completely ignore relevant

precedent" such as when "analogous cases have been decided differently," an agency is "not

require[d] to grapple with every last one of its precedents, no matter how distinguishable."  Id.

at 1120.

The requirement that an agency adequately explain its result "is not particularly

demanding" and "nothing more than a 'brief statement' is necessary."  Muwekma Ohlone Tribe

v. Salazar, 813 F. Supp. 2d 170, 190 (D.D.C. 2011) (citing Pub. Citizen, Inc. v. FAA, 988 F.2d

186, 197 (D.C. Cir. 1993); Tourus Records, Inc. v. DEA, 259 F.3d 731, 737 (D.C. Cir. 2001)).

Courts will "uphold a decision of less than ideal clarity if the agency's path may reasonably be

discerned.'" Catawba Cty., N.C. v. E.P.A., 571 F.3d 20, 50 (D.C. Cir. 2009) (quoting Bowman

Transp., Inc. v. Arkansas-Best Freight Sys., Inc., 419 U.S. 281, 286 (1974)).

III. ANALYSIS

The Tribe argues that the Secretary violated the APA when he issued the 2018

ROD, maintaining that he "ignored various facts and treated others in ways that deviated from

both prior agency decisions and relevant case law, and on the whole failed to provide reasonable

explanations for the way he treated evidence."  Mashpee MSJ at 20.  The Tribe further argues

that the Secretary employed a "cramped reading of the IRA's 'under federal jurisdiction'

requirement" that failed to consider the evidence of federal jurisdiction put forth by the Mashpee as a whole. Id. at 40.  In addition, the Tribe asserts that the Secretary ignored the remedial purposes of the IRA, his trust responsibility to the Tribe, and the Indian canon of construction. Id. at 40, 42-45.

Upon learning on its own without any notice from the parties that the Secretary had recently withdrawn the M-Opinion during the pendency of this case, the Court asked for supplemental briefing on whether the Secretary's withdrawal of the M-Opinion and the reasons provided for its withdrawal meant that the deferential standard to the Secretary's application of the M-Opinion in the 2018 ROD was altered.  See May 1, 2020 Mem. Op. and Order [Dkt. No. 53].  In response to the Court's Order, the Tribe argues that the new guidance issued on March 10, 2020 demonstrates that the Secretary in the 2018 ROD was implicitly applying a much stricter test than the one articulated in the 2014 M-Opinion.  Mashpee Supp. Br. at 8-14.

The federal defendants and defendant-intervenors defend the 2018 ROD as entirely consistent with the IRA, the M-Opinion as written, DOI precedent, and the APA.[9]  The Court will address each of these arguments in turn.

---

[9]    The defendant-intervenors also argue that the Supreme Court's decision in Carcieri v. Salazar, which said that the Narragansett Tribe was not under federal jurisdiction in 1934 means that this Court must also find that the Mashpee Tribe was not under federal jurisdiction in 1934.  Defendant-Intervenors Cross-MSJ & Opp. at 17; Defendant-Intervenors Reply at 5-7.  But the Supreme Court's decision does not mandate such an outcome.  The Supreme Court accepted as fact that the Narragansett Tribe was not under federal jurisdiction because the parties did not contest this point.  Carcieri v. Salazar, 555 U.S. at 395-96.  Indeed, Justices Souter and Ginsburg would have remanded to the DOI to allow an opportunity for the Narragansett Tribe to show that it was under federal jurisdiction in 1934.  Id. at 400-01.  But the majority chose to accept the parties' factual concession.  Id. at 395-96.

A. *Jurisdiction by Operation of Law and Massachusetts' Exercise of Authority*

After the district court in Massachusetts remanded the 2015 decision to the Department, the Tribe asserted in its briefing before the DOI that it came under federal jurisdiction by operation of law in the early constitutional period.  The Tribe supported this claim by arguing that (1) "[t]he United States assumed Britain's treaty-like obligations to the Tribe when the United States succeeded to Britain's sovereignty"; (2) Congress assumed an obligation to protect tribal lands under federal common law and the Indian Nonintercourse Act, 25 U.S.C. § 177; and (3) the Tribe's occupation of a reservation in 1934 meant that the Tribe was under federal jurisdiction at that time.  Mashpee Second Submission, AR at 5752-60; see also Mashpee Reply to Defendant-Intervenors' Submission, AR at 7077-80.  The Secretary considered each of these arguments in the 2018 ROD and concluded that the Tribe did not come under federal jurisdiction by operation of law.  2018 ROD at 13-15, AR at 5100-02.  The Tribe does not challenge this conclusion here.  Mashpee Reply at 14 n.17.

During the briefing on remand, the Tribe also submitted evidence, at DOI's request, that addressed the effect of Massachusetts' exercise of authority over the Tribe and the question of whether Massachusetts could be considered a federal surrogate for purposes of the "under federal jurisdiction" inquiry.  Mashpee Suppl. Submission, AR at 8349-8419.  The 2018 ROD noted that the Mashpee and the Commonwealth of Massachusetts "had significant relations . . . as a colony and a state for nearly two centuries"; that the Commonwealth exercised authority over the Tribe; and that Massachusetts enacted laws for the benefit of the Tribe.  2018 ROD at 18, AR at 5105.  The Secretary concluded, however, that "the record contains practically no evidence of any dealings with the Federal Government in that period, which [the M-Opinion] requires, and exercises of Commonwealth authority, without more, cannot in itself

reflect <u>federal</u> obligations, duties, responsibilities for, or authority over the Tribe." <u>Id.</u> (emphasis in original).

The Tribe does not challenge these findings in the 2018 ROD as arbitrary, capricious, an abuse of discretion, or not in accordance with law. <u>See</u> 5 U.S.C. § 706(2)(A). The Tribe explains that it did not raise the issue of whether Massachusetts functioned as a federal surrogate but only briefed the matter at DOI's request. Mashpee Reply & Opp. at 14 n. 17. Nevertheless, the Tribe contends that "[Massachusetts'] actions toward the Tribe supplemented the federal government's assertion of jurisdiction and should be considered as part of the federal course of dealings demonstrating that Mashpee was under federal jurisdiction in 1934." Mashpee Reply at 14 n.17 (citing Mashpee Suppl. Submission, AR at 8363-68). The Court agrees and will consider the evidence the Tribe cites to the extent that it overlaps with or provides support for evidence that the Tribe asserts demonstrates explicit acts of federal authority over the Tribe. <u>See</u> Mashpee MSJ at 15-19.

## B. *Chevron Deference, the Indian Canon of Construction, and Subsequent Withdrawal of the M-Opinion*

The Mashpee Tribe has not challenged DOI's reliance on the M-Opinion's two-part test for determining whether a tribe was "under federal jurisdiction" under the IRA, only the manner in which DOI applied the M-Opinion's two-part test. The Tribe asks the Court to review the 2018 ROD to see whether its application of the IRA is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law under the APA. In their cross-motions for summary judgment, the federal defendants and defendant-intervenors defend the Secretary's use of the M-Opinion in the 2018 ROD as entitled to <u>Chevron</u> deference. <u>See</u> Federal Defendants Cross-MSJ & Opp. at 11; Defendant-Intervenors' Cross-MSJ & Opp. at 18.

The D.C. Circuit has reviewed and upheld the test set forth in the M-Opinion.  See Grand Ronde v. Jewell, 830 F.3d at 564-65 (finding the phrase "under Federal jurisdiction" in the IRA to be ambiguous and sanctioning DOI's two-part test outlined in the M-Opinion).  In doing so, the D.C. Circuit applied both Chevron and the Indian canon of construction, recognizing that "statutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit."  Grande Ronde v. Jewell, 830 F.3d at 558 (quoting California Valley Miwok Tribe v. United States, 515 F.3d 1262, 1266 n.7 (D.C. Cir. 2008)).  Similarly, the M-Opinion applied both the Indian canon of construction and a Chevron analysis when implementing the two-part test as official agency guidance.  M-Opinion at 4-5, 16-20.

The Mashpee Tribe invokes the Indian canon of construction in order to suggest that the Secretary's application of the M-Opinion's two-part test should be favorable to the Tribe.  Mashpee MSJ at 42-45; Mashpee Reply & Opp. at 6-8.  This argument misunderstands the canon.  The Indian canon of construction says that ambiguous statutes should be construed liberally in favor of Indians.  See, e.g., Montana v. Blackfeet Tribe of Indians, 471 U.S. 759, 766 (1985) ("[S]tatutes are to be construed liberally in favor of the Indians, with ambiguous provisions interpreted to their benefit."); Grande Ronde v. Jewell, 830 F.3d at 558 (same).  "When presented with an ambiguous statute" an analysis that "ordinarily would shift to Chevron step two" instead applies the Indian canon.  Koi Nation of N. California v. U.S. Dep't of Interior, 361 F. Supp. 3d 14, 48 (D.D.C. 2019).  "Chevron deference 'does not disappear'" but instead "'applies with muted effect,' and 'the Indians' benefit remains paramount.'"  Id. (quoting Cobell v. Salazar, 573 F.3d 808, 812 (D.C. Cir. 2009)).  The Indian canon of construction therefore is applied to questions of statutory interpretation.

There is no question that the M-Opinion applied the Indian canon to the IRA's ambiguous phrase "under federal jurisdiction," which resulted in the M-Opinion's two-part analysis.  M-Opinion at 5, 19; see also Grand Ronde v. Jewell, 830 F.3d. at 565.  With the statutory interpretation resolved, however, the canon's role is complete.  After a statute has been interpreted, "agency action is always subject to arbitrary and capricious review under the APA." Grande Ronde v. Jewell, 830 F.3d at 559.  This is the question before the Court:  whether the Secretary's application of its interpretation of the IRA – the M-Opinion – was arbitrary and capricious.

On March 9, 2020, the Solicitor of the Department of the Interior withdrew the 2014 M-Opinion on which the 2018 ROD is based.  See Sol. Op. M-37055, "Withdrawal of M-37209, The Meaning of 'Under Federal Jurisdiction' for Purposes of the Indian Reorganization Act" (Mar. 9, 2020) ("March 9, 2020 Memorandum").  The next day, the Solicitor issued a second memorandum that outlined a new, four-step procedure for how the Department will determine eligibility under the first definition of "Indian" in Section 19 of the IRA.  See "Procedure for Determining Eligibility for Land-into-Trust under the First Definition of 'Indian' in Section 19 of the Indian Reorganization Act," Memorandum from the Solicitor to Regional Solicitors, Field Solicitors, and SOL-Division of Indian Affairs (Mar. 10, 2020) ("March 10, 2020 Memorandum").  To further assist the Solicitor's Office attorneys in implementing the four-step procedure, the March 10, 2020 Memorandum references a March 5, 2020 memorandum from the Deputy Solicitor for Indian Affairs detailing the Department's interpretation of the phrase "recognized Indian tribe now under federal jurisdiction."  See Determining Eligibility under the First Definition of "Indian" in Section 19 of the Indian Reorganization Act of 1934, Memorandum from the Deputy Solicitor for Indian Affairs to the

Solicitor (Mar. 5, 2020) ("March 5, 2020 Memorandum").  The parties agree that the withdrawal of the M-Opinion and issuance of new guidance does not affect the Court's analysis whether the Secretary properly applied the M-Opinion in the 2018 ROD.  See Mashpee Response to Order at 3; Federal Response to Order at 6; Defendant-Intervenors Response to Order at 2-3.

### C.  The Secretary's Application of the M-Opinion's Test

The Mashpee argue that the Secretary applied a "cramped reading" of the analysis the M-Opinion directs the Secretary to make by failing to view the probative evidence in the record "in concert" with other probative evidence in the record.  Mashpee MSJ at 40-42; Mashpee Reply at 4.  The federal defendants and defendant-intervenors respond by saying that the Tribe is really challenging the weight afforded to each type of evidence, and that the Secretary properly applied the M-Opinion's test in the 2018 ROD.  Federal Defendants Cross-MSJ & Opp. at 33; Federal Defendants Reply at 5-6; Defendant-Intervenors Cross-MSJ at 14-15.

The Court finds that the Secretary in the 2018 ROD did not evaluate the evidence in accordance with the directives of the M-Opinion.  The Secretary misapplied the M-Opinion by evaluating each piece of evidence in isolation.  This is not the correct application of the M-Opinion.  The M-Opinion holds that "[s]ome federal actions may in and of themselves demonstrate that a tribe was, at some identifiable point or period in its history, under federal jurisdiction," but it goes on to say that "[i]n other cases, a variety of actions when viewed in concert may demonstrate that a tribe was under federal jurisdiction."  M-Opinion at 19.  In other words, some actions may be unambiguous evidence that a tribe was under federal jurisdiction at a certain point in time, while other actions must be viewed in concert with other probative evidence.  The Secretary could find that a tribe was under federal jurisdiction before 1934 after viewing all the probative evidence "in concert," without the tribe having any unambiguous

evidence.  It is clear from the 2018 ROD that the Secretary only evaluated each piece of evidence in isolation to see whether it was unambiguous – whether the evidence "in and of itself" demonstrated that the Tribe was under federal jurisdiction.

As articulated by the Secretary, the conclusions about each piece of evidence evaluated in the 2018 ROD show that the Secretary evaluated each piece of evidence in isolation. See, e.g., 2018 ROD at 21, AR at 5108 (discounting the Morse Report as being insufficient "without more"); id. at 22, AR at 5109 (discounting the various uses of the Morse Report as not satisfying the first step of the M-Opinion analysis "in and of themselves"); id. at 23, AR at 5110 (discounting the recommendations in the Schoolcraft Report "in and of themselves"); id. at 26-27, AR at 5113-14 (discounting the reservation under state law of usufructuary rights for tribal members "standing alone"); id. at 27, AR at 5114 (discounting the education of Mashpee students at a BIA school as not sufficient "in isolation"); id. at 28, AR at 5115 (discounting census evidence probative of federal jurisdiction over the Tribe as being inconclusive "in and of itself").

The federal defendants argue that "the Tribe cannot show that the totality of its evidence is greater than the sum of its parts."  Federal Defendants Reply at 5.  This point falls flat, however, because the 2018 ROD did find some of the evidence to be probative of the Tribe being under federal jurisdiction.  See 2018 ROD at 28, AR at 5115 ("As with . . . the [f]ederal reports referencing the Tribe and its lands, the listing of Tribal members on a Federal census, though it may be probative of Federal jurisdiction over the Tribe, in and of itself is inconclusive[.]").  But the Secretary rejected this evidence because he said the evidence was insufficient, alone, to prove that the Tribe was under federal jurisdiction.  Id.  That is not a

correct application of the M-Opinion, which directs the Secretary to view the probative evidence "in concert."

The Secretary's incorrect application of the M-Opinion – evaluating the evidence in isolation and failing to view the probative evidence "in concert" – taints every category of evidence that the Secretary discussed in the 2018 ROD.  On remand, the Secretary must follow the directive of the M-Opinion and consider the probative evidence "in concert" with each piece of other probative evidence to determine whether the probative evidence together shows that the Tribe was under federal jurisdiction before 1934 under the first step of the M-Opinion's two-part test.

### D.  The Secretary's Application of the M-Opinion to the Evidence

The Tribe challenges the 2018 ROD as arbitrary, capricious, an abuse of discretion and contrary to the law.  It maintains that the Secretary "ignored various facts and treated others in ways that deviated from both prior agency decisions and relevant case law, and on the whole failed to provide reasonable explanations for the way he treated evidence." Mashpee MSJ at 20.  The federal defendants and defendant-intervenors defend the 2018 ROD as entirely consistent with the IRA, the agency's guidance and precedent, and the APA.

In its supplemental brief, the Mashpee Tribe argues that with the benefit of the new 2020 guidance that has replaced the 2014 M-Opinion for future cases, the Tribe can discern that the Secretary was implicitly applying this new, stricter test when evaluating the Mashpee's evidence in 2018.  Mashpee Supp. Br. at 8-14.  In support of this argument, the Mashpee highlight various types of evidence that the Secretary accepted as probative evidence in other earlier Department decisions applying the M-Opinion that the Secretary discounted in the 2018 ROD with respect to the Mashpee Tribe.  Id. at 10-14.

The Court agrees that some of the reasons that the Secretary provides in the 2018 ROD as to why the Mashpee's evidence is insufficient reflects some of the new standards recently issued in 2020.  For instance, while the 2014 M-Opinion allows for the education of individual Indian students at BIA schools to be evidence that supports a finding that a tribe was under federal jurisdiction – thereby permitting evidence about individual tribal members to support a finding about the tribe as a whole – the new 2020 guidance only permits evidence about the "establishment of schools and other service institutions for the benefit of a tribe." March 10, 2020 Memorandum at 7 (emphasis added).   The new 2020 guidance also accepts only census evidence that was prepared by the Office of Indian Affairs pursuant to the 1884 Act.  Id. at 4.  As discussed, infra section III(D)(3)(c), the 2014 M-Opinion accepted broader census evidence than what the new 2020 Guidance permits:  the Department's prior decisions applying the M-Opinion accepted evidence from the Census Bureau and BIA census evidence that was not pursuant to the 1884 Act.  These two differences – that the census evidence was prepared by the Census Bureau, not the Office of Indian Affairs, and that the census evidence was not prepared under the 1884 Act – are what led the Secretary to dismiss the 1910 Indian Population Schedule in the 2018 ROD.  See 2018 ROD at 28, AR at 5115.  While such evidence may not be permissible under the new 2020 guidance, it was probative evidence under the 2014 M-Opinion. See infra section III(D)(3)(c).

The similarities between the Secretary's reasons for discounting the Mashpee Tribe's evidence and the new 2020 standards are stark.  The Court does not need to opine as to whether the Secretary was actually applying this new 2020 guidance, however.  The Tribe's arguments, at the very least, show that the Secretary improperly treated the Mashpee's evidence under the 2014 M-Opinion.  The Court now discusses the ways in which the Secretary

misapplied the M-Opinion as to each category of evidence that the Tribe maintains the Secretary improperly dismissed.

### 1.   The Education of Mashpee students at a BIA school

The Mashpee Tribe has provided evidence that individual Mashpee children were educated at a BIA school.  Mashpee children attended the federally-operated Carlisle Indian School (the "Carlisle School"), a non-reservation school located in Carlisle, Pennsylvania between 1905 and 1918, the year the school was closed.  Mashpee MSJ at 17.  Attendance records from the General Accounting Office confirm that Mashpee students attended the Carlisle School in numbers ranging from one to seventeen students in any given year over the course of the thirteen years that Mashpee children were in attendance.  AR at 9291-9321 ("GAO Report").

The M-Opinion expressly enumerates "the education of Indian students at BIA schools" as one example of evidence that demonstrates that the federal government "undertook guardian-like action on behalf of the tribe."  M-Opinion at 19.  Under the M-Opinion, this evidence therefore is strong probative evidence that the Mashpee Tribe was under federal jurisdiction.  The M-Opinion was binding on the Secretary when he issued the 2018 ROD.  2018 ROD at 11, AR at 5098 ("Because a signed M-Opinion binds the Department and its officials until modified by the Solicitor, Deputy Secretary, or Secretary or otherwise overruled by the courts, [the M-Opinion] guides this analysis.").

But that is not how the Secretary treated this evidence.  The Secretary rejected the Mashpee's evidence that the federal government educated Mashpee children at a BIA school as not supporting a finding that the Tribe was under federal jurisdiction.  2018 ROD at 27, AR at 5114.  The 2018 ROD provides a number of reasons as to why the Mashpee's evidence that some of its children were educated at a BIA school for thirteen years was ultimately not considered

probative evidence that the Tribe was under federal jurisdiction.  Id.  The Court holds that each reason provided in the 2018 ROD is inconsistent with the M-Opinion and is a misapplication of the M-Opinion's guidance on which the Department purports to rely.  Nor do the attempts by the federal defendants to defend the Secretary's misguided conclusion fare any better.  The Court will address these various arguments in turn.

a.   The Secretary's Treatment of the Evidence that Mashpee Students Were Educated at a BIA School Cannot Stand

First, the Secretary rejected the Mashpee BIA school evidence because it was not evidence of federal action towards the Mashpee Tribe itself – just towards a handful of Mashpee students.  2018 ROD at 27, AR at 5114 ("While such evidence clearly demonstrate exercises of Federal authority over Indians generally and individual Indians specifically, none suffice . . . to show an exercise of federal authority over the Mashpee Tribe as distinct from some of its members."); id. ("The evidence of Mashpee student enrollment at Carlisle . . . does not unambiguously demonstrate that such enrollment was predicated on a jurisdictional relationship with the Tribe as such."); id. ("[T]he Mashpee student records fall short of demonstrating that [the] Tribe itself came under federal jurisdiction.").

This reason provided by the Secretary is inconsistent with the express language in the M-Opinion.  The M-Opinion lists "the education of Indian students at BIA schools" as an example of evidence that supports a finding that a tribe was under federal jurisdiction. M-Opinion at 19 (emphasis added).  The M-Opinion thus expressly allows for a federal action towards some tribal members – here students – to serve as evidence that supports a finding that a tribe as a whole was under federal jurisdiction.  This reading of acceptable evidence under the M-Opinion is underscored by its discussion of what evidence the Department can review more generally.  The M-Opinion notes that "an action" by the federal government "for or on behalf of

[a] tribe <u>or in some instance[s] tribal members</u>" can be evidence that supports a finding that a tribe was under federal jurisdiction.  <u>Id</u>. at 19 (emphasis added).  The Secretary's dismissal of the Mashpee's evidence that its students were educated at the Carlisle School because the federal action was not action taken towards the Tribe as a whole is inconsistent with the M-Opinion.  <u>See</u> <u>also</u> <u>Grand Ronde v. Jewell</u>, 75 F. Supp. 3d at 402-03 (finding it "perfectly reasonable" for the Secretary to consider the federal government's relationship with the individual tribe members when determining whether the tribe as a whole was "under federal jurisdiction").

Second, the Secretary acknowledged that the education of students at BIA schools has been used to demonstrate federal jurisdiction over other tribes like the Cowlitz Tribe.  2018 ROD at 27, AR at 5114.  The Secretary went on to say, however, that "the Cowlitz determination also relied on a wide range of <u>other evidence</u> covering an extended period of time," and that because the Mashpee Tribe had not shown similar "other evidence," the Mashpee Tribe's evidence about its students being educated at a BIA school was insufficient.  <u>Id</u>. (emphasis added).  The Secretary's purported distinction is a non sequitur.  The Secretary was comparing the totality of the Cowlitz Tribe's evidence with the totality of the Mashpee Tribe's evidence.  This comparison does nothing to explain why the Secretary treated the Cowlitz Tribe's evidence that some of its students were educated at a BIA school as probative of the Cowlitz Tribe being under federal jurisdiction but reached the opposite conclusion for the Mashpee Tribe.  This analysis is inconsistent with the M-Opinion, the Department's prior decisions that apply the M-Opinion, and judicial precedent.  <u>See</u> AR 5709 (the Cowlitz ROD treating "attendance by Cowlitz children at BIA operated schools" as evidence that supported a finding that the tribe was under federal jurisdiction); <u>Grand Ronde v. Jewell</u>, 75 F. Supp. 3d at 402 (upholding the Secretary's treatment of evidence that individual Cowlitz Indian children attending BIA operated

schools as supporting the Secretary's determination that the tribe was "under federal jurisdiction").

    b.    <u>The Federal Defendants and Defendant-Intervenors' Arguments About the Education of Mashpee Students at a BIA School</u>

        The attempts by the federal defendants and the defendant-intervenors to defend the Secretary's discussion of the BIA school evidence fare no better.  The federal defendants point to evidence – not in the administrative record – to argue that because there were some BIA-run schools that accepted students who were not members of a "recognized tribe," the Mashpee Tribe needed to provide evidence that tribal membership was a requirement for the Mashpee students' attendance at the Carlisle School in order for that evidence to have any weight.  Federal Defendants' Cross-MSJ & Opp. at 25; Federal Defendants' Reply at at 13 ("[N]othing in the record shows that the Office of Indian Affairs accepted these students as Mashpee tribal members, as opposed to persons of Indian descent eligible for Federal services."); <u>id</u>. at 20.  The defendant-intervenors similarly argue that the Carlisle School was different from other BIA schools and that applicants were evaluated based on a "qualifying blood quantum level . . . without regard to the applicant's tribal status or affiliation," thereby failing to serve as evidence of a federal action toward the Tribe.  Defendant-Intervenors' Reply at 7; <u>see</u> <u>also</u> AR 6887-92 (Citizens Group Submission on Remand to the Department of the Interior describing the Carlisle School evidence); May 20, 2020 Tr. at 55:21-57:50.

        The first problem with these arguments is that they are not based on anything expressed in the 2018 ROD, which contains no discussion of them whatsoever.  In evaluating whether an agency's action, findings, and conclusions were "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law" under the APA, 5 U.S.C. § 706(2)(a), courts must evaluate the agency's contemporaneous explanation of its decision and cannot accept "post

hoc" rationalizations for agency action that the agency did not, itself, give.  Jicarilla v. DOI, 613

F.3d at 1120; see also Maryland v. EPA, No. 18-1285, 2020 WL 2529520, at *18 (D.C. Cir. May

19, 2020) ("[W]e must review an agency's action on the basis of reasons it actually gave, not

ones it hypothetically could.") (citing SEC v. Chenery Corp., 318 U.S. 80, 63 (1943); Manin v.

Nat'l Transp. Safety Bd., 627 F.3d at 1243 (a court may not "affirm an agency decision on a

ground other than that relied upon by the agency"); Accrediting Council for Indep. Colleges &

Sch. v. DeVos, 303 F. Supp. 3d 77, 105-06 (D.D.C. 2018) (citing Camp v. Pitts, 411 U.S. 138,

143 (1973)).

   The second problem with these arguments is that they are undermined by the

M-Opinion itself and are not supported by the administrative record.  The M-Opinion expressly

lists the education of individual Indian students at BIA schools as evidence that supports a tribe

being under federal jurisdiction.  Regardless of the application process used by the Carlisle

School, the Mashpee students at Carlisle were educated by the federal government.  The

administrative record further shows that the distinctions the federal defendants and defendant-

intervenors raise are meritless.  The attendance records list the students by Tribe, AR at 9291-

9321, and the Carlisle School application asks the student to include their tribal affiliation when

applying to the Carlisle School.  See AR at 8807, 8836, 8877, 8916, 8937, 8968, 8987, 9015

(application form leaving blanks for the applicant to identify with which tribe the applicant's

parents are affiliated, each with "Mashpee" or "South Sea" Tribe written in).[10]  The Carlisle

School records further show that the students' tribal affiliation was often denoted on various

types of school records.  AR at 8804-9030.

---

   [10]  The Mashpee Wampanoag Tribe was also called the South Sea Tribe.  See AR
at 5338.

The federal defendants' other attempt to rescue the Secretary's treatment of the BIA school evidence cannot stand.  The federal defendants argue that the M-Opinion does not require the Department to treat evidence of individual students attending BIA schools as probative evidence.  Federal Defendants' Reply at 13; May 20, 2020 Tr. at 38:11-39:03.  This argument relies on a misplaced emphasis on the word "may" in the M-Opinion.  The M-Opinion says that "[e]vidence of such acts" – acts by the federal government that would serve as probative evidence that a tribe was under federal jurisdiction – "may include, but is certainly not limited to . . . the education of Indian students at BIA schools."  M-Opinion at 19.  This sentence serves to illustrate the type of evidence the Department may consider.  The word "may" only indicates that these forms of evidence are not required in all cases:  probative evidence "may include, but is certainly not limited to" that list.  Id.  The enumerated evidence is not necessarily dispositive and does not necessarily "mandate" an ultimate "conclusion" by the Secretary as to whether a tribe was under federal jurisdiction in 1934.  See May 20, 2020 Tr. at 37:01-02.  But the M-Opinion does enumerate a non-exhaustive list of different types of evidence that have probative value, that the Secretary therefore must treat as probative in his analysis.

The Secretary's rejection of the evidence that individual Mashpee students were educated at a BIA school directly contradicted the M-Opinion, administrative precedent, and judicial precedent.  On remand, the Secretary must accept this evidence as probative evidence and view it "in concert" with the other probative evidence to determine whether the Tribe was under federal jurisdiction before 1934.

### 2.    Additional Carlisle School Evidence

In addition to the evidence that Mashpee students attended the Carlisle School for thirteen years, the Mashpee Tribe argues that the Secretary should have treated the federal

government's actions towards those students while they attended the Carlisle School as additional probative evidence, distinct from the students' attendance.  Mashpee MSJ at 35-37. The Tribe points to evidence that federal officials provided health care to the Mashpee students when they attended the Carlisle school, provided job training and placement services, and ran an "outing" program for the students where they were assigned to employers for vocational training. Mashpee MSJ at 18, 36 (citing AR at 8411-14; 8823; 8803-9030).  Federal government officials also managed the Carlisle students' personal funds.  Mashpee MSJ at 35 (citing AR at 8810, 8815, 8900, 8950, 8974, 8816); Mashpee Reply at 29.  The Tribe argues that the federal government's provision of "health care, vocational training and other social services to the Mashpee Indians" should have been treated as further probative evidence that the Tribe was under federal jurisdiction.  Mashpee MSJ at 35-36.  The Tribe maintains that the Secretary improperly discounted this evidence and even failed to mention some of it at all.  Id. at 35-36.

The federal defendants have two responses to this argument.  They first make the same misguided criticism of this evidence as they made with respect to the BIA school enrollment evidence – that it is not evidence of federal action toward the tribe as a whole and therefore cannot be probative of whether the Tribe was under federal jurisdiction.  Federal Defendants Cross-MSJ & Opp. at 26; Federal Defendants Reply at 20.  As discussed, supra in section III(D)(1), however, the M-Opinion specifically says that federal actions towards individual tribe members can serve as probative evidence that the tribe itself was under federal jurisdiction.  M-Opinion at 19 (directing the Department to look at whether the United States had "taken an action . . . for or on behalf of the tribe or in some instance[s] tribal members") (emphasis added).  This argument by the federal defendants is thus inapposite given that the M-Opinion allows for this type of evidence to be considered.

Second, the federal defendants argue that these federal actions towards the Mashpee students at the Carlisle school is not additional evidence, but instead is merely "a consequence of attending Carlisle." Federal Defendants Cross-MSJ & Opp. at 26. In other words, they say, when the Secretary addressed the Mashpee students' enrollment at the Carlisle School in the 2018 ROD, he was implicitly addressing all this other evidence as well. Id.

The text of the 2018 ROD belies this assertion. In the 2018 ROD, the Secretary cites to specific sections of the Tribe's submissions to the agency on remand in its discussion of the Carlisle School evidence. 2018 ROD at 27 n. 221-224, AR at 5114 (citing AR at 5774-78, AR at 7120). The cited sections discuss only the students' enrollment at the Carlisle School. See AR at 5774-78, AR at 7120. The Mashpee Tribe's submissions discuss these other federal actions towards the Mashpee students at the Carlisle school elsewhere in their briefs before the agency on remand, AR 5779, 8390-93, but the Secretary never mentions them or cites to them in his discussion. When the Secretary addressed the Carlisle School evidence, as the 2018 ROD makes clear, he was only addressing the evidence of the Mashpee students' attendance; he was not implicitly addressing this other evidence. If he had been, he would have cited to those pages of the Mashpee Tribe's briefs that were in the record before him. This additional evidence about the federal government's actions towards the Mashpee students while at the Carlisle School therefore was not addressed by the Secretary at all in the 2018 ROD.

The Secretary's failure to specifically address the federal management of student funds, the vocational training, and the health-care services provided to the Mashpee students at the Carlisle School in the 2018 ROD therefore was arbitrary and violated the APA. See Butte Cty. v. Hogan, 613 F.3d 190, 194 (D.C. Cir. 2010) ("[A]n agency's refusal to consider evidence bearing on the issue before it constitutes arbitrary agency action within the meaning of [the

APA].").  On remand, the Secretary must give a reasoned analysis as to whether this evidence is probative of the Tribe being under federal jurisdiction and, if so, consider it "in concert" with the other probative evidence.

### 3.    Census Evidence

The Tribe presented three types of census evidence to DOI in support of its claim that the Tribe was under federal jurisdiction in 1934: (1) 1911 and 1912 census rolls prepared by the BIA that listed Mashpee students attending the Carlisle School;[11] (2) a 1910 "Indian Population Schedule" prepared by the U.S. Census Office that lists Mashpee tribal members;[12] and (3) the fact that Mashpee tribal members were enumerated on the general federal census from 1850 through 1930.  Mashpee MSJ at 15.

The Secretary rejected each of these three types of census evidence as not the kind of evidence that would support a tribe's claim that it was under federal jurisdiction in 1934.  See 2018 ROD at 27-28, AR 5114-15.  First, the Secretary noted that listing Mashpee students on the 1911 "Census of Pupils Enrolled at Carlisle Indian School" did not show that the Tribe itself came under federal jurisdiction.  2018 ROD at 27 n. 226, AR at 5114.  Second, the Secretary noted that the 1910 Indian Population Schedule was prepared by the Director of the Census, not the Office of Indian Affairs.  2018 ROD at 28, AR at 5115.  The Secretary also discounted the 1910 Indian Population Schedule because it was not prepared under the authority of the 1884

---

[11]    In an 1884 appropriations act, Congress directed that "each Indian agent be required, in his annual report, to submit a census of the Indians at his agency or upon the reservation under his charge," including the number of school children.  1884 Appropriations Act, 23 Stat. 76 (July 4, 1884), AR at 8671.

[12]    The Tribe explains that the 1910 Indian Population Schedule was a federal Indian census that was published that year in addition to the general federal census.  Mashpee Second Submission, AR at 5773.

Act, which "directed Indian agents to submit an annual census of the Indians at the agency or on the reservation under their charge."  Id.  Third, the Secretary noted that listing Tribal members on a federal census was "inconclusive" evidence as to whether the federal government was exercising jurisdiction over the Tribe.  Id.

The Mashpee Tribe says that the Secretary was wrong on every point, maintaining that "inclusion on census rolls is 'unambiguous evidence' of jurisdiction,'" citing this court's decision in Grand Ronde and arguing that the Secretary "could have relied on this evidence alone to find that the Tribe was under federal jurisdiction in 1934."  Mashpee MSJ at 25 (citing Grand Ronde v. Jewell, 75 F. Supp. 3d at 404).  This may be an overstatement.  The "unambiguous evidence" in Grand Ronde was that the local Office of Indian Affairs Superintendent had enumerated the members of the Cowlitz Tribe in that year's statistical tabulation.  Grand Ronde v. Jewell, 75 F. Supp. 3d at 404.  The Cowlitz evidence is similar to the type of evidence Justice Breyer referenced in his Carcieri concurrence, noting that "enrollment . . . with the Indian Office" would support a finding that a tribe was under federal jurisdiction.  Carcieri v. Salazar, 555 U.S. at 399 (Breyer, J., concurring).  Just because the census evidence in the Cowlitz Tribe ROD was unambiguous evidence of the Cowlitz being under federal jurisdiction, however, does not mean that all census evidence is unambiguous.

But even though Mashpee's census evidence may not necessarily be "unambiguous" evidence of the Tribe being under federal jurisdiction, the Secretary still did not sufficiently address the census evidence in the record in the 2018 ROD.  The reasons given for discounting the census evidence discussed in the 2018 ROD are insufficient; and the Secretary failed to discuss some of the relevant census evidence at all.

35

a.   1911 BIA School Census

The Tribe presented evidence that the 1911 census prepared by the BIA Superintendent of the Carlisle School included Mashpee students.  AR 8629-34.  The parties do not dispute that this census roll was compiled in response to the 1884 Appropriations Act for the Indian Department, which directed each BIA agent to "submit a census of . . . the number of schools in operation and the attendance at each" as part of the agent's annual report.  AR 8671. The Secretary discounted this evidence because "enrollment at the [Carlisle School] was not necessarily predicated on a jurisdictional relationship with the Tribe."  Federal Defendants Cross-MSJ & Opp. at 20 (citing the 2018 ROD at 27 n. 226, AR at 5114).  The Secretary's reason for dismissing this 1911 BIA school census suffers from the same problem as his reason for dismissing the evidence that Mashpee students attended a BIA school.  See supra section III(D)(1).  The M-Opinion allows for evidence about tribal members to support a finding that a tribe, itself, was under federal jurisdiction.  M-Opinion at 19.  The Secretary's stated reason for discounting the 1911 BIA school census therefore is inconsistent with the M-Opinion.  On remand, the Secretary must give a reasoned analysis as to whether the 1911 BIA school census is probative evidence and, if so, must view it "in concert" with the rest of the probative evidence in the record and consistent with this Opinion.

b.   1912 BIA School Census

The Tribe also presented evidence that the 1912 census prepared by the BIA Superintendent of the Carlisle School included Mashpee students.  AR 8635-36.  This evidence is the same as the 1911 BIA school census, but for the following year.  The 2018 ROD makes no reference to the 1912 BIA school census.  The Secretary's failure to address the 1912 BIA school census in the 2018 ROD therefore was arbitrary and violated the APA.  See Butte Cty. v. Hogan,

613 F.3d at 194 ("[A]n agency's refusal to consider evidence bearing on the issue before it constitutes arbitrary agency action within the meaning of [the APA].").  On remand, the Secretary must address the 1912 BIA school census, give a reasoned analysis as to whether it is probative evidence and, if so, view it "in concert" with the rest of the probative evidence in the record and consistent with this Opinion.

    c.    Federal Census Evidence:  1910 Indian Population Schedule

        The Tribe explained in its filing with the Department that in some census years, the federal census was split between two schedules: one that counted the general population and one that counted the Indian population.  AR at 5773.  In 1910, there was a separate Indian Population Schedule as part of the federal census, and it listed the Mashpee Tribe.  AR at 8627. The Secretary discounts this evidence in the 2018 ROD for two reasons, neither of which is sufficient to explain the Secretary's treatment of the evidence.

        First, the Secretary noted that the 1910 Indian Population Schedule was prepared by the Director of the Census, not the Office of Indian Affairs.  2018 ROD at 28, AR at 5115. But the Secretary does not go on to connect the dots and explain why this distinction matters, rendering his explanation arbitrary and capricious.  See, e.g., Physicians for Soc. Responsibility v. Wheeler, 956 F.3d 634, 644 (D.C. Cir. 2020) ("It is axiomatic that the APA requires an agency to explain its basis for a decision.") (citing Motor Vehicle Mfrs. Assn. of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. at 43).  Further, the Department's precedent also indicates that this distinction shouldn't matter.  An agency "must at least acknowledge its seemingly inconsistent precedents and either offer a reason to distinguish them or explain its apparent rejection of their approach."  Southwest Airlines Co. v. Fed. Energy Regulatory Comm'n, 926 F.3d 851, 856 (D.C. Cir. 2019) (internal citations omitted); see also Jicarilla v. DOI, 613 F.3d at 1119-20

("Reasoned decision making . . . necessarily requires the agency to acknowledge and provide an adequate explanation for its departure from established precedent and an agency that neglects to do so acts arbitrarily and capriciously.").  The Tunica Biloxi ROD listed "inclusion in federal census counts" as evidence of an act that may demonstrate that a tribe was under federal jurisdiction.  See AR at 5527-28.  Not only must the Secretary explain why it matters that the 1910 Indian Population Schedule was prepared by the Director of the Census, he must also explain why inclusion in federal census counts was treated as probative evidence that a tribe was under federal jurisdiction in the Tunica Biloxi ROD but not for the Mashpee Tribe.  The 2018 ROD has neither explanation, and thus the Secretary's treatment of the 1910 Indian Population Schedule evidence is arbitrary and capricious.

Second, the Secretary noted that the 1910 Indian Population Schedule was not prepared under the authority of the 1884 Act that directed agents to submit an annual census of the Indians at the agency or on the reservation under their charge.  2018 ROD at 28, AR at 5115.  Again, the Secretary fails to explain why this distinction matters.  The Administrative Procedure Act "mandates that [federal agencies] give a reasoned explanation for the actions that they [] take." Am. Wild Horse Pres. Campaign v. Perdue, 873 F.3d at 920 (citing Motor Vehicle Mfrs. Assn. of U.S., Inc. v. State Farm Mut. Auto. Ins. Co., 463 U.S. at 43); see also Public Citizen, Inc. v. FAA, 988 F.2d at 197 ("The requirement that agency action not be arbitrary or capricious includes a requirement that the agency adequately explain its result[.]").  The failure to provide a reasoned explanation for why it matters that the 1910 Indian Population Schedule was not prepared under the 1884 Act renders the explanation arbitrary and capricious.

Further, the Department's precedent indicates this distinction shouldn't matter. An agency "must at least acknowledge its seemingly inconsistent precedents and either offer a

reason to distinguish them or explain its apparent rejection of their approach." Southwest Airlines Co. v. Fed. Energy Regulatory Comm'n, 926 F.3d at 856 (internal citations omitted); see also Jicarilla v. DOI, 613 F.3d at 1119-20. In previous decisions, the Department has relied on census evidence that was not prepared under the authority of the 1884 Act, even treating that evidence as unambiguous evidence. See AR at 5708-10 (the Cowlitz Tribe ROD treating the listing of "members" of the Cowlitz Tribe in the local BIA Superintendent's statistical tabulation as an action that "constitutes further unambiguous federal jurisdiction over the [tribe]" even though "they were not enumerated in the annual censuses required by the Appropriations Act of July 4, 1884"). The Secretary must explain why census evidence that was not prepared pursuant to the 1884 Act was treated as probative evidence in the Cowlitz ROD but not for the Mashpee Tribe. Without such an explanation, the Secretary's discussion of the 1910 Indian Population Schedule is not the reasoned decision-making that the APA requires.

The Secretary's discussion of the 1910 Indian Population Schedule also fails to explain whether the two conclusory distinctions in the 2018 ROD – that it was prepared by the Director of the Census and was not prepared under the 1884 Act – render the 1910 Indian Population Schedule as having no weight in the consideration of whether the Mashpee Tribe was under federal jurisdiction. The 1910 Indian Population Schedule should only be given no weight if a federal census enumerating a tribe on its Indian population schedule is not probative evidence that could – in concert with other evidence – show that a tribe was under federal jurisdiction. Even the Secretary does not seem to think this is the case, acknowledging that "the listing of Tribal members on a Federal census . . . may be probative of Federal jurisdiction over the Tribe." 2018 ROD at 28, AR at 5115. On remand, the Secretary must provide a reasoned analysis as to whether the 1910 Indian Population Schedule is evidence that is probative of the

Tribe being under federal jurisdiction and, if so, consider it "in concert" with the rest of the probative evidence in the record.

### d.   Federal Census Evidence

In other census years, the Indian population was not separated out from the general population.  The Mashpee presented evidence of federal census rolls that enumerate Mashpee tribal members in the Town of Mashpee from 1850 and 1930.  AR at 8625; 8616-23. The Secretary has indicated that "the listing of Tribal members on a Federal census . . . may be probative evidence of Federal jurisdiction over the Tribe."  2018 ROD at 28, AR at 5115.  And the Tunica Biloxi ROD listed "inclusion in federal census counts" as evidence of an act that may demonstrate that a tribe was under federal jurisdiction.  See AR at 5527-28.  But there is no citation to or mention of the Mashpee Tribe's federal census evidence in the 2018 ROD.  "[A]n agency's refusal to consider evidence bearing on the issue before it constitutes arbitrary agency action within the meaning of [the APA]."  Butte Cty. v. Hogan, 613 F.3d at 194.  The Secretary's failure to address Mashpee's evidence that its members were listed on federal censuses in the 2018 ROD therefore was arbitrary in violation of the APA.  On remand, the Secretary must address the federal census evidence, give a reasoned analysis as to whether it is probative evidence and, if so, view "in concert" with the rest of the probative evidence in the record.

### 4.   Federal Reports and Surveys

The Mashpee Tribe relies on several federal reports to support its claim that the Tribe was under federal jurisdiction in 1934.  The Secretary dismissed all of this evidence as failing to constitute an action by the federal government that might be evidence of a tribe being under federal jurisdiction.  2018 ROD at 20-26, AR at 5107-5113.

As a threshold matter, the Mashpee argues that the M-Opinion does not require evidence that the federal government took an "action" towards a tribe, and thus the Secretary incorrectly applied the M-Opinion to all the reports and surveys in evidence.  Mashpee Reply & Opp. at 21.  But the Tribe's argument is not supported by the text of the M-Opinion.  The M-Opinion specifies that in order to determine whether there is a "sufficient showing" that a tribe was under federal jurisdiction, the Secretary should look to whether the United States had "taken an action or series of actions . . . that are sufficient to establish, or that generally reflect federal obligations, duties, responsibility for or authority over the tribe by the Federal Government." M-Opinion at 19.  Contrary to the Mashpee Tribe's characterization, the M-Opinion instructs the Secretary to determine, in relevant part, whether a "series of actions . . . generally reflect federal . . . authority over the tribe by the Federal Government." Id.  Even when acknowledging that the enumerated types of evidence are non-exhaustive the M-Opinion says that "other types of actions not referenced herein" may be considered.  Id. (emphasis added).  The M-Opinion therefore does not require the Secretary to consider evidence other than a federal action or series of actions that might show federal authority over the tribe.  Contra Mashpee Reply & Opp. at 21-22 (arguing that the M-Opinion allows the Secretary to consider not only federal actions, but other "information" that "shows the Federal Government's obligations, duties to, acknowledged responsibility for, or power or authority over" a tribe).

The Court nevertheless concludes that the Secretary failed to treat the reports and surveys in the record consistently with the M-Opinion and the Department's precedent.  As discussed below, the reasons given by the Secretary for discounting various reports and surveys in the record are insufficient and conflict with the way in which the Department has treated similar evidence in the past.

a.   The Morse Report

In the early 1820s, the Secretary of War commissioned Reverend Jedidiah D. Morse to visit various Indian tribes "in order to acquire a more accurate knowledge of their actual condition, and to devise the most suitable plan to advance their civilization and happiness." AR at 8521. The Morse Report contains descriptions of Indian tribes as well as statistical tables "embracing the names and numbers of all the tribes within the jurisdiction of the United States." AR at 8524.[13] The Mashpee are described in the Morse report, AR at 8525-27, and included in the statistical table, AR at 8531.

The Secretary dismissed the Morse Report in the 2018 ROD as failing to constitute a federal "action." 2018 ROD at 21, AR at 5108. In reaching this conclusion, the Secretary characterized the Morse Report as evidence that the federal government merely "consider[ed] the Tribe" as "<u>potentially</u> subject to the exercise of the federal Indian authority, in this case for the purpose of removal and resettlement" and that the Morse Report only provides evidence of Congress's "awareness" of its plenary authority over the tribes included in the report. <u>Id</u>. (emphasis in original).

Courts "adopt the agency's factual findings as conclusive if supported by substantial evidence," and the agency's factual findings "may be supported by substantial evidence even though a plausible alternative interpretation of the evidence would support a contrary view." <u>Dillmon v. Nat'l Transp. Safety Bd.</u>, 588 F.3d 1085, 1089 (D.C. Cir. 2009) (citing <u>Chritton v. Nat'l Transp. Safety Bd.</u>, 888 F.2d 854, 856 (D.C. Cir. 1989)). But, "an agency cannot ignore evidence that undercuts its judgment; and it may not minimize such

---

[13]      Reverend Morse described the statistical tables as including tribes "within the jurisdiction of the United States," AR at 8524; however, the statistical tables themselves state that they include all tribes "within the limits of the United States." AR at 8531.

evidence without adequate explanation." Genuine Parts Company v. Environmental Protection Agency, 890 F.3d 304, 313 (D.C. Cir. 2018).

        The Court finds the Secretary's description of the Morse Report as merely being a passive "compilation of general information about tribes" is a mischaracterization that minimized the record evidence without adequate explanation.  First, the Morse Report includes recommendations that the Mashpee Tribe not be removed from their land and sent West.  AR at 8527.  The report notes that the members of the Tribe would not be in favor of removal, that some of their occupations such as whaling are tied to their location by a coast, and that their local attachments are strong.  Id.  The report notes that "the scheme [of removal] would not take with them."  Id.[14]  The Morse Report was more than a mere "compilation" of evidence; Reverend Morse made specific recommendations in his report about how the federal government should treat the various tribes, including the Mashpee Tribe.  The Secretary's characterization of the Morse Report incorrectly deemphasizes these recommendations about the Mashpee Tribe's receptiveness to a removal scheme as a passive "compilation" of evidence about the Tribe.  The making of a recommendation is, in and of itself, an action.  Here, the report prepared at the direction of the Secretary of War – a federal executive official – included recommendations.  Characterizing the Morse Report as being merely a passive awareness of Congress's plenary authority ignores the fact that other actors in the federal government besides Congress can take action towards a tribe that may serve as evidence.  The Morse Report made recommendations as to how various tribes – including the Mashpee – should be treated by the federal government.  Beyond a passive "compilation" or "awareness" of Congress's plenary authority to pass

---

[14]    The fact that Reverend Morse relied on agents to help him compile the information about the tribes across the country does not matter.  He adopted those agents' recommendations and included them in his report.

legislation affecting Indian tribes, this report includes a representative of the Secretary of War –
a federal Executive Branch official – making a recommendation about the Mashpee Tribe.

Second, the Morse Report was strikingly similar to a report considered in a prior
decision by the Department in which DOI treated the report as probative evidence that the tribe
was under federal jurisdiction.  In the Ione Band ROD, the Secretary treated the BIA's "efforts to
document members of the Band" as evidence that supported the Secretary's ultimate conclusion
that the Ione Band was under federal jurisdiction in 1934 or before.  Cty. of Amador v. U.S.
Dep't of Interior, 136 F. Supp. 3d 1193, 1208 (E.D. Cal. 2015).  The BIA had appointed a special
agent, Kelsey, to investigate the conditions of dispossessed California tribal members, and in
doing so Kelsey took a census of the people.  Id. at 1200.  Just like Kelsey, Reverend Morse was
appointed as a special agent by the BIA to investigate the conditions of tribes within the United
States, and in doing so, Reverend Morse compiled a census or statistical table of the tribes,
including the Mashpee Tribe.  The Secretary's dismissal of the Morse Report in the 2018 ROD,
therefore, is in conflict with its prior treatment of very similar evidence in the Ione Band ROD.
An agency "must at least acknowledge its seemingly inconsistent precedents and either offer a
reason to distinguish them or explain its apparent rejection of their approach."  Southwest
Airlines Co. v. Fed. Energy Regulatory Comm'n, 926 F.3d at 856 (internal citations omitted);
see also Jicarilla v. DOI, 613 F.3d at 1119-20 ("Reasoned decision making . . . necessarily
requires the agency to acknowledge and provide an adequate explanation for its departure from
established precedent and an agency that neglects to do so acts arbitrarily and capriciously.").
The Secretary's failure to address its inconsistent precedent makes the 2018 ROD's treatment of
the Morse Report arbitrary and capricious.

The federal defendants' response to the Ione Band ROD evidence is unpersuasive. They argue that the Mashpee Tribe "ignores the fact that the United States made repeated attempts to acquire land on the Ione Band's behalf for approximately 20 years leading up to 1934." Federal Defendants Cross-MSJ & Opp. at 30-31. This response is beside the point. It says nothing about the fact that the Secretary treated evidence that the BIA had commissioned a report to investigate the conditions of tribes as evidence that supported a finding that the Ione Band was under federal jurisdiction. By contrast, in the 2018 ROD, the Secretary characterized that same type of evidence very differently and dismissed it as entirely unhelpful for the Mashpee Tribe. On remand, the Secretary must analyze the Morse Report evidence in accordance with the M-Opinion – "in concert" with other probative evidence – and consistently with the way its prior determinations treated similar evidence.

### b.   Use of the Morse Report

Beyond the Morse Report itself, the Mashpee Tribe presents evidence of the manner in which the federal government subsequently used the Morse Report. The Morse Report was given to the House Committee on Indian Affairs so its members could be educated about the Indian tribes' situation and their numbers when considering proposed amendments to the Trade and Intercourse Act. AR at 6093 (Congressman Metcalfe addressed the House, saying "that we may know something of the situation of those people, and of their numbers; that we may be well informed of the nature and condition of the materials upon which we are about to operate, I will take the liberty of adverting to extracts from the report of Dr. Morse, which was referred to the committee for that purpose."). The Secretary of War, John Calhoun, also presented statistical information to President Monroe based in part on the Morse Report. AR at 8533-39. When discussing plans to remove tribes west, Secretary Calhoun noted that any

"arrangement for [] removal . . . is not intended to comprehend the small remnants of certain tribes in Maine, Massachusetts, Connecticut, Rhode Island, Virginia, and South Carolina."  AR at 8534.  President Monroe then acted on Secretary Calhoun's recommendation when he transmitted to Congress his own recommendation that Indian tribes be removed from the lands they occupied.  AR at 8534.

In addressing these uses of the Morse Report, the Secretary concluded that they do not "in and of themselves" satisfy the first step of the M-Opinion's two-part test.  2018 ROD at 22, AR at 5109.  This conclusion is not sufficient under the M-Opinion.  Just because the evidence cannot alone show that the Mashpee Tribe was under federal jurisdiction, the Secretary must consider whether it is probative evidence that – in concert with other evidence – would support a finding that the Tribe was under federal jurisdiction.  The Secretary failed to do this.  On remand, the Secretary must evaluate the House debate, the Secretary of War's recommendation to the President, and the President's transmittal to Congress under a proper application of the M-Opinion:  first determining whether this evidence is probative of the tribe being under federal jurisdiction, and if so, considering it "in concert" with the other probative evidence.

c.   McKenney Letters

In 1825 and 1828, Thomas McKenney, the Director of the Office of Indian Affairs, sent letters to the Secretary of War that relied on the statistical tables from the Morse Report.  See McKenney Letters, AR at 8676-81, 8683-86.  The federal defendants argue that "Interior thoroughly analyzed the reports provided by the Tribe and reasonably concluded that they did not provide evidence of the requisite exercise of Federal jurisdiction."  Federal Defendants Cross-MSJ & Opp. at 24.

46

Upon review of the 2018 ROD, this Court cannot agree.  Far from a thorough analysis of the McKenney letters, the Secretary mentioned the letters in passing, then reached a conclusion without any analysis.  The Secretary first references the McKenney letter when discussing the Secretary of War's transmittal to the President.  He notes as an aside that the Secretary of War included "statistical information compiled by Colonel Thomas McKenney." 2018 ROD at 22, AR at 5109.  The next reference to the McKenney letters is the Secretary's conclusion that the "use of the information compiled by . . . Colonel McKenney do[es] not, in and of [itself], satisfy the first step of the [M-Opinion's] analysis.  Id.  The only other reference to the McKenney letters is in a footnote saying that "McKenney provided copies of the table in response to requests by Congress, the Executive, and private scholars."  Id. at 22, n. 182, AR at 5019.

The APA obligates the Secretary to provide "reasoned explanations."  See Am. Wild Horse Pres. Campaign v. Perdue, 873 F.3d at 920.  The Secretary's cursory reference to the McKenney letters and the subsequent use of the statistical information within them does not meet this standard.  On remand, the Secretary must give a reasoned analysis as to whether this evidence is probative of the Tribe being under federal jurisdiction and, if so, consider it "in concert" with the other probative evidence.

### d.   The Schoolcraft Report

In 1851, Henry Schoolcraft, a United States Indian Agent, published a six-volume report compiling historical and statistical information of Indian tribes in the United States.  AR at 8497-99.  The report was prepared using funds appropriated by Congress for that purpose. 2018 ROD at 23, AR at 5110.  A statistical table from the Schoolcraft Report mentions the Mashpee.  AR at 8499.  The 2018 ROD recognizes that the Schoolcraft Report "describes a

proposed plan of improvement for the Massachusetts Indians generally."  2018 ROD at 23, AR
at 5110.  But the 2018 ROD goes on to note that "[a] closer examination reveals that Schoolcraft
was merely reporting recommendations contained in an 1849 report of state commissioners to
the Massachusetts legislature on the condition of Indians in the state," noting that the state
commissioners' recommendations therefore "suggest that Massachusetts considered the Tribe
and its lands within the State's authority," not within the authority of the federal government.  Id.

Like both the Morse Report and the Kelsey Report in the Ione Band ROD, the
Schoolcraft Report was prepared by or at the request of a United States Indian Agent.  Funds
were appropriated by Congress for the purpose of preparing it.  In the Ione Band ROD, "efforts
to document" the tribe's members and listing them on the census included in the report was
determined to be probative evidence that the Ione Band was under federal jurisdiction.  Cty. of
Amador v. U.S. Dep't of Interior, 136 F. Supp. 3d at 1200, 1208.  An agency "must at least
acknowledge its seemingly inconsistent precedents and either offer a reason to distinguish them
or explain its apparent rejection of their approach."  Southwest Airlines Co. v. Fed. Energy
Regulatory Comm'n, 926 F.3d at856 (internal citations omitted); see also Jicarilla v. DOI, 613
F.3d at 1119-20.  The Secretary's failure to address its inconsistent precedent makes the 2018
ROD's treatment of the Schoolcraft Report arbitrary and capricious.  On remand, the Secretary
must consider whether the Schoolcraft Report was similarly probative evidence in accordance
with the M-Opinion – and if so, then "in concert" with other probative evidence.

e.    Tantaquidgeon Report

In 1934, the BIA retained Gladys Tantaquidgeon to conduct a comprehensive
survey of the New England tribes.  2015 ROD at 109, AR at 5334; see AR at 8721-85.  The
Tantaquidgeon Report, which was produced in 1935, "provid[ed] a detailed narrative of the

Mashpee Tribe's history, language, government, social regulations, economic life, [and] education."  2015 ROD at 109 n. 342, AR at 5334; see also 2018 ROD at 24, AR at 5111. Gladys Tantaquidgeon visited the Mashpee Tribe in the summer of 1934 to discern the Mashpee's educational needs.  AR at 8788.  Her report was subsequently used by federal officials to secure federal funding to build a new school for Mashpee children.  AR 8787-97.[15]

The Secretary dismisses this report as failing to show any "formal action" by a federal official "determining any rights of the Tribe."  2018 ROD at 25, AR at 5112.  But the M-Opinion does not require evidence that a federal official expressly determined any rights of a tribe for the evidence to be probative of a tribe being under federal jurisdiction.  Nowhere in the M-Opinion's acceptance of "actions by the Office of Indian Affairs" as probative evidence of a tribe being under federal jurisdiction does it require that these actions include an express determination of a tribe's rights.  M-Opinion at 19.  Underscoring the point that the evidentiary standard is not that high is the fact that the M-Opinion allows for "other types of actions not referenced herein that evidence the Federal Government's . . . acknowledged responsibility for" a tribe.  Id.  In discounting the Tantaquidgeon Report for failing to reflect a determination of the Mashpee Tribe's rights, the Secretary says nothing about whether this report may be probative evidence under the M-Opinion.

---

[15]      The Tribe also argues that the Secretary ignored efforts led by the Office of Indian Affairs' Director of Education to fund a new school for the Mashpee children in the 1930s. Mashpee MSJ at 34-35.  It is true that the Secretary does not mention these efforts in the 2018 ROD.  But the administrative record indicates that the Director of Education did not begin his efforts to fund the school until after the IRA was enacted in June of 1934.  AR at 8787-8797, 8801-02.  See also Federal Defendants Cross-MSJ & Opp. at 26 n.9.  It therefore was not a violation of the APA for the Secretary not to address this evidence in the 2018 ROD.

Indeed, the Secretary's conclusion about the Tantaquidgeon Report acknowledges that it may have some probative value.  2018 ROD at 25, AR 5112 ("[T]he Tantaquidgeon report . . . provides little if any demonstration of the exercise of Federal jurisdictional authority over the Tribe.").  Under the M-Opinion's standard, the Secretary's conclusion that the report has "little if any" probative value cannot stand.  It was the Secretary's obligation to first determine whether this report in fact provided some evidence that the Tribe was under federal jurisdiction – even if it was "little" evidence – and if so, to then consider it "in concert" with the rest of the probative evidence:  this is what the Secretary must do on remand.

### f.    1890 Annual Report of the Commissioner of Indian Affairs

The Mashpee were included in the Commissioner of Indian Affairs' annual report in 1890.  AR at 8707-19.  The report notes that the Mashpee "occupy a tract of land in Barnstable County, Mass., [and] have a board of overseers appointed by the State . . . who govern all their internal affairs and hold their lands in trust."  Id. at 8716.  The 2018 ROD rejects this report as not providing evidence of any federal responsibility for the Tribe.  2018 ROD at 25, AR at 5112.

Prior Department decisions have treated the inclusion of a tribe in the Commissioner's annual report as evidence that supported a finding that the tribe was under federal jurisdiction.  Village of Hobart v. Acting Midwest Reg'l Dir., 57 IBIA 4, 20, 24-25 (May 9, 2013).  Once again, the attempt by the federal defendants to explain why the Department's decision about the Oneida Tribe is different from the Mashpee Tribe makes an irrelevant point. While it is true that the Oneida Tribe held a Section 18 election, and the Mashpee Tribe didn't, see Federal Defendants' Cross-MSJ & Opp. at 31, this fact has no bearing on the Department's decision to treat evidence that the Oneida Tribe was listed in the Commissioner's annual report

as further evidence supporting the conclusion that the Oneida Tribe was under federal jurisdiction.

In order for the Secretary to conclude that the references to the Mashpee in an annual report by the Commissioner of Indian Affairs is not probative of the Tribe being under federal jurisdiction, it must explain why this evidence is different, if at all, from prior decisions by the Department that treated similar evidence as probative of a tribe being under federal jurisdiction.  See, e.g., Jicarilla v. DOI, 613 F.3d at 1119-20 ("Reasoned decision making . . . necessarily requires the agency to acknowledge and provide an adequate explanation for its departure from established precedent and an agency that neglects to do so acts arbitrarily and capriciously.").  On remand, the Secretary must analyze this evidence consistently with prior Department decisions, adequately explaining any departure.  If probative, the Secretary then must analyze the 1890 Annual Report evidence "in concert" with the rest of the probative evidence in the record.

### g.   The Fletcher Report

In 1885, the United States Senate passed a resolution that directed the Secretary of the Interior "to furnish to the Senate the information in possession of the Commissioner of Education, showing the progress of the Indian education and civilization."  AR at 5771-72; AR 8696.  The Commissioner of Education retained an individual named Alice C. Fletcher to prepare the report.  The Fletcher Report includes an historical summary of Massachusetts tribes, including the Mashpee.  AR at 8696-705.

The Mashpee argue that the inclusion of the Mashpee Tribe in the report constitutes an action.  Mashpee MSJ at 30.  But the 2018 ROD concludes that accounting for the Tribe's history and describing state legislation that affects the Mashpee "offers no evidence . . .

51

beyond the general principle of plenary authority."  2018 ROD at 24, AR at 5111 (emphasis

added).  This is one of the few pieces of evidence in the 2018 ROD for which the Secretary

reached a firm conclusion based on the record and explained his reasons why it had no probative

value.  The Court finds that the Secretary did an adequate job in addressing this report.

5.     Mashpee Indian Land and Resources

The Mashpee point to other evidence that they assert demonstrates federal actions

to protect Mashpee lands and natural resources.  First, the Tribe contends that in 1798, John

Davis, then serving as the United States Attorney for the District of Massachusetts, brought a

state ejectment action on behalf of the Tribe.  Mashpee MSJ at 19.  Second, the Tribe cites to a

federal title report prepared by the Department of the Navy, arguing that it serves as evidence

that the federal government acknowledged the Mashpee Tribe's fishing and gathering rights on

others' land, or the Tribe's "usufructuary rights."  Id.  (citing AR at 6631-32).  Third, the Tribe

reiterates the point that the Morse Report includes a recommendation that the Mashpee Tribe not

be removed west.  Id.  The 2018 ROD considered each of these matters and determined that none

served as evidence of federal acknowledgment or protection of the Mashpee Tribe's lands and

natural resources.  2018 ROD at 19, 26-27, AR at 5106, 5113-14.

The Secretary rejected the Tribe's argument that because John Davis was the

Tribe's attorney in an ejectment action brought on behalf of the Tribe this was evidence of

federal coordination with state officials to exercise trust responsibilities.  2018 ROD at 19, AR

at 5106.  The Secretary noted that the "record instead demonstrates that Davis received

compensation for his Services from the Commonwealth" and the Tribe "fail[ed] to show that

Davis acted on behalf of the United States in Proprietors of Marshpee v. Crocker," the ejectment

action.  Id.  The record supports these conclusions.  The record describes the Proprietors of

Marshpee v. Crocker case, saying that Overseers – non-Indians who shared responsibility for protecting the Tribe's lands – "employed . . . John Davis, as counsel, to vacate the deed and the act of the General Court" and that Davis "brought an action of ejectment . . . in the name of the Proprietors of Marshpee" (the Mashpee Tribe).  AR at 8435.  Rather than acting in his official capacity as the United States Attorney, Mr. Davis was employed and compensated by the Overseers to bring the case in his private capacity.  AR at 9466.  This conclusion is further supported by the administrative record, which describes how U.S. Attorneys at the time would simultaneously maintain private practices.  AR at 9410-13.  The 2018 ROD's conclusion that the state ejectment action was not evidence of federal coordination or involvement is consistent with the administrative record.

The 2018 ROD also evaluated the title report for condemnation proceedings brought by the Department of the Navy and determined it did not provide evidence of any federal action.  2018 ROD at 26, AR at 5113; AR at 6629-6734.  The 2018 ROD acknowledged that this report may be evidence of action by the State of Massachusetts, but not by the federal government.  2018 ROD at 26, AR at 5113.  The title report indicated that some of the lots were subject to the reserved right of the Proprietors of Mashpee to cross over the lots for the purpose of gathering seaweed and salt hay.  AR at 6631-32.  These deeds were prepared pursuant to "laws enacted by the State of Massachusetts for the purpose of allotting the Tribe's lands."  2018 ROD at 26, AR at 5113.  The Court finds that the 2018 ROD's conclusion that there was an "absence of any Federal actions with respect to the Mashpee's usufructuary rights" is consistent with the administrative record.  See id.

To further illustrate that the Mashpee Tribe's evidence did not serve as evidence that the federal government had acted to protect the Mashpee Tribe's land and resources, the

2018 ROD contrasted the Mashpee administrative record with that in the case of the

Stillaguamish Tribe, which did offer evidence that the federal government had protected its

usufructuary rights.  2018 ROD at 26, AR at 5113.  There, the United States acknowledged and

protected the Stillaguamish Tribe's fishing rights in a treaty to which the Stillaguamish Tribe

was a signatory.  Id.  Here, there is no similar evidence in the Mashpee administrative record.

   The Secretary also rejected the Mashpee Tribe's argument that the Morse Report

served as evidence that the federal government acted to protect the Mashpee lands.  2018 ROD at

22, AR at 5109, contra Mashpee MSJ at 39.  As already discussed, supra section III(D)(4)(a)-(c),

the Secretary's evaluation of the Morse Report and the instances where it was relied upon by

Congress and the Executive Branch was insufficient and must be re-evaluated on remand.  The

Secretary's improper treatment of the Morse Report taints his conclusions about whether the

recommendations in the report constituted federal action to protect the Mashpee lands.  On

remand, the Secretary must re-evaluate whether its new consideration of the Morse Report means

that this evidence shows that the federal government took an action to protect the Mashpee lands.


## IV. REMAND

   The parties disagree as to which agency guidance should apply on remand.  As

discussed supra in section III(B), the 2014 M-Opinion's two-part test which the Secretary

applied – incorrectly – in the 2018 ROD has since been withdrawn.  The Tribe argues that the

2014 M-Opinion should still guide the Secretary's analysis in the event of a remand.  Mashpee

Response to Order at 3.  The federal defendants announced for the first time at oral argument that

the Department planned to apply the new March 2020 guidance if the matter was to be

remanded.  May 20, 2020 Tr. at 50:09-18.  This was particularly surprising because the federal

defendants had repeatedly declared that the change in guidance had "no bearing" on this

litigation.  Federal Defendants Response to Order at 2; <u>see also id</u>. at 1, 5, 9-10; Defendant-

Intervenors Response to Order at 3.  The federal defendants represented, however, that if the

Court directed them to apply the 2014 M-Opinion on remand, they would comply.  May 20,

2020 Tr. at 52:12-14 (counsel stating that the Department will "comply with whatever test the

Court orders them to do").

   The Court disagrees that the newly issued guidance does not change the "under

federal jurisdiction" analysis, as the federal defendants and defendant-intervenors represent.  The

new test does not allow some types of evidence that the 2014 test permitted.  <u>See supra</u> section

III(D) (describing the types of evidence that the 2014 M-Opinion permitted, but the new

guidance does not for the "under federal jurisdiction" analysis).  The federal defendants also

have pre-determined that the Mashpee Tribe would lose under the newly issued guidance.

Federal Defendants Response to Order at 10 n. 4 (finding that the Tribe would lose on all four

parts of the new test).

   Because this Court concludes that the Secretary misapplied the M-Opinion in

issuing the 2018 ROD, the Tribe has yet to receive an appropriate determination under the

two-part test that the Department said it was applying.  The Court hereby directs the Department

to apply the two-part test in M-37209 – correctly this time – on remand.

## V.  CONCLUSION

   For the foregoing reasons, the Court will grant the Mashpee Tribe's motion for

summary judgment and deny the federal defendants' and defendant-intervenors' motions for

summary judgment.  Furthermore, because the Secretary of the Interior's September 7, 2018

Record of Decision is arbitrary, capricious, an abuse of discretion, and contrary to law, the Court

remands the matter to the Secretary of the Interior for a thorough reconsideration and re-

evaluation of the evidence before him consistent with this Opinion,  the 2014 M-Opinion,

M-37209 – its standard and the evidence permitted therein – and the Department's prior

decisions applying the M-Opinion's two-part test.  Because the Court has decided this case on

the merits, it will deny the Mashpee Tribe's emergency motion for a temporary restraining order

and motion for a preliminary injunction as moot.  An Order consistent with this Opinion will

issue this same day.

        SO ORDERED.


                                  /s/
                                _____
                                PAUL L. FRIEDMAN
                                United States District Judge


DATE:  June 5, 2020